IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re:<br><br>BRIAN W. COUGHLIN,<br><br>Debtor. | Chapter 13<br><br>Case No. 19-14142-FJB |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

### Introduction

In a brazen attempt to skirt law and facts, Brian Coughlin asks this Court to hold the Lac du Flambeau Band of Lake Superior Chippewa Indians (the "Tribe") responsible for Niiwin, LLC's alleged violations of the automatic stay in this bankruptcy proceeding. More, he does so despite making no allegation that the Tribe received notice of this bankruptcy proceeding before the alleged violations. And finally, he does so despite the Tribe being immune to this bankruptcy proceeding. Because any and all of these shortcomings are fatal to Coughlin's adversarial proceeding against the Tribe, the Tribe respectfully asks the Court to dismiss it.

### Statement of Facts

In December 2019, Brian Coughlin petitioned for Chapter 13 bankruptcy in this Court. (Petition, Dkt. 1). The petition triggered an automatic stay under 11 U.S.C. § 362(a). Among Coughlin's creditors is Lendgreen, an alter ego of Niiwin, LLC, with which he had an existing unsecured loan balance of roughly $1,600. (*Id.* at p.24; *see also* Pleading, Dkt. 27 Ex. A). According to Coughlin, Lendgreen—and, therefore, Niiwin—was listed in his mailing matrix and served a copy of his Chapter 13 workout plan in December 2019. (Petition, Dkt. 1 p.51; *see also* Pleading, Dkt. 27 Ex. B).

Despite the automatic stay, Coughlin alleges that, Niiwin continued to make collection calls and send him emails regarding his unsecured loan, a violation of the stay. (Pleading, Dkt. 27 ¶¶ 9-13; Coughlin Aff., Dkt. 27-1 ¶¶ 5-7). Coughlin claims that the collection calls, coupled with other stressors in his life, led to him attempting suicide in February 2020. (Coughlin Aff., Dkt. 27-1 ¶¶ 8-12).

In March 2020, Coughlin moved the Court to enforce the automatic stay, specifically asking the Court to grant him actual damages, attorney fees and costs, and punitive damages for Niiwin's violations. (Pleading, Dkt. 27 pp.1, 7-8). But instead of just seeking relief against Niiwin, Coughlin also sought relief against LDF Holdings, LLC ("Holdings"), the LDF Business Development Corporation (the "BDC"), and the Tribe. (*Id.*). As Coughlin himself explains, the relationship between these entities is through a chain of corporate equity. (*Id.* ¶ 3). The Tribe wholly owns the BDC, a tribally chartered corporation. (*Id.*). The BDC wholly owns Holdings, a tribally organized limited liability company. (*Id.*). Holdings wholly owns Niiwin, also a tribally organized limited liability company. (*Id.*).

**Argument**

**I. This Court should deny Coughlin's motion because it lacks sufficient allegations to implicate the Tribe in a willful violation of the automatic stay.**

A court may dismiss an adversarial proceeding under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. When faced with a Rule 12(b)(6) motion, "a court must take the allegations . . . as true and must make all reasonable inferences in favor" of the plaintiff. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Still, the court may consider "documents incorporated by reference . . . , matters of public record, and other matters susceptible to judicial notice." *Giraosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (quotation omitted). And it need not "draw unreasonable inferences or credit bald

assertions or empty conclusions." *Guilfoile v. Shields*, 913 F.3d 178, 186 (1st Cir. 2019) (quotation omitted).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts to support a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

An automatic stay is "one of the fundamental protections that the Bankruptcy Code affords to debtors." *In re Jamo*, 283 F.3d 392, 398 (1st Cir. 2002). This protection is enforceable under Section 362(k)(1), which provides that a debtor injured by a "willful violation of [an automatic stay] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." A debtor seeking damages under this provision bears the burden of establishing: "(1) that a violation of the automatic stay occurred; (2) that the violation was willfully committed; and (3) that the debtor suffered damages as a result of the violation." *Slabicki v. Gleason (In re Slabicki)*, 466 B.R. 572, 577-78 (B.A.P. 1st Cir. 2012). With respect to the Tribe, Coughlin has failed to meet his pleading burden to claim violations of the automatic stay.

**A. Coughlin does not allege that the Tribe violated the automatic stay.**

Perhaps the most glaring problem with Coughlin's claim against the Tribe is that his pleading lacks *any* allegation that the Tribe violated the automatic stay. Coughlin describes alleged violations performed by the "Creditor," which he uses as an umbrella term for Niiwin, Holdings, the BDC, and the Tribe. (Pleading, Dkt. 27 at p.1). But a closer look at his pleading and attached documents reveals that all of the alleged violations involved only Niiwin. For instance, Coughlin describes a conversation with a collection specialist named Linda Ehikpehale

3

and attaches a confirmation email from Ehikpehale. (*Id.* ¶ 9 & Ex. D). As the email indicates, Ehikpehale works for Lendgreen—and, therefore, Niiwin. (*Id.* Ex. D). Similarly, Coughlin describes collection emails he received and attaches evidence of the same. (*Id.* ¶ 10 & Ex. E). Again, the attached email clearly indicates that the sender is Lendgreen—and, therefore, Niiwin. (*Id.*).

Not once in his pleading does Coughlin identify an act performed by the Tribe that violates the automatic stay. Not once in his pleading does Coughlin identify an act performed by an employee of the Tribe that violates the automatic stay. And not once do the attachments to Coughlin's pleading implicate the Tribe in violations of the automatic stay. Therefore, Coughlin has not met his pleading burden, and this Court should dismiss his adversarial proceeding against the Tribe.

**B. Coughlin does not allege that the Tribe had notice of this bankruptcy proceeding at the time of the alleged violations.**

A separate but related problem with Coughlin's claim against the Tribe is that his pleading lacks *any* allegation that the Tribe had notice of this bankruptcy proceeding at the time of the alleged violations. "[A] violation of the automatic stay must be 'willful' or the violator cannot be held liable for damages." *In re McMullen*, 386 F.3d 320, 330 (1st Cir. 2004). And a violation can only be found willful "if the creditor's conduct was intentional (as distinguished from inadvertent) and committed with knowledge of the pendency of the bankruptcy case." *Id.*; *see also Fleet Mortg. Group v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999).

Coughlin alleges that he gave notice of this bankruptcy proceeding to the "Creditor." (*See* Pleading, Dkt. 27 ¶¶ 6-8). But again, a closer look at his pleading and attached documents reveals that he only gave notice to Niiwin. Regarding notice, Coughlin alleges as follows:

> 6. The Creditor was listed on the Debtor's Schedule of Unsecured Debts (Schedule "E/F") as Item 4.17 listing the Creditor as Lend Green", with a mailing

4

> address of P.O. Box 221, Lac Due Flambeau, Wisconsin 54538 and listed the last 4 digits of account number relating to said claim of 3572. A true and accurate copy of the relevant portion of the Debtor's Schedule "E/F" is attached hereto as Exhibit "A".
>
> 7. As a consequence of the Debtor's scheduling of the Creditor's claim, the Creditor was properly listed on the Debtor's Mailing Matrix with a mailing address of P.O. Box 221, Lac Due Flambeau, Wisconsin 54538. A true and accurate copy of the relevant portion of the Debtor's Mailing Matrix is attached hereto as Exhibit "B".
>
> 8. On December 4, 2019, Debtor's Counsel served a copy of the Debtor's Original Chapter 13 Plan upon the Creditor at its mailing address of P.O. Box 221, Lac Due Flambeau, Wisconsin 54538 and filed a Certificate of Service regarding the Debtor's Original Chapter 13 Plan reflecting the same. A true and accurate copy of Certificate of Service regarding the Debtor's Original Chapter 13 Plan is attached hereto as Exhibit "C".

(*Id.*). But Coughlin's Schedule of Unsecured Debts only lists "Lend Green"—and, therefore, Niiwin—and its mailing address. (Petition, Dkt. 1 at p.24; *see also* Pleading, Dkt. 27 Ex. A). And Coughlin's Mailing Matrix only lists "Lend Green"—and, therefore, Niiwin—and its mailing address. (Petition, Dkt. 1 p.51; *see also* Pleading, Dkt. 27 Ex. B). And Coughlin's certificate of service for the original Chapter 13 Plan only lists "Lend Green"—and, therefore, Niiwin—and its mailing address. (Certificate of Service, Dkt. 11-1; *see also* Pleading, Dkt. 27 Ex. C). None of these documents list the Tribe or its mailing address. (Petition, Dkt. 1 at pp.24, 51; Certificate of Service, Dkt. 11-1; *see also* Pleading, Dkt. 27 Exs. A-C). In fact, nothing in the record for this bankruptcy proceeding indicates that anyone served anything on the Tribe at its address until Coughlin served this pleading on May 11, 2020, over a month and a half *after he filed his it*." (Supplemental Certificate of Service, Dkt. 40).[1]

While Coughlin seems to suggest that service on Niiwin amounted to service on the Tribe, the record suggests the contrary. On May 7, 2020, over a month after Coughlin filed his

---

[1] A court may take judicial notice of the record of the proceedings in the case. *See In re Hyde,* 334 B.R. 506, 508 n.2 (Bankr. D. Mass. 2005).

5

pleading, the Court directed him to serve the Tribe. (Proceeding Memorandum and Order, Dkt. 43). And Coughlin did so, at the Tribe's mailing address, *not Niiwin's*. (Supplemental Certificate of Service, Dkt. 40). In other words, Coughlin has implicitly recognized that service on Niiwin is not the same as service on the Tribe. Therefore, Coughlin simply has not alleged that the Tribe had notice of this bankruptcy proceeding at the time of the alleged violations of the automatic stay, and this Court should dismiss his adversarial proceeding against the Tribe.

**C. There is no basis in Coughlin's pleading to impute the Tribe with Niiwin's knowledge of the proceeding or alleged violations of the automatic stay.**

"A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003); *see also In re Rowanoak Corp.*, 344 F.3d 126, 132-33 (1st Cir. 2003). Thus, "[c]orporate owners are allowed to avoid liability beyond the extent of their investment because of the fiction that the corporation is a separate entity." *In re Indus. Comm. Elec., Inc.*, 319 B.R. 35, 49 (D. Mass. 2004); *see also Powers v. Texaco, Inc.*, 22 F.3d 1094, at *3 (1st Cir. 1994).

Here, as previously discussed, the relationship between the Tribe and Niiwin is through a chain of corporate equity. And that chain is not simply one link; it is three. Coughlin acknowledges the same in his pleading. (Pleading, Dkt. 27 ¶ 3). What Coughlin fails to acknowledge is that this type of relationship precludes him from simply lumping the Tribe in with Niiwin as the "Creditor." Coughlin, as the plaintiff, bears the burden to allege facts sufficient to support a vicarious-liability theory or an alter-ego theory with respect to the Tribe (and the BDC and Holdings). *See, e.g.*, *Trustees of Detroit Carptenters Frindge Benefit Funds v. Patrie Const. Co.*, 618 Fed. App'x. 246, 252 (6th Cir. 2015); *G.O. Am. Shipping Co., Inc. v. China COSCO Shipping Corp. Ltd.*, 764 Fed. App'x 629, 629-30 (9th Cir. 2019); *LaSpina v. SEIU Penn. State Council*, 413 F. Supp. 3d 383, 391-92 (M.D. Pa. 2019). Coughlin has made

6

absolutely no allegations to that effect.[2] Therefore, he has not met his burden to allege sufficient facts to support his adversarial proceeding against the Tribe, and the Court should dismiss it.

## II. This Court must deny Coughlin's motion because the Tribe is immune from this proceeding.

The First Circuit has long recognized that "tribal sovereign immunity is jurisdictional in nature." *Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Housing Auth.*, 207 F.3d 21, 28 (1st Cir. 2000). And it has explained that Rule 12(b)(1) of the Federal Rules of Civil Procedure is "a large umbrella overspreading a variety of different types of challenges to subject-matter jurisdiction," including "those grounded in considerations of . . . sovereign immunity." *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 362-63 (1st Cir. 2001). Thus, courts within the First Circuit have employed Rule 12(b)(1) when faced with assertions of sovereign-immunity. *See, e.g.*, *Wolski v. Gardner Police Dep't*, 411 F. Supp. 3d 187, 191-92, 194 (D. Mass. 2019); *Sepulveda v. UMass Correctional Health, Care*, 160 F. Supp. 3d 371, 396 (D. Mass. 2016); *Great River Indus., Inc. v. Pub. Serv. Comm. of Puerto Rico*, 131 F. Supp. 2d 265, 268 (D. Puerto Rico 2001); *DeCotiis v. Whittemore*, 842 F. Supp. 2d 354, 361 (D. Me. 2012).

Under Rule 12(b)(1), the plaintiff, "as the party asserting subject matter jurisdiction, has the burden of demonstrating its existence." *In re Capitol BC Restaurants, LLC*, 568 B.R. 574, 583 (Bankr. D. Mass. 2017) (quotations omitted). When a Rule 12(b)(1) motion presents a "facial challenge" to a court's jurisdiction, *In re Ragge*, 566 B.R. 1, 6 (Bankr. D. Mass. 2017), as it does here, the court will "credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st

---

[2] In fact, because of how deficient Coughlin's allegations are, it is impossible for the Tribe to predict what arguments it will need to make on reply.

Cir. 2010). But it may also "consider whatever evidence has been submitted, such as the depositions and exhibits submitted." *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir 1996).

Indian tribes are "separate sovereigns pre-existing the Constitution." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978); *see also Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Housing Auth.*, 207 F.3d 21, 29 (1st Cir. 2000). As such, they possess and continue to exercise "inherent sovereign authority." *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 509 (1991). "Among the core aspects of [this] sovereignty . . . is the common-law immunity from suit traditionally enjoyed by sovereign powers." *Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 788 (2014). As the Supreme Court has explained, tribal sovereign immunity is a "necessary corollary to Indian sovereignty." *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g*, 476 U.S. 877, 890 (1986).

To be sure, Indian tribes are now treated as "domestic dependent nations," and remain subject to "plenary control by Congress." *Bay Mills*, 572 U.S. at 788. Thus, "Congress has always been at liberty to dispense with [tribal sovereign immunity] or limit it." *Citizen Band Potawatomi Indian Tribe*, 498 U.S. at 510. And in rare instances, Congress has "authorized limited classes of suits against Indian tribes." *Id.* Still, Congress has "consistently reiterated its approval of the immunity doctrine," reflecting its "desire to promote the goal of Indian self-government." *Id.*

Against, this legal and policy backdrop, the Supreme Court has "treated the doctrine of tribal immunity as settled law and dismissed any suit against a tribe absent congressional authorization." *Bay Mills*, 572 U.S. at 789 (quotation omitted). And in delineating the standard for finding congressional authorization for suit against an Indian tribe, the Supreme Court has spoken in no uncertain terms. "The baseline position . . . is tribal immunity; and to abrogate such

8

immunity, *Congress must unequivocally express that purpose.*" *Id.* at 790 (emphasis added). An intent to abrogate "cannot be implied." *Martinez*, 436 U.S. at 58 (quotations omitted). "That rule of construction reflects an enduring principle of Indian law: Although Congress has plenary authority over tribes, courts will not lightly assume that Congress in fact intends to undermine Indian self-government." *Bay Mills*, 572 U.S. at 790. And it accords with a foundational rule of statutory interpretation in federal Indian law: "Ambiguities in federal law [are] construed generously in order to comport with . . . traditional notions of sovereign and with the federal policy of encouraging tribal independence." *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143-44 (1980).

Coughlin has not identified any statutory abrogation of tribal sovereign immunity, but presumably he will rely on 11 U.S.C. §§ 106(a) and 101(27). Section 106(a) provides that "sovereign immunity is abrogated as to a governmental unit," with respect to Section 362. Section 101(27) provides that "governmental unit" means "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States . . . , a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government." 11 U.S.C. § 101(27). Three Circuits Courts have already addressed whether these statutes abrogate tribal sovereign immunity, and two have come to the conclusion that it does not.

*In re Whitaker* involved four adversarial proceedings against the Lower Sioux Indian Community and one of its subsidiaries. 474 B.R. 687, 689 (8th Cir. 2012). Both defendants asserted their sovereign immunity, and the trustee argued that their immunity was abrogated by Sections 106(a) and 101(27). *See id.* at 690. The Eighth Circuit rejected the trustee's argument, reasoning that, despite knowing the Supreme Court's requirement that abrogation of tribal

9

sovereign immunity be "unequivocally expressed," Congress passed and even amended Section 106 without mentioning Indian tribes. *Id.* at 693. It further explained that the Supreme Court has never treated Indian tribes as either foreign or domestic governments, but rather "domestic dependent nations," and that Congress made no effort to fold entities with that unique status into Sections 106(a) and 101(27). *Id.* at 693-94.

*In re Greektown Holdings, LLC*, involved a request for avoidance and recovery of alleged fraudulent transfers from the Sault Ste. Marie Tribe of Chippewa Indians and its gaming authority. 917 F.3d 451, 453 (6th Cir. 2019). As in *Whitaker*, the defendants asserted their sovereign immunity and the trustee argued that their immunity was abrogated by Sections 106(a) and 101(27). *See id. at* 453, 456. The Sixth Circuit too rejected the trustee's argument, noting, as the *Whitaker* court did, that Congress passed and even amended Section 106 with knowledge of the Supreme Court's extremely high bar for abrogation of tribal sovereign immunity. *Id.* at 456. It also reflected on previous instances when Congress had "unequivocally expressed" its intention to abrogate tribal sovereign immunity by specifically mentioning Indian tribes:

> We also need not hypothesize whether Congress understood the meaning of "unequivocal," as Congress kindly demonstrated as much in the years immediately preceding its enactment of the Bankruptcy Code. *See, e.g.*, Resource Conservation and Recovery Act of 1976, 42 U.S.C. §§ 6972(a)(1)(A), 6903(13), 6903(15) (authorizing suits against an "Indian tribe"); Safe Water Drinking Act of 1974, 42 U.S.C. §§ 300j-9(i)(2)(A), 300f(10), 300f(12) (authorizing suits against an "Indian tribe").

*Id.* at 457. Finally, it highlighted that its decision accorded with an important observation made by the Seventh Circuit: "'[T]here is not one example in all of history where the Supreme Court has found that Congress intended to abrogate tribal sovereign immunity *without* expressly mentioning Indian tribes somewhere in the statute.'" *Id.* at 460 (quoting *Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818, 824 (7th Cir. 2016)).

As previously suggested, one Circuit Court has diverged from the Eighth and Sixth Circuits, and no doubt Coughlin will rely on it. But notably, both the *Whitaker* and *Greektown* courts strongly rejected the reasoning and conflicting outcome in that decision. In *Krystal Energy Company v. Navajo Nation*, the Ninth Circuit concluded that Sections 106(a) and 101(27) abrogate tribal sovereign immunity, reasoning that Indian tribes are governments, whether foreign or domestic, a

> Indian tribes are certainly governments, whether considered foreign or domestic (and, logically, there is no other form of government outside the foreign/domestic dichotomy, unless one entertains the possibility of extra-terrestrial states).
>
> The Supreme Court has recognized that Indian tribes are "'domestic dependent nations' that exercise inherent sovereign authority over their members and territories." *Potawatomi,* 498 U.S. at 509, 111 S. Ct. 905 (citing *Cherokee Nation v. Georgia,* 5 Pet. 1, 17, 8 L. Ed. 25 (1831)); *see also, Blatchford v. Native Village of Noatak,* 501 U.S. 775, 782, 111 S. Ct. 2578, 115 L. Ed. 2d 686 (comparing Indian tribes to states and foreign sovereigns, and concluding that both states and Indian tribes are "domestic" sovereigns). So the category "Indian tribes" is simply a specific member of the group of domestic governments, the immunity of which Congress intended to abrogate.

357 F.3d 1055, 1057-58 (9th Cir. 2004).

The *Whitaker* court was unconvinced by the *Krystal* court's analysis of Sections 106(a) and 101(27). As it explained,

> The logic of *Krystal* . . . is that: (1) the Supreme Court has referred to Indian tribes as "domestic dependent nations"; (2) Congress enacted §§ 106 and 101(27) of the Bankruptcy Code with that reference in mind; (3) Congress abrogated sovereign immunity as to states, foreign states, and other foreign or domestic governments; and, therefore, (4) Congress must have intended to include Indian tribes as "other foreign or domestic governments."
>
> . . . But the several steps needed to justify the holding in [that case] is far from an unequivocal expression of Congressional intent to abrogate the tribes' immunity, stated in explicit legislation.

The *Greektown* court further rebuked the *Krystal* court's analysis, again adopting the reasoning of the Seventh Circuit:

11

> While not 'weighing in' on the precise issue of 11 U.S.C. §§ 106, 101(27), the Seventh Circuit made clear the flaw it saw in the Ninth Circuit's reasoning:
>
> Meyers argues that the district court dismissed his claim based on its erroneous conclusion that Indian tribes are not governments. . . . Meyers misses the point. The district court did not dismiss his claim because it concluded that Indian tribes are not governments. It dismissed his claim because it could not find a clear, unequivocal statement in FACTA that Congress meant to abrogate the sovereign immunity of Indian [t]ribes. *Meyers has lost sight of the real question in this sovereign immunity case—whether an Indian tribe can claim immunity from suit. The answer to this question must be 'yes' unless Congress has told us in no uncertain terms that it is 'no[,]' [as] [a]ny ambiguity must be resolved in favor of immunity.* Of course Meyers wants us to focus on whether the Oneida Tribe is a government so that we might shoehorn it into FACTA's statement that defines liable parties to include 'any government.' But when it comes to [tribal] sovereign immunity, shoehorning is precisely what we cannot do. Congress' words must fit like a glove in their unequivocality.

917 F.3d at 459 (quoting *Meyers*, 836 F.3d at 826-27) (emphasis added in *Greektown*, 917 F.3d 451).

This Court should heed the *Whitaker*, *Greektown*, and *Meyers* courts' observations about the flawed reasoning in *Krystal* and adopt their approach, which follows the Supreme Court's clear edict that congressional abrogation of tribal sovereign immunity must be "unequivocal." Because Sections 106(a) and 101(27) do not meet that extremely high bar, the Tribe's immunity remains intact, and the Court should dismiss this adversarial proceeding against it.

### Conclusion

Coughlin asks this Court to hold the Tribe responsible for Niiwin's alleged violations of the automatic stay, violations that occurred before the Tribe even knew that this bankruptcy proceeding existed. But Coughlin's request does not align with his own pleading or the law. Therefore, the Tribe respectfully asks the Court to dismiss this adversarial proceeding against it.

Dated: July 30, 2020								Respectfully submitted,

*/s/ Adrienne K. Walker*
Adrienne K. Walker, Esq.
Aaron M. Williams, Esq.
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts  02111
Tel:  617-542-6000
Fax:  617-542-2241
E-mail:  awalker@mintz.com
	amwilliams@mintz.com

Andrew Adams III, Esq. (pro hac vice)
Peter J. Rademacher, Esq. (pro hac vice)
Hogen Adams PLLC
1935 County Road B2 West, Suite 460
St. Paul, Minnesota 55113
Tel:  651-842-9100
Fax:  651-842-9101
E-mail:  aadams@hogenadams.com
	prademacher@hogenadams.com

13