IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>BRIAN W. COUGHLIN,<br><br>Debtor. | Chapter 13<br><br>Case No. 19-14142-FJB |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Debtor requests this Court hold Niiwin, LLC d/b/a Lendgreen ("Lendgreen"), L.D.F. Business Development Corporation ("BDC"), L.D.F. Holdings, LLC ("Holdings"), and the Lac du Flambeau Band of Lake Superior Chippewa Indians ("Tribe")[2] responsible for Lendgreen's alleged willful violations of the automatic stay. Debtor requests this relief despite his failure to allege that BDC and Holdings specifically had knowledge of his bankruptcy filing prior to the alleged stay violations that purportedly occurred.[3] Debtor further fails to allege that BDC and Holdings sent the two alleged voicemails, placed the alleged phone calls, or sent the email that Debtor claims are willful violations of the automatic stay. Debtor has failed to allege that BDC and Holdings willfully violated the automatic stay and Debtor has therefore failed to state a claim upon which relief this Court may grant relief against BDC and Holdings. Even if Debtor alleged sufficient facts to support a claim for relief, this Court lacks subject matter jurisdiction over Lendgreen, BDC, and Holdings given their entitlement to tribal sovereign immunity. Therefore, two independent grounds exist for this Court to dismiss the Stay Motion.

---

[2] The Tribe retained separate counsel and it is anticipated the Tribe will file its own motion to dismiss the Stay Motion.
[3] As detailed more thoroughly herein, and without any justification or theory to support the same, Debtor makes a collective, vague reference to Lendgreen, BDC, Holdings, and the Tribe as a singular "Creditor." Debtor makes this singular reference despite the reality of Debtor's own allegations and attachments that demonstrate that only Lendgreen made the loan, was listed in the schedules, listed in the mailing matrix, purportedly received notice of the bankruptcy filing prior to the acts complained of, and allegedly made the calls and sent the emails that form the basis of the Stay Motion.

I.      **RELEVANT BACKGROUND**

In December 2019, Debtor filed for Chapter 13 bankruptcy. Debtor listed Lendgreen in his schedules as an unsecured creditor related to a loan in the approximate amount of $1,600 (the "Lendgreen Loan"). [Doc. 1] BDC and Holdings are not listed in Debtor's schedules. Debtor alleges the mailing matrix listed Lendgreen's address and that Lendgreen received notice of the bankruptcy filing. Stay Motion ¶¶ 6, 7. Debtor does not allege that he or his counsel ever listed BDC and Holdings on the mailing matrix.

Debtor states he attempted to take his life on the evening of February 9, 2020. Affidavit ¶ 12. Debtor states that because of the incident, he was in in-hospital rehabilitative therapy from February 10, 2020 to February 20, 2020. Debtor further states that following the incident, he returned to work on March 2, 2020. Affidavit ¶ 13.

Debtor alleges that the "Creditor", through voicemails and an email, attempted to collect the Lendgreen Loan, and therefore willfully violated the automatic stay. *See* Stay Motion ¶¶ 9-13, Exhibits E, F, G. Specifically, Debtor alleges receiving an email on March 17, 2020, Motion ¶ 10, and voicemails on March 18, 2020, Motion ¶ 12, and on March 19, 2020, Motion ¶ 13. The purported email from "collections@lendgreen.com" states that the correspondence is regarding "Lendgreen account #028083572-00" and requests Debtor to direct correspondence to "collections@lendgreen.com." Stay Motion ¶ 10.

Debtor filed the Stay Motion on March 25, 2020, alleging that phone calls, the two voicemails, and the email were willful violations of the automatic stay and that he is entitled to actual damages under 11 U.S.C. § 363(k)(1). Stay Motion ¶ 14. Debtor claims the phone calls, two voicemails, and email caused Debtor substantial emotional distress "at a particularly vulnerable time when the Debtor was suffering from suicidal ideation, depression and anxiety." Stay Motion ¶ 17. Debtor requests that the Court award him actual damages, in the form of medical bills (which

insurance apparently covered), time off work, and emotional distress damages, attorney fees and costs, and punitive damages.

Debtor concedes Lendgreen is a wholly-owned subsidiary of Holdings, that Holdings is a wholly-owned subsidiary of BDC, and that BDC is a wholly-owned and operated economic arm and instrumentality of the Tribe, which is a federally recognized Indian tribe. Stay Motion ¶ 3.

## II.    APPLICABLE STANDARDS UNDER RULE 12

### A.    Federal Rule of Civil Procedure 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations that if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "That is, factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Luciani*, 584 B.R. 449, 454 (Bankr. Mass. 2018) (Feeney, J.) (citing *Bell Atl. Corp.*, 550 U.S. at 555) (quotation marks omitted). "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id*.

### B.    Federal Rule of Civil Procedure 12(b)(1)

Tribal sovereign immunity is a matter of subject matter jurisdiction, which a party may challenge by a motion to dismiss under Rule 12(b)(1). *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1302–03 (10th Cir. 2001); *Sanderlin v. Seminole Tribe of Florida*, 243 F.3d 1282, 1285 (11th Cir. 2001). The standard depends on whether there is a facial or factual challenge. *See e.g.*, *E.F.W.*, 264 F.3d at 1303. Under either approach, however, it is generally the plaintiff's burden to prove jurisdiction exists. *Bell Atl.-Pennsylvania, Inc. v. Pennsylvania Pub. Util.*

*Comm'n,* 107 F. Supp. 2d 653, 659 (E.D. Pa. 2000), *aff'd in part, appeal dismissed in part and remanded*, 273 F.3d 337 (3d Cir. 2001). Because Debtor admitted that the Tribe owns and/or controls BDC, Holdings, and Lendgreen and operate as economic arms and instrumentalities of the Tribe, Motion ¶ 3, there is no dispute that they are arms of the Tribe, and the challenge is therefore a facial challenge. In a facial challenge, where the allegations of jurisdiction in the complaint are disputed, "the factual allegations of the complaint are presumed to be true and the complaint is reviewed to ensure that each element necessary for jurisdiction is present." *Id*.

## III.  ARGUMENT

The Court should dismiss the Stay Motion pursuant to Rule 12(b)(6) because the Stay Motion fails to state a claim upon which the Court may grant relief against BDC and Holdings. Moreover, this Court should dismiss the Stay Motion pursuant to Rule 12(b)(1) because Lendgreen, BDC, and Holdings enjoy tribal sovereign immunity and the Court therefore lacks subject matter jurisdiction.

### A.  This Court Should Dismiss the Stay Motion Because it Fails to State a Claim Upon Which This Court May Grant Relief Against BDC and Holdings.

The Stay Motion' allegations are insufficient to find it plausible on its face that BDC and Holdings willfully violated the automatic stay. Pursuant to 11 U.S.C. § 362(k)(1), a debtor injured by a "willful violation of [an automatic stay] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." A debtor seeking damages under this provision bears the burden of proving, by a preponderance of the evidence: "(1) that a violation of the automatic stay occurred; (2) that the violation was willfully committed; and (3) that the debtor suffered damages as a result of the violation." *Slabicki v.*

*Gleason (In re Slabicki)*, 466 B.R. 572, 577-78 (B.A.P. 1st Cir. 2012). Debtor cannot meet his burden with respect to BDC and Holdings.[4]

### 1. Debtor fails to allege or present evidence demonstrating BDC or Holdings' conduct violated the automatic stay.

Accepting the allegations in the Stay Motion as true, Debtor cannot meet his burden to prove that BDC and Holdings willfully violated the automatic stay because Debtor fails to specifically allege any act or conduct by BDC or Holdings that would constitute a willful violation of the automatic stay.

Throughout the Stay Motion, Debtor alleges specific violations performed by the "Creditor." The Stay Motion itself reveals, however, that the alleged "Creditor" is Lendgreen. For example, Debtor concedes that the Lendgreen Loan was with Lendgreen. Motion ¶ 6; Affidavit ¶¶ 2-3. Debtor concedes that he listed Lendgreen in his schedules because Lendgreen is his creditor by virtue of the Lendgreen Loan. Motion ¶ 6; Affidavit ¶ 4. Debtor concedes Lendgreen was the entity that purportedly received notice of the bankruptcy filing by Debtor's listing Lendgreen on the mailing matrix. Motion ¶ 6-7; Affidavit ¶¶ 4-5. Debtor specifically states, under penalty of perjury, "My lawyer and I made sure that all of my creditors were accurately listed on both my Bankruptcy Schedules and on the Mailing Matrix." Affidavit ¶ 4. Despite this, Debtor did not list BDC or Holdings in the schedules or the mailing matrix. Debtor further describes a conversation with a collection specialist for the "Creditor" named Linda Ehikpehale and attaches a confirmation email from Ehikpehale. Motion ¶ 9; Exhibit D. The email indicates Ehikpehale works for Lendgreen. Exhibit D. Similarly, Debtor describes collection emails he received from the

---

[4] Lendgreen believes Debtor cannot meet his burden to prove a willful violation of the automatic stay, however, Lendgreen believes that such grounds that relate to Lendgreen go to the merits of the Stay Motion, which are premature at the motion to dismiss stage. To the extent any issues remain as to Lendgreen, BDC, and/or Holdings following the Court's resolution of this Motion, the parties reserve all rights, claims, defenses, or otherwise regarding Debtor's failure to meet his burden to prove by a preponderance of the evidence that a willful violation of the stay occurred and that Debtor suffered damages as a result of such alleged violations.

5

"Creditor" and attaches purported evidence of the same. Motion ¶ 10; Exhibit E. The purported emails indicate that the sender is Lendgreen, not BDC or Holdings.

Notably absent from the Stay Motion is a single alleged act performed by BDC or Holdings. The Stay Motion does not specifically identify an act performed by an employee of BDC or Holdings. The attachments to the Stay Motion do not suggest an alleged act performed by BDC, Holdings, or their respective employees. Without alleging a single act by BDC or Holdings, and even accepting the allegations in the Stay Motion as true, Debtor cannot meet his burden to show that BDC or Holdings willfully violated the automatic stay.

### 2. Debtor fails to allege or present evidence showing BDC or Holdings knew of the bankruptcy at the time of the alleged stay violations.

Even if the Stay Motion alleged an act by BDC or Holdings, Debtor cannot meet his burden because Debtor fails to allege facts to suggest that BDC or Holdings willfully violated the automatic stay. "[A] violation of the automatic stay must be 'willful' or the violator cannot be held liable for damages." *In re McMullen*, 386 F.3d 320, 330 (1st Cir. 2004). A violation is willful "if the creditor's conduct was intentional (as distinguished from inadvertent) and committed with knowledge of the pendency of the bankruptcy case." *Id.*; *see also Fleet Mortg. Group v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999).

As previously addressed, Debtor makes vague allegations that he gave notice of his bankruptcy filing to the "Creditor." Again, a review of the allegations and supporting documents reveals that the "Creditor" is Lendgreen, not BDC or Holdings. Debtor alleges that he listed Lendgreen in his schedules, not BDC or Holdings. Motion ¶ 6; Affidavit ¶ 4. Debtor alleges that he listed Lendgreen on the mailing matrix, not BDC or Holdings. Motion ¶ 6-7; Affidavit ¶¶ 4-5.

A review of the docket reveals that, according to Debtor's certificate of service, the earliest BDC and Holdings would have even became aware that this case existed was April 10, 2020, when

Debtor provided notice of the status hearing scheduled on the Stay Motion. Even then, it would be difficult to determine what relevance such a status hearing would have for BDC and Holdings as the notice failed to provide in conspicuous manner that Debtor had named BDC and Holdings in the Stay Motion. *See* [Doc. 37]. Despite Rule 9014(b)'s requirement that the Stay Motion be served in the same manner as a summons and complaint pursuant to Rule 7004, the certificate of service on the Stay Motion, dated March 23, 2020, states that Debtor's counsel served the Stay Motion "via electronic mail on the CM/ECF system." That was almost three months prior to any counsel entering an appearance for Lendgreen, BDC, Holdings, or the Tribe. As such, Lendgreen, BDC, and Holdings did not receive notice via electronic mail on the CM/ECF system when Debtor filed the Stay Motion.

According to Debtor's certificate of service, the earliest BDC and Holdings would have received notice of the bankruptcy filing from Debtor was April 10, 2020 [Doc. 37], twenty-two days after Debtor's last specifically alleged stay violation (March 19, 2020). Motion ¶ 13. As such, even assuming Debtor had alleged that BDC or Holdings specifically acted in a way that violated the automatic stay—which BCD and Holdings deny—Debtor has failed to allege that such alleged violation was willful because Debtor has failed to allege that BDC or Holdings specifically acted with knowledge of the pendency of the bankruptcy case. In fact, Debtor's own filings and failures to provide service according to the Bankruptcy Rules indicates otherwise. Therefore, even accepting the allegations in the Stay Motion as true, Debtor cannot meet his burden to show BDC and Holdings willfully violated the automatic stay and therefore, the Stay Motion fails to state a claim upon which the Court may grant relief.

> **3. Debtor's implied suggestion that BDC and Holdings are imputed with Lendgreen's alleged knowledge and alleged conduct defies well-settled law.**

Debtor's sole basis for seeking relief against BDC and Holdings is his apparent assumption that he can simply lump BDC, Holdings, and Lendgreen together as one entity, which he refers to as the "Creditor." In this way, he appears to suggest that Lendgreen's alleged knowledge and alleged conduct can be imputed to BDC and Holdings. This assumption is wrong.

"A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003); *see also In re Rowanoak Corp.*, 344 F.3d 126, 132-33 (1st Cir. 2003). Thus, "[c]orporate owners are allowed to avoid liability beyond the extent of their investment because of the fiction that the corporation is a separate entity." *In re Indus. Comm. Elec., Inc.*, 319 B.R. 35, 49 (D. Mass. 2005); *see also Powers v. Texaco, Inc.*, 22 F.3d 1094, 1994 WL 199075, at *3 (5th Cir. 1994).

As Debtor himself concedes, the relationship between these entities is through a chain of parent-subsidiary, corporate ownership. Motion ¶ 3. The Tribe wholly owns BDC, a tribally chartered corporation. The BDC wholly owns Holdings, a tribally organized limited liability company. Holdings wholly owns Lendgreen, also a tribally organized limited liability company. As separate entities, BDC is not responsible for Holdings' alleged wrongdoing, and Holdings' is not responsible for Lendgreen's alleged wrongdoing, and vice versa.

Notably absent from the Stay Motion is any theory or justification on why corporate parents are liable for the alleged wrongdoing of a subsidiary. Even accepting the allegations in the Stay Motion as true, Debtor cannot meet his burden to show BDC and Holdings willfully violated the automatic stay given his failure to allege any theory or basis to hold ownership liable for the alleged wrongdoing of an entity. Therefore, the Stay Motion fails to state a claim upon which the Court may grant relief.

> B.  **The Court Should Dismiss the Stay Motion Pursuant to Rule 12(b)(1) Because the Court Lacks Subject Matter Jurisdiction.**

Even if the Stay Motion stated a claim upon which this Court could grant relief, Lendgreen, BDC, and Holdings enjoy tribal sovereign immunity, and the Court therefore lacks subject matter jurisdiction.

> 1.  **Law regarding tribal sovereign immunity.**

Federally recognized Indian tribes are separate sovereigns pre-existing the Constitution and there is long-standing Supreme Court precedent recognizing common law immunity from suit. *Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 788 (2014) (the doctrine of tribal sovereign immunity has been recognized by the Supreme Court "for well over a century" and has been reaffirmed many times throughout that period) (Sotomayor, J., concurring); *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 509 (1991); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, (1978); *United States v. United States Fidelity & Guar. Co.*, 309 U.S. 506, 512–513 (1940).); *Parks v. Ross*, 52 U.S. 362 (1850).

Tribal sovereign immunity is a "necessary corollary to Indian sovereignty." *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g*, 476 U.S. 877, 890 (1986). Federally recognized tribes "enjoy immunity from suits on contracts, whether those contracts involve governmental or commercial activities, and whether they were made on or off a reservation or settlement. *In re Whitaker*, 474 B.R. 687, 690-91 (B.A.P. 8th Cir. 2012) (citing *Kiowa Tribe of Oklahoma v. Manufacturing Tech., Inc.*, 523 U.S. 751, 754–55 (1998) and *Hagen v. Sisseton–Wahpeton Comm. Coll.*, 205 F.3d 1040 (8th Cir.2000)). "This aspect of tribal sovereignty, like all others, is subject to the superior and plenary control of Congress. But without congressional authorization, the Indian Nations are exempt from suit." *Santa Clara Pueblo*, 436 U.S. at 59

(internal quotation marks omitted); *See also In re Prairie Island Dakota Sioux*, 21 F.3d 302, 304 (8th Cir. 1994).

Congress's abrogation of tribal sovereign immunity "cannot be implied." *Santa Clara Pueblo*, 436 U.S. at 59. It must be "unequivocally expressed" in "explicit legislation." *Kiowa Tribe*, 523 U.S. at 759. In select instances, Congress has "authorized limited classes of suits against Indian tribes." *Citizen Band Potawatomi Indian Tribe*, 498 U.S. at 510. Still, Congress has "consistently reiterated its approval of the immunity doctrine," reflecting its "desire to promote the goal of Indian self-government." *Id.*

The Supreme Court has "treated the doctrine of tribal immunity as settled law and dismissed any suit against a tribe absent congressional authorization." *Bay Mills*, 572 U.S. at 789 (quotation omitted). In delineating the standard for finding congressional authorization for suit against an Indian tribe, the Supreme Court has spoken in no uncertain terms. "The baseline position . . . is tribal immunity; and to abrogate such immunity, *Congress must unequivocally express that purpose*." *Id.* at 790 (emphasis added). An intent to abrogate "cannot be implied." *Martinez*, 436 U.S. at 58 (quotations omitted). "That rule of construction reflects an enduring principle of Indian law: Although Congress has plenary authority over tribes, courts will not lightly assume that Congress in fact intends to undermine Indian self-government." *Bay Mills*, 572 U.S. at 790. In accord with a foundational rule of statutory interpretation in federal Indian law: "Ambiguities in federal law [are] construed generously in order to comport with . . . traditional notions of sovereign immunity and with the federal policy of encouraging tribal independence." *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143-44 (1980).

### 2. Lendgreen, Holdings, and BDC Enjoy Tribal Sovereign Immunity.

Tribal sovereign immunity is broad and applies to both "governmental" activities as well as "commercial" activities of a tribe, regardless of whether the activity in question took place on- or off-reservation. *Kiowa*, 523 U.S. at 760. It is settled law that immunity extends to a tribe's political and economic subdivisions, known as "arms" of the tribe. *Alabama v. PCI Gaming Authority*, 801 F.3d 1278, 1287-88 (11th Cir. 2015); *see also Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 725-26 (9th Cir. 2008) (explaining that "tribal corporations acting as an arm of the tribe enjoy the same sovereign immunity granted to a tribe itself"); *see People v. Miami Nation Enterprises*, 2 Cal.5th 222, 236 (2016); *Wells Fargo Bank, N.A. v. Lake of the Torches Econ. Dev. Corp.*, 677 F. Supp. 2d 1056, 1061 (W.D. Wis. 2010); *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 174 (4th Cir. 2019) (find lending entities were entitled to tribal sovereign immunity as arms of an Indian tribe in an action alleging loans carried unlawfully high interest rates).

As the Stay Motion acknowledges, Lendgreen, BDC, and Holdings are tribal entities that are arms of the Tribe. Motion ¶ 3. Notwithstanding this acknowledgment, the Stay Motion does not challenge or dispute that Lendgreen, BDC, or Holdings are arms of the Tribe and that they are entitled to tribal sovereign immunity. Moreover, a court has specifically found that BDC is an arm of the Tribe entitled to tribal sovereign immunity. *Bruguier v. Lac du Flambeau Band of Lake Superior Chippewa Indians*, 237 F. Supp. 3d 867, 873-74, 876 (W.D. Wis. 2017) ("[BDC], which is an economic arm of the Tribe . . . . was established by the Tribe's constitution to promote the economic interests of the Tribe, and the Tribe is its sole owner . . . . and is entitled to sovereign immunity."). Lendgreen, BDC, and Holdings therefore enjoy tribal sovereign immunity from suit, including the Stay Motion.

### 3. The Bankruptcy Code Does Not Abrogate Tribal Sovereign Immunity.

Debtor fails to allege any abrogation or waiver of tribal sovereign immunity, despite his burden to do so in bringing the Stay Motion against entities that enjoy sovereign immunity. *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir.1995). Presumably, however, Debtor may argue that the Bankruptcy Code provides abrogation pursuant to 11 U.S.C. § 106(a).

Pursuant to Section 106(a), "sovereign immunity is abrogated as to a governmental unit," with respect to Section 362. Section 101(27) defines "governmental unit" as "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States . . . , a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government." 11 U.S.C. § 101(27). Section 101(27) does not list federally recognized Indian tribes as a "governmental unit."

Three Circuit Courts have considered whether Section 106(a), coupled with Section 101(27)'s definition of "governmental unit", constitutes the required unequivocal and unmistaken expression of Congressional intent required to abrogate tribal sovereign immunity. *See e.g.*, *In re Greektown Holdings, LLC*, 917 F.3d 451, 459–460 (6th Cir. 2019) (finding that simply because an Indian tribe may qualify as "other foreign or domestic government," section 101(27), is insufficient to meet the standard necessary to abrogate sovereign immunity); *Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818, 824 (7th Cir. 2016) (stating that although "Congress need not invoke 'magic words' to abrogate immunity" precedent indicates that "Congress['s] intent to abrogate tribal sovereign immunity [is not established] without expressly mentioning Indian tribes somewhere in the statute"); *see also In re Whitaker*, 474 B.R. 687, 691–692 (B.A.P. 8th Cir. 2012) (finding abrogation by Congress of sovereign immunity must be unequivocal and explicit, which qualities lack relative to Section 106's application to federally recognized Tribes since Congress did not refer to Indian Tribes in Section 106); *c.f. Krystal Energy Co. v. Navajo Nation*, 357 F.3d

12

1055, 1057, 1058, (9th Cir. 2004), *as amended on denial of reh'g* (Apr. 6, 2004) ("Had Congress simply stated, 'sovereign immunity is abrogated as to all parties who otherwise could claim sovereign immunity,' there can be no doubt that Indian tribes, as parties who could otherwise claim sovereign immunity, would no longer be able to do so. Similarly, here, Congress explicitly abrogated the immunity of any 'foreign or domestic government.' Indian tribes are domestic governments. Therefore, Congress expressly abrogated the immunity of Indian tribes").

As the Sixth Circuit and Eighth Circuit Bankruptcy Appellate Panel noted, Congress passed and even amended Section 106 with knowledge of the Supreme Court's high standard for abrogation of tribal sovereign immunity. *Greektown Holdings*, 917 F.3d at 456; *Whitaker*, 474 B.R. at 692. The Sixth Circuit also reflected on instances where Congress "unequivocally expressed" its intention to abrogate tribal sovereign immunity by specifically mentioning Indian tribes:

> We also need not hypothesize whether Congress understood the meaning of "unequivocal," as Congress kindly demonstrated as much in the years immediately preceding its enactment of the Bankruptcy Code. *See, e.g.*, Resource Conservation and Recovery Act of 1976, 42 U.S.C. §§ 6972(a)(1)(A), 6903(13), 6903(15) (authorizing suits against an "Indian tribe"); Safe Water Drinking Act of 1974, 42 U.S.C. §§ 300j-9(i)(2)(A), 300f(10), 300f(12) (authorizing suits against an "Indian tribe").

*Id*. at 457.

Finally, the Sixth Circuit highlighted that its decision accorded with an important observation made by the Seventh Circuit: "'[T]here is not one example in all of history where the Supreme Court has found that Congress intended to abrogate tribal sovereign immunity *without* expressly mentioning Indian tribes somewhere in the statute.'" *Id.* at 460 (quoting *Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818, 824 (7th Cir. 2016)).

As previously noted, only one Circuit Court has diverged from the Sixth and Seventh Circuits. Notably, both the *Whitaker* and *Greektown* courts strongly rejected the reasoning and

13

conflicting outcome in *Krystal Energy Company v. Navajo Nation*. In that case the Ninth Circuit reasoned as follows:

> Indian tribes are certainly governments, whether considered foreign or domestic (and, logically, there is no other form of government outside the foreign/domestic dichotomy, unless one entertains the possibility of extra-terrestrial states).
>
> The Supreme Court has recognized that Indian tribes are "'domestic dependent nations' that exercise inherent sovereign authority over their members and territories." *Potawatomi,* 498 U.S. at 509, 111 S. Ct. 905 (citing *Cherokee Nation v. Georgia,* 5 Pet. 1, 17, 8 L. Ed. 25 (1831)); *see also, Blatchford v. Native Village of Noatak,* 501 U.S. 775, 782, 111 S. Ct. 2578, 115 L. Ed. 2d 686 (comparing Indian tribes to states and foreign sovereigns, and concluding that both states and Indian tribes are "domestic" sovereigns). So the category "Indian tribes" is simply a specific member of the group of domestic governments, the immunity of which Congress intended to abrogate.

357 F.3d 1055, 1057-58 (9th Cir. 2004). As the *Whitaker* court explained,

> The logic of *Krystal* . . . is that: (1) the Supreme Court has referred to Indian tribes as "domestic dependent nations"; (2) Congress enacted §§ 106 and 101(27) of the Bankruptcy Code with that reference in mind; (3) Congress abrogated sovereign immunity as to states, foreign states, and other foreign or domestic governments; and, therefore, (4) Congress must have intended to include Indian tribes as "other foreign or domestic governments."
>
> . . . But the several steps needed to justify the holding in [that case] is far from an unequivocal expression of Congressional intent to abrogate the tribes' immunity, stated in explicit legislation.

The *Greektown* adopted a further observation from the Seventh Circuit:

> While not 'weighing in' on the precise issue of 11 U.S.C. §§ 106, 101(27), the Seventh Circuit made clear the flaw it saw in the Ninth Circuit's reasoning:
>
> Meyers argues that the district court dismissed his claim based on its erroneous conclusion that Indian tribes are not governments. He then dedicates many pages to arguing that Indian tribes are indeed governments. Meyers misses the point. The district court did not dismiss his claim because it concluded that Indian tribes are not governments. It dismissed his claim because it could not find a clear, unequivocal statement in FACTA that Congress meant to abrogate the sovereign immunity of Indian [t]ribes. *Meyers has lost sight of the real question in this sovereign immunity case—whether an Indian tribe can claim immunity from suit. The answer to this question must be 'yes' unless Congress has told us in no uncertain terms that it is 'no[,]' [as] [a]ny ambiguity must be resolved in favor of immunity.*Of course Meyers wants us to focus on whether the Oneida Tribe is a

14

> government so that we might shoehorn it into FACTA's statement that defines liable parties to include 'any government.' But when it comes to [tribal] sovereign immunity, shoehorning is precisely what we cannot do. Congress' words must fit like a glove in their unequivocally.

917 F.3d at 459 (quoting *Meyers*, 836 F.3d at 826-27) (emphasis added).

For all of these reasons, Lendgreen, BDC, and Holdings urge this Court to adopt the well-reasoned analysis of the Sixth Circuit, Seventh Circuit, Eighth Circuit Bankruptcy Appellate Panel, and the many other lower courts to have considered the issue. *See, e.g.*, *In re Star Group Communications, Inc.*, 568 B.R. 616 (Bankr. D. N.J. 2016) (agreeing with *Whitaker* and explaining that "the inquiry ends if the statutory language is unambiguous and the statutory scheme is coherent and consistent. The plain language of the statute, Section 106(a), is clear and unambiguous. It does not abrogate sovereign immunity for Indian tribes. . . . If Congress had intended to abrogate sovereign immunity to Indian tribes under section 106, it could easily and expressly have done so, but it did not."); *In re Money Center of America, Inc.*, 565 B.R. 87 (Bankr. D. Del. 2017), *order aff'd*, 2018 WL 1535464 (D. Del. 2018) (concluding "that Congress has not unequivocally abrogated the sovereign immunity of Indian tribes" and adhering to *Whitaker*); *In re Greektown Holdings, LLC*, 532 B.R. 680 (E.D. Mich. 2015); *In re Nat'l Cattle Cong.*, 247 B.R. 259, 267 (Bankr. N.D. Iowa 2000); *See also In re Mayes*, 294 B.R. 145, 148 n.10 (B.A.P. 10th Cir. 2003) (noting that 11 U.S.C. §§ 106 and 101(27) "probably" do not abrogate tribal sovereign immunity).

This Court should heed the *Whitaker*, *Greektown*, and *Meyers* courts' observations about the flawed reasoning in *Krystal* and adopt the sound approach they present. In doing so, the conclusion is that Sections 106(a) and 101(27) do not constitute the required unequivocal and unmistaken expression of Congressional intent required to abrogate tribal sovereign immunity. Therefore, the Court lacks subject matter jurisdiction and Lendgreen, BDC, and Holdings are not subject to the Stay Motion.

15

## CONCLUSION

Debtor requests this Court hold BDC and Holdings responsible for Lendgreen's alleged violations of the automatic stay, alleged violations that occurred before BDC and Holdings even knew this bankruptcy proceeding existed. Debtor's request does not align with the Bankruptcy Code, Indian law, or corporate law. Notwithstanding the Stay Motion's pleading insufficiencies, the Court lacks subject matter jurisdiction given Lendgreen, BDC, and Holdings enjoy tribal sovereign immunity, which the Bankruptcy Code has not abrogated. Therefore, Lendgreen, BDC, and Holdings respectfully request this Court deny the Stay Motion.

Dated: July 30, 2020

        Respectfully submitted,

/s/ Adrienne K. Walker
Adrienne K. Walker, Esq.
Aaron M. Williams, Esq.
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts  02111
Tel:  617-542-6000
Fax: 617-542-2241
E-mail: awalker@mintz.com
amwilliams@mintz.com

SPENCER FANE LLP

/s/  Zachary R.G. Fairlie
Scott J. Goldstein; admitted pro hac vice
Zachary R.G. Fairlie; admitted pro hac vice
1000 Walnut Street, Suite 1400
Kansas City, Missouri  64106
Tel: (816) 474-8100
Fax: (816) 474-3216
sgoldstein@spencerfane.com
zfairlie@spencerfane.com