UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br>BRIAN W. COUGHLIN,<br>　　　　　　　　　Debtor | IN PROCEEDINGS UNDER<br>CHAPTER 13<br>CASE NO. 19-14142-FJB |

## FIRST AMENDED MOTION OF THE DEBTOR TO ENFORCE THE AUTOMATIC STAY AND FOR SANCTIONS

The Debtor, Brian W. Coughlin, hereby moves, pursuant to 11 U.S.C. §§ 362(a)(6) and 362(k)(1), for an Order enforcing the automatic stay as against Niiwin, LLC doing business as Lendgreen ("Lendgreen") and its parent entities, LDF Holdings, LLC ("Holdings"), Lac du Flambeau Business Development Corporation ("BDC") and the Lac du Flambeau Band of Lake Superior Chippewa Indians (the "Tribe"), and to the extent the court determines that the Creditor has committed acts that constitute a willful violation of the automatic stay, awarding the Debtor attorneys fees and expenses and an award of punitive damages as the court deems reasonable under the circumstances. As grounds therefor, the Debtor states as follows:

## IDENTIFICATION OF PARTIES AND BASIS OF JURISDICTION

1.　　The Debtor, Brian W. Coughlin, filed his Voluntary Petition under Chapter 13 of the Bankruptcy Code on December 4, 2019.

2.　　Lendgreen is a direct creditor of the Debtor and, upon information and belief, is a Tribal Enterprise of the Lac Du Flambeau Band of Chippewa Indians, a federally-recognized Indian Tribe with a mailing address of P.O. Box 221, Lac Du Flambeau, Wisconsin 54538.

3.      Upon information and belief, Holdings is an indirect creditor of the Debtor by and through its inextricably intertwined relationship with Lendgreen, BDC, and the Tribe and its status as an integral and immediate "arm" of the Tribe.

4.      Upon information and belief, BDC is an indirect creditor of the Debtor by and through its inextricably intertwined relationship with Lendgreen, Holdings, and the Tribe and its status as an integral and immediate "arm" of the Tribe.

5.      The Tribe is a federally-recognized tribal entity, located in Lac Du Flambeau, Wisconsin.  Upon information and belief, the Tribe is an indirect creditor of the Debtor by and through its inextricably intertwined relationship with Lendgreen, Holdings, and BDC, each of which it has held out as an integral and immediate "arm" of the Tribe.  Upon information and belief, the offices of the Tribe that relate to Lendgreen have an address of 597 Peace Pipe Road, 2nd Floor, Lac du Flambeau, Wisconsin 54538.

6.      The Tribe, and, to the extent they are deemed to be separate entities, each of Lendgreen, Holdings, and BDC, is a "governmental unit" within the meaning of 11 U.S.C. § 101(27) and, as such does not enjoy any form of common-law sovereign immunity from this proceeding under 11 U.S.C. § 362, by operation of 11 U.S.C. § 106(a)(1).

7.      Upon information and belief, Lendgreen is putatively a wholly owned subsidiary of Holdings; which, in turn, is putatively a wholly owned subsidiary of BDC; which, in turn, is putatively a wholly owned and operated economic arm and instrumentality of the Tribe.

8.     Upon information and belief, and as further set forth below, the tiered

organizational structure of Lendgreen, Holdings, BDC, and the Tribe is a sham

that is intended to allow each "arm" or element of the Creditor to be able

simultaneously to claim the common-law sovereign immunity enjoyed by the

Tribe for the purpose of shielding the Tribe's Internet-based, "pay-day" lending

operations from legal scrutiny, while simultaneously shielding the Tribe's own

asseets from any prosecutor, regulator, or private party.

9.     The court's jurisdiction is authorized under the provisions of 28 U.S.C. §§ 1334(b)

and 157(b)(1), as matters concerning the administration of the bankruptcy estate

are specifically designated as "core proceedings", pursuant to 28 U.S.C. §

157(b)(2)(A).

## STATEMENT OF FACTS APPLICABLE TO ALL COUNTS

10.    Prior to the Debtor's Chapter 13 bankruptcy filing, the Debtor obtained an

unsecured "payday" loan from Lendgreen, and owed,.as of the date of the

commencement of this Chapter 13 case $1,594.91 (the "Claim").

11.    The Lendgreen was listed on the Debtor's Schedule of Unsecured Debts

(Schedule "E/F") as Item 4.17 listing the Creditor as "Lend Green", with a

mailing address of P.O. Box 221, Lac Due Flambeau, Wisconsin 54538 and listed

the last 4 digits of the account number relating to said claim of 3572. A true and

accurate copy of the relevant portion of the Debtor's Schedule "E/F" is attached

hereto as Exhibit "A".

12.    As a consequence of the Debtor's scheduling of Lendgreen's claim, the Lendgreen was properly listed on the Debtor's Mailing Matrix with a mailing address of P.O. Box 221, Lac Due Flambeau, Wisconsin 54538. A true and accurate copy of the relevant portion of the Debtor's Mailing Matrix is attached hereto as Exhibit "B".

13.    On December 4, 2019, Debtor's Counsel served a copy of the Debtor's Original Chapter 13 Plan upon Lendgreen at its mailing address of P.O. Box 221, Lac Due Flambeau, Wisconsin 54538 and filed a Certificate of Service regarding the Debtor's Original Chapter 13 Plan reflecting the same. A true and accurate copy of Certificate of Service regarding the Debtor's Original Chapter 13 Plan is attached hereto as Exhibit "C".

14.    Despite receiving actual notice of the Debtor's Chapter 13 bankruptcy filing on December 10, 2019, Lendgreen continued its collections efforts to recover from the Debtor upon the Claim, by means of text messages, electronic mail, telephone calls and voicemail messages.

15.    On February 26, 2020, during this period of insessant and unrelenting telephone calls, voicemail messages, emails and text messages from Lendgreen, the Debtor called Lendgreen and spoke with one of its collection specialists, Linda Ehikpehale, and told her that he had filed for bankruptcy protection under Chapter 13 of the Bankruptcy Code in December of 2019 and that they had been previously notified of his bankruptcy filing. Ms. Ehikpehale then immediately sent an email to the Debtor acknowledging their conversation and stated "As

earlier discussed, the email address to send the Power Of Attorney documents for

your bankruptcy case is administration@lendgreen.com." A true and accurate

copy of the February 26, 2020 email is attached hereto as Exhibit "D".

16.    Despite being notified directly by the Bankruptcy Court's Notice of Case

Commencement and Debtor's Counsel by means of the Chapter 13 Plan, and

despite the Debtor actually speaking with its collection specialist Linda

Ehikpehale on February 26, 2020, on March 17, 2020, Lendgreen nonetheless

continued with its collection efforts against the Debtor and sent another email

stating as follows:

## 150 DAYS OVERDUE AND IT IS BEING REPORTED TO CREDIT REPORTING AGENCIES
## CALL 1-877-689-1848 NOW TO MAKE
## A PAYMENT.

RE: Lendgreen account #028083572-00

**Balance Due: $1,594.91**

Hi Brian,

Your loan is 150 past due. We have reported this issue to credit reporting agencies and your
ability to receive a loan in the future may be impacted. **Call us now to set up a payment
schedule.**

Alternatively, you can authorize a direct payment by sending the following email to

collections@lendgreen.com:

*"I, Brian, authorize Lendgreen to debit the sum of $ from my account on .*

*To verify my identity, the last 4 digits of my SSN are : the last 4 digits of my routing
number are*
*_____; and the last 4 digits of my account number are ."*

If you have any questions regarding this email, please do not hesitate to contact us. Log
into your self-service account to review your loan details.

Regards,

Lendgreen Collections Department
collections@lendgreen.com
1-877-689-1848
www.lendgreen.com

A true and accurate copy of the Email sent by Lendgreen is attached hereto as Exhibit

"E".

17.     As a direct and proximate result of Lendgreen's actions in attempting to collect

upon the Claim after being notified and being fully aware of the commentment of

the Debtor's Chapter 13 bankruptcy case on December 10, 2019, the Debtor

became so depressed, despondent and anxious, that, in an effort to escape the

unrelenting, harassing efforts to collect upon the Claim, the Debtor, who was

already suffering from severe clinical depression and Type-1 Diabetes, attempted

suicide by means of an overdose of prescription medications.

18.     Luckily, the Debtor's family was able to timely intervene to prevent the Debtor's

suicide attempt, and the Debtor was taken to the Emergency Department of

Massachusetts General Hospital where he was revived. The Debtor thereafter

spent the next eleven (11) days at the Massachusetts General Hospital recovering

and incurred as a result therefor hospital bills amounting to $76,828.33.

19.     Additionally, because of his hospitalization caused by the actions of Lendgreen,

the Debtor was forced to use sick leave and vacation time from his then-employer,

the City of Boston, amounting to a loss of $9,011.55.

20.     Even while the the Debtor was recovering from his unsuccessful suicide attempt

at the Massachusetts General Hospital, he continued  to receive telephone calls

and voicemail messages and other actions, all to collect upon the Claim.

Specifically, on March 18, 2020 at 2:06 pm, Lendgreen called the Debtor's

telephone number and left a voicemail for him to contact them about a "very

important matter". A true and accurate copy of the voicemail message is attached

hereto as Exhibit "F".

21.     The following day, on March 19, 2020 at 1:53 pm, Lendgreen again called the

Debtor's telephone number and left another voicemail for him to contact them

about a "very important matter". A true and accurate copy of the voicemail

message is attached hereto as Exhibit "G".

22.     Finally, Debtor's Counsel, Richard N. Gottlieb, directly spoke with the collections

department of Lendgreen, telling her that the Debtor had attempted suicide as a

result of their collections activities despite his bankruptcy filings and demanded

that all such activities stop.

### BASIS FOR RELIEF REQUESTED
### COUNT ONE
### WILLFUL VIOLATION OF THE AUTOMATIC STAY

23.     The provisions of 11 U.S.C. § 362(a)(6), state, in pertinent part, as follows:

    Except as provided in subsection (b) of this section, a petition filed under
section 301, 302, or 303 of this title . . . operates as a stay, applicable to all
entities, of—

                                    . . .

    (6) any act to collect, assess, or recover a claim against the debtor that arose
before the commencement of the case under this title; . . . .

24.     The debt collection activities taken by Lendgreen were overtly coercive in nature

and sought to compel the Debtor to make direct payments to the Lendgreen using

allusions of the fact that it had reported the lack of payment on its claim for the past 150 days to the "credit reporting agencies" and immediately demanding payment on its claim, constitute an act to "collect, assess, or recover a claim against the debtor that arose before the commencement of the case" within the meaning of 11 U.S.C. § 362(a)(6).[1]

25.    With respect to the "willfulness" requirement under 11 U.S.C. § 362(k)(1), a violation of the automatic stay will be deemed to be "willful", if the party engaging in such conduct knew or had reason to know of the bankruptcy case and acted intentionally in such a way that the stay was violated.[2]

26.    The actions taken by Lendgreen in continuing its collections activity even after being notified by the Court, by Debtor's Counsel through the submission of the Debtor's Chapter 13 Plan, and by the Debtor directly demonstrate that the Lendgreen knew or had reason to know that the Debtor was in the midst of a Chapter 13 bankruptcy case at the time its collection activities were carried out.

27.    The violation of the provisions of 11 U.S.C. § 362(a)(6) by Lendgreen in this case is further shown to be willful because Lendgreen not only received notice of the bankruptcy filing by the Debtor from the court on or about December 10, 2019,

---

[1]    Parenthetically, it is worth noting in this case is that, under the terms of the Debtor's Original Chapter 13 Plan, the Creditor and all other general unsecured creditors like it who file proofs of claim are to be paid 100% in full. Therefore, had the Creditor bothered to file a Proof of Claim in this case by the bar date of February 12, 2020 (which it did not do), it would have been paid in full.

[2]    **In re Cordle**, 187 B.R. 1 (Bankr., N.D. Cal., 1995).

but also explicitly referenced the bankruptcy filing in the email received by the

Debtor on February 26, 2020.

28. As a direct and proximate result of the violation of the automatic stay, the Debtor

suffered extreme emotional distress from the belief that, despite his Chapter 13

bankruptcy filing, and despite making substantial Chapter 13 payments, he would

still be hounded by his creditors, at a particularly vulnerable time when the Debtor

was suffering from suicidal ideation, depression and anxiety.

29. As a direct and proximate result of the violation of the Automatic Stay, the Debtor

incurred actual damages in the form of medical bills and lost vacation time and

sick leave from his employer amounting to more than $85,000.00.

**COUNT TWO**
**ALTER-EGO, VICARIOUS, AND/OR JOINT LIABILITY OF LDF**
**HOLDINGS, LLC, LAC DU FLAMBEAU BUSINESS DEVELOPMENT**
**CORPORATION AND THE LAC DU FLAMBEAU BAND OF LAKE**
**SUPERIOR CHIPPEWA INDIANS FOR WILLFUL VIOLATION OF THE**
**AUTOMATIC STAY**

30. The Debtor reavers and incorporates all of the foregoing factual allegations

previously set forth.

31. According to the Tribe's Resolution No. 370(12), attached as Exhibit "H," and

BDC's Articles of Incorporation, attached as Exhibit "I," on or about August 27,

2012, the Tribe incorporated BDC, listing the Tribe as the "owner" of BDC, and

listing the business mailing address and principal office of BDC as 418 Little

Pines Road, P.O. Box 67, Lac du Flambeau, Wisconsin 54538.

32.    According to the Tribe's Resolution No. 550(12), attached as Exhibit "J," on or

about December 17, 2012, the Tribe approved the creation of Holdings and

Lendgreen, among other entities, for the purpose of, upon information and belief,

engaging in Internet pay-day lending operations.

(a)    Resolution No. 550(12) states that the creation of Holdings and

Lendgreen, among other entities, is an exercise of the Tribal Council's power to

"create subordinate business entities cloaked with sovereign immunity as an arm

of the Tribe."

(b)    Resolution No. 550(12) defines the term "Corporation" to refer to BDC

and states that Lendgreen shall be "wholly owned by the Corporation for purposes

of operating one or more Trbial lending business(es) and any activity directly

related to such purpose."

33.    On or about January 9, 2013, the Tribe and BDC issued "Articles of

Organization" for Niiwin, LLC (that is, Lendgreen), attached as Exhibit "K."

(a)    The preamble of the Articles of Organization states that the "incorporator"

of Lendgreen is the "undersigned."  The only signature on the Articles of

Organization is that "Tom Maulson," who is identified as the "President" of the

"Lac du Flambeau Band of Lake Superior Chippewa Indians."

(b)    Article 2 of the Articles of Organization identifies the "registered office"

of Lendgreen is "418 Little Pines, PO Box 67, Lac du Flambeau, WI 54538," that,

is, the address as that of BDC.

(c)      Articles 3 and 7 of the Articles of Organization identify BDC as the "Member" and "statutory agent" for Lendgreen.  Article 7 also repeats the same address for BDC as that given for Lendgreen's "registered office."

(d)      Article 6 of the Articles of Organization states that "[m]anagement of the limited liability company is vested in a single Manager as appointed or hired by the Member," but with the proviso that "[t]his role may also be filled by a management contractor should the Company so desire," and that the "[d]uties and responsibilities of the Manager shall [be] defined by the Company's Operating Agreement."  There is a Manager named in the Articles of Organization, but the name of the Manager is not known to the Debtor because it has been redacted from the only version of the Articles of Organization that the Debtor has been able to obtain.

34.      On July 17, 2013, Holdings and Lendgreen entered into an Operating Agreement, attached as Exhibit "L",

(a)      Section 1.2 of the Operating Agreement states that Lendgreen "shall be treated as a 100% tribally-owned and operated company, for federal and state law purposes, including all tax purposes, under the exclusive ownership, control and jurisdiction of the Lac Du Flambeau Band of Lake Superior Chippewa Indians" and "[n]o Member or Manager shall take any action inconsistent with the express intent of the parties thereto."

(b)      Section 1.7 of the Operating Agreement states that Holdings is the "sole Member" of Lendgreen.

(c)      Section 1.9 of the Operating Agreement defines the term "Member" to

"mean the Lac du Flambeau Business Development Corporation," that is, BDC.

(d)      Section 1.9 also names a "Manager" of Lendgreen, but the name of the

Manager is not known to the Debtor because it has been redacted from the only

version of the Operating Agreement that the Debtor has been able to obtain.

(e)      Section 2.1 of the Operating Agreement states that Lendgreen was

capitalized with only the sum of $100.00.

(f)      Section 2.4 of the Operating Agreement further states that "[n]o Manager

shall have the right to withdraw or distribute Capital Contributions except as

specifically provided in this Agreement."

(g)      Section 3.2 of the Operating Agreement states that certain actions shall

require "written consent from the Member, and in some instances its parent

corporation the LDF Business Development Corporation," that is, BDC.

(h)      Section 6.2 of the Operating Agreement, entitled "Mandatory

Distributions," states that "[t]here shall at all times remain $500 in [Lendgreen's]

cash accounts." and that "[w]henever the cash account balance exceeds said

amount there shall be an immediate Distribution declared and paid unless the

liabilities of [Lendgreen] are in excess of the assets."

(i)      Section 7.1 of the Operating Agreement states that Lendgreen "at all times

shall be owned exclusively by the Lac du Flambeau Business Development

Corporation," that is, BDC.

35.     At oral argument before the Supreme Court, counsel for the Tribe, BDC,

Holdings, and Lendgreen, in response to a question from Justice Alito about "the

relationship between the tribe and Lendgreen loans," stated that Lendgreen was "a

true tribal business" with its "headquarters on the reservation," with "50 to 60

employees," and with "money [that] comes from the tribe, tribal accounts."  An

except from the transcript is attached as Exhibit "M."

36.     The facts set forth above show disregard for and abuse of the corporate form as

between Tribe, BDC, Holdings, and Lendgreen in the following ways:

(a)     As set forth above, the Articles of Incorporation and the Operating

Agreement contain conflicting statements as to the identity of the "exclusive

owner[ ]" and the "Member" of Lendgreen, attributing ownership and exclusive

ownership status to the Tribe, BDC, and Holdings interchangeably.

(b)     Upon information and belief, Lendgreen was at its inception grossly

undercapitalized, and remains grossly undercapitalized today.  The $100 specified

in Section 2.1 of the Operating Agreement is insufficient capital for a business of

any size.  The $500 that is specified by Section 6.2 of the Operating Agreement as

the maximum to be left in Lendgreen's cash accounts at any time would also be

insufficient to run a business of any size, and especially one with 50 to 60

employees and a physical headquarters.

(c)     Upon information and belief, the funding for Lendgreen's operations

comes from one or more of the Tribe, BDC, and Holdings and the Tribe, BDC,

Holdings, and Lendgreen commingle their assets to fund Lendgreen's operations

while minimizing the assets that remain in Lendgreen's control, as suggested by

counsel's statement quoted above that the money for Lendgreen's operations

comes "from the tribe" and from "tribal accounts."

(d)      Upon information and belief, the purpose and effect of this corporate

structure is to permit Lendgreen to engage in Internet payday lending operations

that violate, or may violate, applicable federal and state laws; to use tribal funds to

finance some or all of Lendgreen's business activities; to frustrate federal and

state scrutiny of Lendgreen's activies by taking the the position that Lendgreen is,

in the words of Resolution 550(12), "cloaked with sovereign immunity as an arm

of the Tribe"; but, in case that immunity should prove insufficient, as it has in this

case, to avoid giving Lendgreen ownership of the funds or assets actually needed

to run a lending business.

37.   Based on the foregoing allegations, this Court should disregard the putative

separate legal between the Tribe, BDC, Holdings, and Lendgreen, and treat them

as a single unified entity, or as alter egos of one another, or as agents of one

another, such that:

(a)      notice of the Debtor's bankruptcy provided to Lendgreen was notice to the

Tribe, BDC, and Holdings;

(b)      the collection actions taken by Lendgreen in violation of the automatic

stay were actions of the Tribe, BDC, and Holdings; and

(c)     the Tribe, BDC, Holdings, and Lendgreen are jointly and severally liable

for the willful violation of 11 U.S.C. § 362(a)(6) set out above

38.     The above allegations are made on the basis of information that is known to the

Debtor, that the Debtor has obtained through the efforts of his own counsel, or

htat has otherwise become public.  The Debtor reserves the right to supplement or

amend his allegations based upon discovery in this action, including without

limitation the possibility that actions in violation of the automatic stay were

committed by non-tribal entities such as the unidentified "Manager" of Lendgreen

or other vendors, services, or contractors.

WHEREFORE, the Debtors request, pursuant to 11 U.S.C. §§ 362(a)(6) and 362(k)(1),

that the Court issue an Order:

1.  Finding that Lendgreen willfully violated the provisions of 11 U.S.C. § 362(a)(6).

2.  Finding that the Tribe, BDC, and Holdings, are jointly and severally liable for

Lendgreen's willful violation of 11 U.S.C. §362(a)(6), based on theories of alter-ego

liability, vicarious liability, or otherwise.

3.  Awarding the Debtor his actual damages, including damages for the emotional

distress caused by those willful violations of 11 U.S.C. § 362(a)(6).

4.  Awarding the Debtor his attorneys' fees and costs in an amount to be determined by

the court for the prosecution of this proceeding.

5.  Awarding the Debtor punitive damages against the Tribe, BDC, Holdings, and

Lendgreen.

6.  Awarding such other and further relief as the Court deems just and proper.


BRIAN W. COUGHLIN, Debtor
By his attorney,


Date:   9/25/2023                    */s/ Richard N. Gottlieb, Esq.*
Richard N. Gottlieb, Esq. BBO # 547970
Law Offices of Richard N. Gottlieb
Ten Tremont Street
Suite 11, 3rd Floor
Boston, MA 02108
(617) 742-4491
rnglaw@verizon.net

# Exhibit "A"

Debtor 1    Brian W. Coughlin

Case number (if known)

---

| 4.1 6 | **Inbox Credit** | Last 4 digits of account number | **HCAI** | $2,559.94 |

Nonpriority Creditor's Name

**P.O. Box 881**
**Santa Rosa, CA 95402**

Number Street City State Zip Code

Who incurred the debt? Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

Is the claim subject to offset?

■ No
☐ Yes

When was the debt incurred?    **2019**

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Payday Loan**

---

| 4.1 7 | **Lend Green** | Last 4 digits of account number | **3572** | $1,594.91 |

Nonpriority Creditor's Name

**P.O. Box 221**
**Lac Du Flambeau, WI 54538**

Number Street City State Zip Code

Who incurred the debt? Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

Is the claim subject to offset?

■ No
☐ Yes

When was the debt incurred?    **2019**

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Pay Day Loan**

---

| 4.1 8 | **LVNV Funding/Resurgent Capital** | Last 4 digits of account number | **5624** | $2,270.00 |

Nonpriority Creditor's Name

**Attn: Bankruptcy**
**Po Box 10497**
**Greenville, SC 29603**

Number Street City State Zip Code

Who incurred the debt? Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

Is the claim subject to offset?

■ No
☐ Yes

When was the debt incurred?    **Opened 06/19**

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Factoring Company Account Collection**

---

# Exhibit "B"

Greenarrow Loans
P.O. Box 170
Finley, CA 95435

Inbox Credit
P.O. Box 881
Santa Rosa, CA 95402

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Lend Green
P.O. Box 221
Lac Du Flambeau, WI 54538

LVNV Funding/Resurgent Capital
Attn: Bankruptcy
Po Box 10497
Greenville, SC 29603

Midland Credit Management, Inc.
P.O. Box 51319
Los Angeles, CA 90051-5619

Navient
Attn: Bankruptcy
Po Box 9640
Wilkes-Barre, PA 18773

TrueAccord Collections
303 2nd Street
Suite 750 South
San Francisco, CA 94107

Vlizhwaaswi, LLC d/b/a Loan at Last
P.O. Box 1193
Lac Du Flambeau, WI 54538

# Exhibit "C"

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br>BRIAN W. COUGHLIN,<br>               Debtor | IN PROCEEDINGS UNDER<br>CHAPTER 13<br>CASE NO.: 19-14142 |

## <u>CERTIFICATE OF SERVICE</u>

I, Richard N. Gottlieb, Esq., do hereby certify that I have this day served a copy of the

Debtor's Original Chapter 13 Plan dated December 4, 2019, by First-class mail postage paid

and/or electronically via the CM/ECF Electronic Messaging System on the persons listed below.


Date: <u>December 4, 2019</u>          <u>/s/ Richard N. Gottlieb, Esq.</u>
                                        Richard N. Gottlieb, Esq. BBO # 547970
                                        Law Offices of Richard N. Gottlieb
                                        Ten Tremont Street
                                        Suite 11, 3rd Floor
                                        Boston, Massachusetts 02108
                                        (617) 742-4491
                                        rnglaw@verizon.net

**<u>PERSONS SERVED:</u>**


**Carolyn Bankowski, Esq.**
Chapter 13 Trustee
(Served via CM/ECF)

**500 Fast Cash**
515 "G" Street SE
Miami, OK 74354

**American Web Loans**
3910 W. 6th Avenue
Box 27
Stillwater, OK 74074

**AmeriCredit/GM Financial**
Attn: Bankruptcy
Po Box 183853
Arlington, TX 76096

**Bank of America**
4909 Savarese Circle
Fl1-908-01-50
Tampa, FL 33634

**Big Picture Loans**
P.O. Box 704
Watersmeet, MI 49969

**Capital One**
Attn: Bankruptcy
Po Box 30285
Salt Lake City, UT 84130

**City Of Boston Cu**
1 Union St Fl 3
Boston, MA 02108

**Clarity Finance**
P.O. Box 8
Princeton, ME 04668

**Credit One Bank**
P.O. Box 98873
Las Vegas, NV 89193-8873

**CreditControl**
5757 Phantom Drive
Suite 330
Hazelwood, MO 63042

**First Premier Bank**
Attn: Bankruptcy
Po Box 5524
Sioux Falls, SD 57117

**Golden Valley Lending**
635 East Highway 20 E
Upper Lake, CA 95485

**Greenarrow Loans**
P.O. Box 170
Finley, CA 95435

**Inbox Credit**
P.O. Box 881
Santa Rosa, CA 95402

**Internal Revenue Service**
P.O. Box 7346
Philadelphia, PA 19101-7346

**Lend Green**
P.O. Box 221
Lac Du Flambeau, WI 54538

**LVNV Funding/Resurgent Capital**
Attn: Bankruptcy
Po Box 10497
Greenville, SC 29603

**Midland Credit Management, Inc.**
P.O. Box 51319
Los Angeles, CA 90051-5619

**Navient**
Attn: Bankruptcy
Po Box 9640
Wilkes-Barre, PA 18773

**TrueAccord Collections**
303 2nd Street
Suite 750 South
San Francisco, CA 94107

**Vlizhwaaswi, LLC d/b/a Loan at Last**
P.O. Box 1193
Lac Du Flambeau, WI 54538

# Exhibit "D"

Begin forwarded message:

On Wednesday, February 26, 2020, 11:58 AM, Linda Ehikpehale <collections@lendgreen.com>
wrote:



*Hello Brian,*

As earlier discussed , the email address to send the Power Of Attorney documents for your
bankruptcy case is administration@lendgreen.com

Keep in mind that you can always call us at 1-855-832-7227 , 8 AM - 7 PM (EST).



Thank you,

**Linda**
Collections Specialist
Lendgreen Collections Department

1-855-832-7227

Niiwin, LLC, d/b/a Lendgreen ("Lendgreen"), is a wholly owned subsidiary of LDF Holdings, LLC, a wholly owned subsidiary of the Lac du Flambeau Business Development Corporation, a wholly owned and operated economic arm and instrumentality of the Lac du Flambeau Band of Lake Superior Chippewa Indians ("Tribe"), a federally recognized Indian tribe. Lendgreen is organized and in good standing under the laws of the Tribe. Lendgreen is a duly licensed Financial Services Licensee of the Lac du Flambeau Tribal Lending Regulatory Authority, an independent regulatory body of the Tribe.

This is an expensive form of borrowing. Lendgreen loans are designed to assist you in meeting your short term borrowing needs and are not intended to be a long term financial solution. The Annual Percentage Rate ("APR") as applied to your loan will range depending on your payment schedule, pay frequency, loan term, and the amount of your loan. Late payments and incidents of non-payment may result in additional fees and collection activities as described in your loan agreement and as allowed by Tribal and applicable federal law. Lendgreen does not lend to residents of AR, CT, GA, MD, MN, NY, PA, VA, WV, WI, and to members of the military and their dependents Availability of installment loans is subject to change at any time at the sole discretion of Lendgreen.

All offers are subject to credit approval. Lendgreen offers loans to consumers with varying degrees of creditworthiness. Prior to offering credit, Lendgreen may conduct a credit check through specialized credit bureaus. Lendgreen does not run credit checks with TransUnion, Experian, or Equifax.

Applications must be processed by speaking with a live Customer Care Specialist before 11:30 AM ET Monday-Friday to receive funds on the same business day. Funds for applications processed after 11:30 AM ET Monday-Friday will be delivered the next business day.

You are receiving this email as a Lendgreen customer or because you have expressed interest in a loan via an affiliate. If you wish to no longer receive our communications, please unsubscribe below.

Read Lendgreen's Privacy Policy.

If you'd like to unsubscribe and stop receiving these emails click here .

# Exhibit "E"

On Tuesday, March 17, 2020, 9:08 AM, customercare@lendgreen.com wrote:

## 150 DAYS OVERDUE AND IT IS BEING REPORTED TO CREDIT REPORTING AGENCIES

## CALL 1-877-689-1848 NOW TO MAKE A PAYMENT.

**RE: Lendgreen account #028083572-00**

**Balance Due:** $1,594.91

Hi Brian,

Your loan is 150 past due. We have reported this issue to credit reporting agencies and your ability to receive a loan in the future may be impacted. **Call us now to set up a payment schedule.**

CALL NOW TO CLEAR
YOUR DEBT

Alternatively, you can authorize a direct payment by sending the following email to collections@lendgreen.com:

*"I, Brian, authorize Lendgreen to debit the sum of $_____ from my account on .*

*To verify my identity, the last 4 digits of my SSN are _____; the last 4 digits of my routing number are _____; and the last 4 digits of my account number are _____."*

*If you have any questions regarding this email, please do not hesitate to contact us. Log into your self-service*

account to review your loan details.

Regards,

Lendgreen Collections Department
collections@lendgreen.com
1-877-689-1848
www.lendgreen.com

Niiwin, LLC, d/b/a Lendgreen ("Lendgreen"), is a wholly owned subsidiary of LDF Holdings, LLC, a wholly owned subsidiary of the Lac du Flambeau Business Development Corporation, a wholly owned and operated economic arm and instrumentality of the Lac du Flambeau Band of Lake Superior Chippewa Indians ("Tribe"), a federally recognized Indian tribe. Lendgreen is organized and in good standing under the laws of the Tribe. Lendgreen is a duly licensed Financial Services Licensee of the Lac du Flambeau Tribal Financial Services Regulatory Authority, an independent regulatory body of the Tribe

All loan application decisions are made at Lendgreen's office located at 597 Peace Pipe Road, 2nd Floor, Lac du Flambeau, Wisconsin 54538 on the Tribe's reservation. If your loan application is approved by Lendgreen, your loan will be governed by Tribal law, applicable federal law, and the terms and conditions of your loan agreement.

This is an expensive form of borrowing. Lendgreen loans are designed to assist you in meeting your short term borrowing needs and are not intended to be a long term financial solution. The Annual Percentage Rate ("APR") as applied to your loan will range depending on your payment schedule, pay frequency, loan term, and the amount of your loan. Late payments and incidents of non-payment may result in additional fees and collection activities as described in your loan agreement and as allowed by Tribal and applicable federal law. Lendgreen does not lend to residents of AR, CT, GA, MD, MN, NY, PA, VA, WV, and WI or to members of the military and their dependents. Availability of installment loans is subject to change at any time at the sole discretion of Lendgreen.

Please do not reply to this email as we are unable to respond to messages sent to this address. For any inquires please contact customercare@lendgreen.com

Mailing Address:
NIIWIN, LLC d/b/a Lendgreen
PO Box 221
Lac du Flambeau, WI, 54538
1-855-832-7227

Niiwin, LLC, d/b/a Lendgreen ("Lendgreen"), is a wholly owned subsidiary of LDF Holdings, LLC, a wholly owned subsidiary of the Lac du Flambeau Business Development Corporation, a wholly owned and operated economic arm and instrumentality of the Lac du Flambeau Band of Lake Superior Chippewa Indians ("Tribe"), a federally recognized Indian tribe. Lendgreen is organized and in good standing under the laws of the Tribe. Lendgreen is a duly licensed Financial Services Licensee of the Lac du Flambeau Tribal Lending Regulatory Authority, an independent regulatory body of the Tribe.

This is an expensive form of borrowing. Lendgreen loans are designed to assist you in meeting your short term borrowing needs and are not intended to be a long term financial solution. The Annual Percentage Rate ("APR") as applied to your loan will range depending on your payment schedule, pay frequency, loan term, and the amount of your loan. Late payments and incidents of non-payment may result in additional fees and collection activities as described in your loan agreement and as allowed by Tribal and applicable federal law. Lendgreen does not lend to residents of AR, CT, GA, MD, MN, NY, PA, VA, WV, WI, and to members of the military and their dependents Availability of installment loans is subject to change at any time at the sole discretion of Lendgreen.

All offers are subject to credit approval. Lendgreen offers loans to consumers with varying degrees of creditworthiness. Prior to offering credit, Lendgreen may conduct a credit check through specialized credit bureaus. Lendgreen does not run credit checks with TransUnion, Experian, or Equifax.

Applications must be processed by speaking with a live Customer Care Specialist before 11:30 AM ET Monday-Friday to receive funds on the same business day. Funds for applications processed after 11:30 AM ET Monday-Friday will be delivered the next business day.

You are receiving this email as a Lendgreen customer or because you have expressed interest in a loan via an affiliate. If you wish to no longer receive our communications, please unsubscribe below.

Read Lendgreen's Privacy Policy.

If you'd like to unsubscribe and stop receiving these emails click here .

# Exhibit "F"

2:06 

 Voicemail



# +1 (877) 329-4638


message


call


video


mail


pay

## Today

2:05 PM   **Missed Call**

## Share Contact

## Create New Contact

## Add to Existing Contact

## Add to Emergency Contacts

## Share My Location


Favorites


Recents


Contacts


Keypad


Voicemail

# Exhibit "G"

1:53

< Recents



# (877) 329-4638

unknown


message


call


video


mail


pay

---

**Today**

1:52 PM  **Missed Call**

---

Share Contact

---

Create New Contact

---

Add to Existing Contact

---

Add to Emergency Contacts

---

Share My Location

---


Favorites


Recents


Contacts


Keypad


Voicemail

# Exhibit "H"

## RESOLUTION NO. 370(12)

**WHEREAS,** the Lac du Flambeau Band of Lake Superior Chippewa Indians (hereinafter, "Tribe") is a federally recognized Tribe organized under a Constitution pursuant to the Indian Reorganization Act of 1934, 48 Stat. 984 25 U.S.C. § 476, et. Seq. as amended; and

**WHEREAS,** pursuant to Article III, Section 1, of the Tribal Constitution, the governing body of the Tribe is the Tribal Council; and

**WHEREAS,** the Tribe is a federally recognized Tribe with all inherent rights of Tribal Sovereignty possessing inherent powers of Tribal self-government and self-determination; and

**WHEREAS,** pursuant to Article VI, Section 1(o) of the Tribal Constitution, the Tribal Council has right and ability to create business corporations to stimulate economic growth and jobs for Tribal Members; and

**WHEREAS,** the Tribal Council deems it necessary to create the L.D.F. Business Development Corporation for the purpose of expanding business development, generating additional jobs and revenue for the tribe; now, therefore be it

**RESOLVED,** by this Council, in Regular Session assembled, hereby declares that:

1. The tribal Council hereby accepts the Articles of Incorporation for L.D.F. Business Development Corporation as filed with the Tribal Secretary.
2. The Tribal President and Secretary are hereby directed and authorized to issue a Certificate of Incorporation for the L.D.F Business Development Corporation and to affix thereto the Tribal Seal.
3. The Tribal Secretary shall retain an executed original of the Articles of Incorporation of the L.D.F. Business Development Corporation in the tribal records.

## CERTIFICATION

I, the undersigned, as Secretary of the Lac du Flambeau Band of Lake Superior Chippewa Indians, a tribal government operating under a Constitution adopted pursuant to Section 16 of the Indian Reorganization Act, 25 U.S.C., s. 476, do hereby certify that the Tribal Council of the Band is composed of twelve members, of whom twelve constituting a quorum, were present at a Regular Meeting, duly called, noticed, convened, and held on the 27th Day of August, 2012, and that the foregoing resolution was duly adopted at said meeting by an affirmative vote of eleven members, none against, none abstaining, and that the said resolution has not been rescinded or amended in any way.

Elizabeth Diver, Secretary
Lac du Flambeau Band of Lake
Superior Chippewa Indians

# Exhibit "I"

### ARTICLES OF INCORPORATION

OF

### L.D.F. BUSINESS DEVELOPMENT CORPORATION

The purpose of forming the L.D.F. Business Development Corporation is to stimulate economic development for the Lac du Flambeau Tribe within the Reservation boundaries and beyond. The goal is to increase revenue and employment for the Tribal membership. The Mission of the L.D.F. Business Development Corporation is to always serve in the best interest of the Tribal Membership.

These Articles of Incorporation are designed to cultivate stability for the Corporation, and confidence for our business partners, by limiting political influences and allow the Board of Directors to manage the Corporation as an independent economic development arm of the Lac du Flambeau Tribe. These Articles provide for oversight by the Tribal Council, as Owner, over a Board of Directors as is necessary to ensure accountability of the Corporation.

The Lac du Flambeau Band of Lake Chippewa Indian Tribal Council, as the Governing Body under Article III, Section 1 of the Lac du Flambeau Tribal Constitution, hereby adopts the following Articles of Incorporation for the purpose of chartering a Corporation.

ARTICLE 1:     AUTHORITY OF INCORPORATION

SECTION 1.01: The Incorporator is the Lac du Flambeau Band of Lake Superior Chippewa Indian Tribe, by the powers vested in the Tribal Council in Article VI, Section 1(o) of the Tribal Constitution.

SECTION 1.02: The registered agent of the Corporation shall be the President of the Board of Directors, located at 418 Little Pines Road, PO Box 67, Lac du Flambeau WI S4538.

ARTICLE 2:     CORPORATION NAME

SECTION 2.01: The Name of the Corporation is L.D.F. Business Development Corporation, hereafter referred to as the Corporation.

ARTICLE 3:     LOCATION

SECTION 3.01: The Corporation is registered and the principal office is located at 418 Little Pines Road, Lac du Flambeau, Wisconsin with the mailing address of Post Office Box 67, Lac du Flambeau, WI S4538.

ARTICLE 4:     PERPETUAL

SECTION 4.01: The Corporation shall be perpetual.

ARTICLE S:     PURPOSE

SECTION 5.01: The purpose of the Corporation is to promote the economic development of the Lac du Flambeau Band of Lake Superior Chippewa Indians through investment in and development of business

opportunities, and to engage in any lawful act or activity which may be necessary or appropriate for carrying out and accomplishing the foregoing objectives and purpose.

SECTION 5.02: The Corporation shall serve as a business development arm of the Lac du Flambeau Band of Lake Superior Chippewa Indians created solely for the purpose of developing tribal businesses and promoting economic growth and achieving greater employment for the Tribal membership.

ARTICLE 6:    CORPORATE OWNERHIP AND POWERS

SECTION 6.01: The Lac du Flambeau Band of Lake Superior Chippewa Indian Tribe is the sole owner of the corporation (the "Owner").

SECTION 6.02: The Corporation shall have authority to enter into contracts or agreements of every kind and nature with any person, association, corporation, municipality, country, nation, Indian tribe, state or body politic.

SECTION 6.03: The Corporation shall have no power to pledge the credit, encumber property or real estate, nor enter into any agreement, expressly or by implication, on behalf of the Lac du Flambeau Band of Lake Superior Chippewa Indians

SECTION 6.04: The Corporation has the power to incur debts and raise, borrow and secure the payment of any money in any lawful manner.

SECTION 6.05: The Corporation has power to sue and be sued in its corporate name in courts of competent jurisdiction within the United States for disputes arising out of contracts entered into by the Corporation, and has the power to waive the Corporation's immunity from suit. Provided, however, that any such waiver of the sovereign immunity of the Corporation be accompanied by a unanimous vote of all the Directors at a duly called meeting of the Board of Directors where all Directors were present.

ARTICLE 7:    BOARD OF DIRECTORS

SECTION 7.01: The business and affairs of the Corporation shall be managed at the direction of the Board of Directors, who shall possess substantial business skills and experience. The Board of Directors shall be appointed by the Lac du Flambeau Tribal Council for two-year staggered terms.

SECTION 7.02: The Board of Directors shall report to the Owner, the activities of the Corporation, as directed by the Owner or as otherwise provided for in the By-Laws.

ARTICLE 8:    ADOPT BYLAWS

SECTION 8.01: The Board of Directors of the Corporation shall have the power to adopt bylaws for the regulation of the internal affairs of the Corporation consistent with these Articles, subject to the approval of the Owner.

ARTICLE 9:     BOARD OF DIRECTOR LIABILITY

SECTION 9.01: The members of the Board of Directors shall perform their role in good faith and in a manner the Director serves the best interests of the Owner and with such care as an ordinary prudent person would use under similar circumstances in a like position. A Director while acting in the scope of their fiduciary duties shall have no liability for actions taken while serving as a Director in connection with the business of the Corporation.

ARTICLE 10:     LIMITATIONS

SECTION 10.01: Nothing contained within these Articles of Incorporation shall serve to waive the sovereign immunity of the Lac du Flambeau Band of Lake Superior Chippewa Indian Tribe.

SECTION 10.02: The Corporation shall have no authority to pledge, dispose, or otherwise encumber real or personal property of the Lac du Flambeau Band of Lake Superior Chippewa Indians.


Executed on the 27th of August, 2012 on behalf of the Lac du Flambeau Band of Lake Superior Chippewa Tribal Council.

Thomas Maulson, Chairman

Lac du Flambeau Tribe

# Exhibit "J"

## RESOLUTION NO. 550(12)

**WHEREAS,** the Lac du Flambeau Band of Lake Superior Chippewa Indians (hereinafter, "Tribe") is a federally recognized Tribe organized under a Constitution pursuant to the Indian Reorganization Act of 1934, 48 Stat. 984 25 U.S.C. § 476, *et seq.* as amended; and

**WHEREAS,** pursuant to Article III, Section 1, of the Tribal Constitution, the governing body of the Tribe is the Tribal Council; and

**WHEREAS,** the Tribe is a federally recognized Tribe with all inherent rights of Tribal sovereignty possessing inherent powers of Tribal self-governance and self-determination; and

**WHEREAS,** pursuant to Article VI, Section 1(o) of the Tribal Constitution, the Tribal Council has the right and ability to create business corporations to stimulate economic growth and jobs for Tribal Members; and

**WHEREAS,** Tribal Council Resolution No. 370(12) approved the formation and organization of the L.D.F. Business Development Corporation (the "Corporation") and accepted the L.D.F. Business Development Corporation Articles of Incorporation for filing with the Tribal Secretary pursuant to Tribal law; and

**WHEREAS,** pursuant to Section 44a.201 of the Tribally Owed Business Organization Ordinance, the Tribal Council is empowered to create subordinate business entities cloaked with sovereign immunity as an arm of the Tribe; now, therefore be it

**RESOLVED,** by this Council, in Rescheduled Regular Session assembled, hereby approves the creation of LDF Holdings, LLC, Bezhig, LLC, Niizh LLC, Niswi LLC, Niiwin LLC, and Naanan LLC; business entities to be wholly owned by the Corporation for purposes of operating one or more Tribal lending business(es) and any activity directly related to such purpose.

## CERTIFICATION

I, the undersigned, as Secretary of the Lac du Flambeau Band of Lake Superior Chippewa Indians, a tribal government operating under a Constitution adopted pursuant to Section 16 of the Indian Reorganization Act, 25 U.S.C., s. 476, do hereby certify that the Tribal Council of the Band is composed of twelve members, of whom eleven constituting a quorum, were present at a Rescheduled Regular Meeting, duly called, noticed, convened, and held on the 17th Day of December, 2012, and that the foregoing resolution was duly adopted at said meeting by an affirmative vote of ten members, none against, none abstaining, and that the said resolution has not been rescinded or amended in any way.

Elizabeth Diver, Secretary
Lac du Flambeau Band of
Lake Superior Chippewa Indians

# Exhibit "K"

# ARTICLES OF ORGANIZATION
# OF THE
# Niiwin, LLC

The undersigned, acting as the organizer of a limited liability company pursuant to the powers vested in the Tribal Council, the governing body of the Lac du Flambeau Band of Lake Superior Chippewa Indians, Article VI, Section 1(o) of the Tribal Constitution, and as proscribed by Chapter 44 of the Lac du Flambeau Band of Lake Superior Chippewa Indians Tribal Code, the Lac du Flambeau Band of Lake Superior Chippewa Indians, hereby adopts the following Articles of Organization on January 9, 2013.

## ARTICLE 1 -NAME

The name of the limited liability company shall be the Niiwin, LLC (the "Company").

## ARTICLE 2 -KNOWN PLACE OF BUSINESS

The registered office of the limited liability company is 418 Little Pines, PO Box 67, Lac du Flambeau, WI 54538.

## ARTICLE 3- STATUTORY AGENT

The name and address of the statutory agent of the Company is:
LDF Business Development Corporation
Chief Operating Officer, Brent McFarland
PO Box 67
Lac du Flambeau, WI 54538__

## ARTICLE 4 -PURPOSE

The Company is being formed to engage in the business of operating one or more Tribal Lending business(es), and in any activities that are directly related to the accomplishment of such purpose which are lawful and consistent with these Articles.

## ARTICLE 5- DISSOLUTION

The existence of the Company shall be perpetual unless specifically set forth in the Company's Operating Agreement.

## ARTICLE 6- MANAGEMENT

Management of the limited liability company is vested in a single Manager as appointed or hired by the Member. This role may also be filled by a management contractor should the Company so desire. Duties and responsibilities of the Manager shall defined by the Company's Operating Agreement.

## ARTICLE 7- NAME AND ADDRESS OF EACH MANAGER AND MEMBER

The name and address of each person who is a Manager and Member of the Company is:

Manager:

██████████████
██████████████
██████████████
██████████████

Member:

Lac du Flambeau Business Development Corporation established pursuant to Tribal Council Resolution 370(12) whose offices are located at located at 418 Little Pines Road, PO Box 67, Lac du Flambeau WI 54538.

Dated: 1-9-13

Lac du Flambeau Band of Lake
Superior Chippewa Indians

By: _____
Tom Maulson, President

Approved pursuant to Tribal Council Resolution SSO .

# Exhibit "L"

## OPERATING AGREEMENT
### of
### Niiwin, LLC

THIS OPERATING AGREEMENT (this "Agreement") made this 17th day of July, 2013, by and between LDF Holdings, LLC, a wholly owned and operated subsidiary of the Lac du Flambeau Business Development Corporation, a wholly owned and operated instrumentality of the Lac du Flambeau Band of Lake Superior Chippewa Indians, a federally recognized Indian tribe (hereinafter "Member"), and Niiwin, LLC, a limited liability company (hereinafter "Company") each of which were formed pursuant to Tribal Council resolution and under the jurisdiction and laws of the Lac du Flambeau Band of Lake Superior Chippewa Indians.

### Article I
### Formation, Name Purpose, Definitions

**1.1    Formation.** Pursuant to Resolution No. 550 (12) of the Tribal Council of the Lac du Flambeau Band of Lake Superior Chippewa Indians ("'Resolution"), the parties have formed a tribal limited liability company effective upon the filing of the Articles of Organization of this Company with the Secretary of the Tribal Council. The parties shall immediately and from time to time hereafter, as may be required by law, execute all amendments of the Articles of Organization, and do all filing, recording and other actions as may be appropriate to comply with the operation of the Company under the Resolution.

**1.2    Intent.** It is the intent of the Member that the Company shall be a manager-managed limited liability company. It shall always be operated in a manner consistent with its treatment as a tribal entity for federal and state law purposes. It is also the intent of the Member that the company shall be treated as a 100% tribally owned and operated company, for federal and state law purposes, including all tax purposes, under the exclusive ownership, control, and jurisdiction of the Lac du Flambeau Band of Lake Superior Chippewa Indians. No Member or Manager shall take any action inconsistent with the express intent of the parties hereto.

**1.3    Name.** The name of this Company shall be:

Niiwin, LLC

**1.4    Registered Office.** The initial registered office of the Company shall be 418 Little Pines, PO Box 221, Lac du Flambeau, WI 54538, within the geographical and jurisdictional boundaries of the Lac du Flambeau Band of Lake Superior Chippewa Indians reservation.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

**1.5    Purpose.** The Company has been formed to engage in the business of operating one or more Tribal Lending business(es), and in any activities that are directly related to the accomplishment of such purpose which are lawful and consistent with the Articles of Organization.

**1.6    Term.** This Company shall commence upon the filing of its Articles of Organization and shall continue until such time as it shall be terminated under the provisions of Article IX hereof.

**1.7    Members.** The names and addresses of each of the sole Member of the Company are:

LDF Holdings LLC
418 Little Pines Road
PO Box 231
Lac du Flambeau WI 54538.

**1.8    Agent for Service of Process.** The name and business address of the agent for service of process for the Company is William R. Beson, Chief Executive Officer- LDF Business Development Corporation, or such other person as the Company shall appoint from time to time.

**1.9    Definitions.** Whenever used in this Agreement, the following terms shall have the following meanings:

(a)    "Agreement" shall mean this written Operating Agreement. No other document or oral agreement shall be treated as part of or superseding this Agreement, unless it is reduced to writing and it has been signed by the Member(s).

(b)    "Articles" shall mean the Articles of Organization filed for the Company pursuant to Tribal Council Resolution 550(12), as such Articles of Organization may be amended from time to time.

(c)    "Business Affairs" shall mean the obligations and responsibilities of the Company pursuant to any and all transaction documents as executed between the Company, Manager, and any relevant third party.

(d)    "Code" shall mean the Lac du Flambeau Band of Lake Superior Chippewa Indians Tribal Consumer Financial Services Regulatory Code, as may be amended from time to time.

(e)    "Company" shall mean the limited liability company formed pursuant to the Articles and governed by this Agreement.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

(f)    "Controller" shall mean the bonded officer of the Company who is responsible for generally supervising the financial affairs and establishing and maintaining the Company accounting system. The Company may hire a third party to conduct this activity.

(g)    "Distributable Cash" shall mean all cash, revenues and funds received from the Company operations, less the sum of the following to the extent paid or set aside by the Member(s):

(1) all principal and interest payments on indebtedness of the Company and all other sums paid to lenders:

(2) all cash expenditures incurred incident to the normal operation of the Company's business; and

(3) such cash Reserves as the Manager deems reasonably necessary to the proper operation of the Company's business.

(h)    "Fiscal Year" shall mean the Company's fiscal year. Which shall be the calendar year.

(i)    "Losses" shall mean, for each Fiscal Year, the losses and deductions of the Company determined in accordance with accounting principles consistently applied from year to year plus any expenditures described in the Internal Revenue Code of 1986, as amended.

(j)    "Manager" shall mean ██████████████████████████████████████ ████████ or any persons or person that the Member may otherwise appoint or engage to manage the Company pursuant to the Articles: The Manager shall conduct the business of the Company to the best of the Manager's ability and subject only to those restrictions set forth in the Resolution or this Agreement, shall have full and complete authority, power and discretion to make any and all decisions and to do any and all things which the Manager deems appropriate to accomplish the purpose of the Company. The Manager may also contract with a company or companies to manage the Company, if it so desires.

(k)    "Member" shall mean the Lac du Flambeau Business Development Corporation.

(1)    "Profits" shall mean, for each Fiscal year the income and gains of the Company determined in accordance with accounting principles consistently applied from year to year under the cash basis method of accounting and as reported, separately or in the aggregate, as appropriate, on the Company's information tax return filed for federal income tax purposes plus any income described in the Internal Revenue Code of 1986, as amended.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

3

(m)   "Person" shall mean any individual and any legal entity and their respective heirs, executors, administrators, legal representatives, successors, and assigns.

(n)   "Resolution" shall mean the Resolution No. 550(12), of the Tribal Council of the Lac du Flambeau Band of Lake Superior Chippewa Indians.

## Article II
## Capitalization of the Company

**2.1    Capital Contributions.** The Member has  made contribution of funds of ONE HUNDRED US DOLLARS ($100.00) on behalf of or to the Company.  These contributions shall be considered as equity contributions to the Company in exchange for the Member's 100% ownership of the Company.

**2.2    Additional Capital Contributions.**

(a)    The Member, in its sole discretion, may provide additional Capital Contributions to the capital of the Company based on the Company's obligations as provided in its other transaction documents.

(b)    Prior to the adoption of this Operating Agreement the Member has expended certain funds which may have been expended on behalf of the Company.  This may include, but is not exclusive to attorney fees, consultant fees and other regular expenses of the Company.  The Member shall review past funding of the Member to determine whether these amounts shall also be attributable to the Company as Company expenses. To the extent they are Company expenses they shall also treated as Capital of the Company.

**2.3    Use of Capital Contributions.** All Capital Contributions shall be expended only in furtherance of the business purpose and intent of the Company as set Forth in Sections 1.2 and 1.5.

**2.4    Unauthorized Withdrawals of Capital Contributions.** No Manager shall have the right to withdraw or distribute Capital Contributions except as specifically provided in this Agreement.

**2.5    Third Party Rights.** Nothing contained in this Agreement is intended or will be deemed to benefit any creditor of the Company, nor will any creditor of the Company be entitled to require the Manager to solicit or demand Capital Contributions from the Member. The Company shall not assign the Member's obligation to make Capital Contributions to the Company, if any, to creditors of the Company without the consent of the applicable Member.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

## Article III
## Management

**3.1  Management.**

    (a)  Once hired or appointed by the Company, the Manager may have the power and authority to do and perform all actions as may be necessary or appropriate to the conduct of the Company's business. Management of the Company's Business Affairs and objectives shall be vested solely in the Manager, except as limited specifically within this Agreement and in Section 3.2.  The power and the authority of the Manager shall be further limited to the Business Affairs.

    (b)  Any change in Management shall be immediately reported to the Member.

    (c)  Any successor Manager shall be appointed by the Member acting as sole member of the Company.

    (d)  The Manager may be removed as Manager, by majority vote of the Member if it is found that the Manager has committed an act constituting willful misconduct, fraud, or gross negligence.

    (e)  The Manager shall have strict fiduciary relationship to the Company and Member and shall at all times carry out business of the Company in this capacity.

    (f)  The Manager will abide by all requirements of the Code, including reporting requirements.

**3.2  Certain Restrictions on Business Powers.**  While Manager has general and broad authority under Section 3.1 (a), the Manager shall require express written consent from the Member, and in some instances its parent corporation the LDF Business Development Corporation, to do the following:

    (a)  to borrow pledge, assign, convey, encumber, grant security interest in,  guaranty, or otherwise restrict assets of the Company;

    (b)  to sell or otherwise dispose of all or substantially all of the assets of the Company;

    (c)  waive the sovereign immunity of the Company which may only be waived in accordance with written consent of the LDF Business Development Corporation ("BDC"), the parent corporation, in accordance with Section 6.05 of the BDC's Article of Incorporation as approved by Tribal Council Resolutions 370(12), 80(13) and 134(13).

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

5

### 3.3    Indemnity of Manager, Officers, Employees and Other Agents

(a)      The Company shall indemnify the Manager and make advances for expenses to the maximum extent permitted under the Code and the Management Agreement. The Company shall indemnify its officers and employees and make advances for expenses to the maximum extent permitted under the Code.

(b)      (i)      Notwithstanding any other provision of this Agreement, neither the Manager, nor any officer, or employee of the Manager shall be liable to any Member or to the Company with respect to any act performed or neglected to be performed in good faith and in a manner which such Person believed to be necessary or appropriate in connection with the ordinary and proper conduct of the Business or the preservation of its property, and consistent with the provisions of this Agreement.

(ii)      The Company shall indemnify the Manager and its officers, or employees for and hold them harmless from any liability, whether civil or criminal, and any loss, damage, or expense, including reasonable attorneys' fees, incurred in connection with the ordinary and proper conduct of the Business and the preservation of the Business and the Company's property, or by reason of the fact that such Person is or was a Manager, officer, or employee; and that with respect to any criminal action or proceeding, the Person to be indemnified had no reasonable cause to believe the conduct was unlawful. The foregoing indemnification of the Manager and its officers and employees shall extend not only to the activities of the Manager as the manager of the Company, but also to the activities of the Manager and its officers and employees as the manager of any entities owned, directly or indirectly, by the Company.

(iii)      The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of *nolo contendere* or its equivalent shall not of itself create a presumption that indemnification is not available hereunder.  The Company's obligation to indemnify the Manager, officer, employee, or agent hereunder shall be satisfied out of the assets of the Company and any subsidiary entities of the Company and if the Company's assets are insufficient to satisfy its obligation to indemnify the Manager, such Person shall not be entitled to contribution from any Member or, for the avoidance of doubt, the Lac du Flambeau Band of Lake Superior Chippewa Indians.

(c)      No amendment of this provision for indemnification or advancement of expenses shall have the effect of limiting the rights of any person previously serving as a Manager, officer, employee or agent of the Company to indemnification or advancement of expenses pursuant to this section or in accordance with the Code.

(d)      All expenses, fees and other costs incurred in connection with the provisions of this Section shall constitute operating expenses of the Company.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

**3.4    Financial Accounts.**

(a)    Opening and closing of financial institution accounts and disbursement of all Company funds shall require joint approval of the Manager and Controller.

(b)    A financial institution shall be able to rely upon a resolution duly adopted and approved by the Member specifically authorizing the opening, closing, or transacting of business for that specific account or activity.

**3.5    Books and Records.** The Manager, at the expense of the Company shall keep or cause to be kept adequate books and records for the Company, which shall contain an accurate account of all business transactions arising out of and in connection with the conduct of the Company. The financial books and records of the Company shall be kept in the method of accounting determined by the Manager, which shall be the method of accounting followed by the Company. Additionally, at the expense of the Company, the Manager shall maintain or cause to be maintained, for a period of not less than three (3) years, the following records at the Company's known place of business:

(a)    Revenues, expenses, assets, liabilities and equity;

(b)    Daily transactions;

(c)    Contracts, correspondence and other transaction documents relating to all vendors of the Company;

(d)    Customer complaints and their disposition;

1. Enforcement activities pertaining to the Company by the Tribal Lending Regulatory Authority.

2. All audits prepared by or on behalf of the Company.

(e)    A list of the full name and last known business, residence or mailing address of each Member and Manager of the Company, both past and present;

(f)    A copy of the organizational documents for the Company and all amendments thereto;

(g)    Copies of the Company's currently effective Agreement and all amendments thereto, copies of any prior Agreements no longer in effect, and copies of any writings permitted or required with respect to a Member's obligation to contribute cash, property, or services to the Company;

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

(h)    Minutes of every meeting of the Members; and,

(i)    Any written consents or approvals obtained from Members for actions taken by the Manager.

**3.6    Confidentiality.**  The Company's information and records are confidential and may not be disclosed to any Person except the Member as sole member of the Company, and in accordance with the regulations that may be established by Tribal Consumer Financial Services Regulatory Authority, and/or any other Person authorized by applicable Tribal or federal law or contract to have access to such information and records.

**3.7    Record Inspection.**  The Manager(s) shall be responsible to ensure that the premises, books and records of the Company are available for inspection during normal business hours by the Tribal Lending Regulatory Authority.

**3.8    Salaries.**  The salaries and other compensation of the Manager and other employees of the Company shall be fixed from time-to-time by the Member.

## Article IV
### Rights and Obligations of Members

**4.1    Limitation of Liability.**  The debts, obligations, and liabilities of the Company, whether arising in contract, tort, or otherwise, shall be solely the debts, obligations, and liabilities of the Company, and the Member shall not be obligated for any such debt obligation, or liability of the Company solely by reason of being a Member. Nothing herein shall be construed as a waiver of the Company or Member's Sovereign Immunity.

**4.2    Approval of Sale of All Assets.**  The Members shall have the right, by the affirmative vote of the Tribal Council, to approve the sale, exchange or other disposition of all or substantially all of the Company's assets which is to occur as part of a single transaction or plan.

**4.3    Right to Inspect Company Documents.** The Member shall have the right and the Manager shall permit, the Member to inspect and copy, at the Member's expense, any and all Company documents, including those required to be maintained pursuant to Section 3.1.

**4.4    All other Rights.**  The Member shall have and reserve all other rights not specifically limited within this Agreement.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

8

## Article V
### Meetings of Member

**5.1    Annual Meeting of Member.**  The Member shall hold an annual meeting as required under Tribal law.

## Article VI
### Profits, Losses; Distributions

**6.1    Allocation of Profits and Losses.**  All profits and losses of the Company will be allocated to the Member.

**6.2    Mandatory Distributions.**  There shall at all times remain $500 in the Company's cash accounts.   Whenever the cash account balance exceeds said amount there shall be an immediate Distribution declared and paid unless the liabilities of the Company are in excess of the assets.

**6.3    Loans to Company.**  Nothing in this Operating Agreement shall prevent the Member from making secured or unsecured loans to the Company by agreement with the Company.

**6.4    Accounting Period.**  The Company's accounting period shall be the calendar year.

## Article VII
### Restrictions on Transferability

**7.1    Restrictions on Transferability.**  The Company at all times shall be owned exclusively by the Lac du Flambeau Business Development Corporation. No transfer of interest in the Company shall be permitted without the express written consent of the Member.

For purposes of this Article VII "transfer" shall include:

(a)    Transfers by sale;

(b)    Transfers by gift;

(c)    Involuntary transfers, including transfers by operation of law,

(d)    Any other form of transfer.

Transfers and pledges in breach of the terms of this Article VII shall be void and of no effect.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

9

## Article VIII
## Additional Members

**8.1** No additional Members shall be permitted.

## Article IX
## Dissolution and Termination

**9.1** **Dissolution.** The Company shall be dissolved upon the occurrence of any of the following events:

(a) by the unanimous written agreement of the Member;

(b) upon the entry of any decree of dissolution of the Tribe; or

(c) upon the issuance of an order of dissolution by a court of competent jurisdiction or by the Lac du Flambeau Band of Lake Superior Chippewa Indians Tribal Court.

**9.2** **Effect of Dissolution.** Upon the dissolution of the Company, the Company shall cease to carry on its business, except insofar as may be necessary for the winding up of its business, but its separate existence shall continue until Articles of Termination have been filed with the Secretary of the Tribe or until a decree dissolving the Company has been entered by a court of competent jurisdiction.

**9.3** **Winding Up and Dissolution of** Assets.

(a) Upon the dissolution, an accounting shall be made by the Company's independent accountants of the accounts of the Company and of the Company's assets, liabilities and operations, from the date of the last previous accounting until the date of dissolution. The Member shall immediately proceed to wind up the affairs of the Company.

(b) If the Company is dissolved and its affairs are to be wound up, the Member shall (1) sell or otherwise liquidate all of the Company's assets as promptly as practicable, unless the Member determines to distribute assets in kind, (2) allocate: any profits or loss resulting from such sales to the Member's Capital Accounts, (3) discharge all liabilities of the Company, other than to Member, including all costs relating to the dissolution, 4) establish such reserves as may be reasonably necessary to provide for contingent liabilities of the Company (for purposes of determining the Capital Accounts of the Member, the amounts of such reserves shall be deemed to be an expense of the Company), (5) discharge any liabilities of the Company to the Member other than on account of their interests in Company capital or profits, and (6) distribute the remaining assets in the following order:

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

(1) If any assets are to be distributed in kind, the net fair market value of such assets as of the date of dissolution shall be determined by appraisal or by agreement of the Member. Such assets shall be deemed to have been sold as of the date of dissolution tor their fair market value.

(2) The positive balance of the Member's Capital Account as determined after taking into account all Capital Account adjustments for the Company's taxable year during which the liquidation occurs, shall be distributed to the Member, either in cash or in kind, with any assets distributed in kind being valued for this purpose at their fair market value.

(c)     Notwithstanding anything to the contrary in this Agreement, upon a liquidation, if any Member has a negative deficit Capital Account balance, such Member shall have no obligation to make any contribution to the capital of the Company, and the negative balance of such Member's Capital Account shall not be considered a debt owed by such Member to the Company or to any other person for any purpose whatsoever.

## Article X
## Licensing

**10.1     License.** The Company shall obtain a duly authorized Consumer Financial Services License, or other licenses as may be required under the Tribal Consumer Financial Services Regulatory Code, before engaging in any Lending activities.

## Article XI
## Miscellaneous Provisions

**11.1     Application of Law.** This Operating Agreement and its application and interpretation shall be governed exclusively by its terms and by the laws of the Lac du Flambeau Band of Lake Superior Chippewa Indians, where applicable.

**11.2     Amendments.** This Agreement may not be amended except by a resolution duly adopted by the Member and express approval of the Tribe.

**11.3     Execution.** The Member hereby agrees to execute such other and further statements of interest and holdings, designations, powers of attorney and other instruments necessary to comply with any law, rules or regulations.

**11.4     Severability.** If any provision of this Operating Agreement or the application thereof to any person or circumstance shall be invalid, illegal or unenforceable to any extent the remainder of this Operating Agreement and the application thereof shall not be affected and shall be enforceable to the fullest extent permitted by law.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

**11.5   Non-waiver of Sovereign Immunity.**   Nothing in this Operating Agreement shall be construed to be a waiver of the Company, the Member's, or the Tribe's Sovereign Immunity to suit.

**11.6   Creditors.** None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditors of the Company.

LDF HOLDINGS, LLC, Member

By: _____

Name: William R. Beson
Title: CEO, LDF Business Development Corp.

Approved by Tribal Council Resolution: 550(12)

{00071440.DOC / 2 }

12

# Exhibit "M"

# SUPREME COURT
# OF THE UNITED STATES

---

           IN THE SUPREME COURT OF THE UNITED STATES

- - - - - - - - - - - - - - - - - -

LAC DU FLAMBEAU BAND OF                )

LAKE SUPERIOR CHIPPEWA INDIANS,        )

ET AL.,                                )

           Petitioners,                )

              v.                       ) No. 22-227

BRIAN W. COUGHLIN,                     )

           Respondent.                 )

- - - - - - - - - - - - - - - - - -

Pages:  1 through 70

Place:  Washington, D.C.

Date:   April 24, 2023

---

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 206
Washington, D.C.  20005
(202) 628-4888
www.hrccourtreporters.com

1

```
 1        IN THE SUPREME COURT OF THE UNITED STATES

 2    - - - - - - - - - - - - - - - - - -

 3    LAC DU FLAMBEAU BAND OF              )

 4    LAKE SUPERIOR CHIPPEWA INDIANS,      )

 5    ET AL.,                             )

 6                   Petitioners,          )

 7              v.                         ) No. 22-227

 8    BRIAN W. COUGHLIN,                   )

 9                   Respondent.           )

10    - - - - - - - - - - - - - - - - - -

11

12                    Washington, D.C.

13                Monday, April 24, 2023

14

15        The above-entitled matter came on for

16    oral argument before the Supreme Court of the

17    United States at 11:03 a.m.

18

19

20

21

22

23

24

25
```

1    in the text -- but perhaps they thought:  Okay,

2    well, it doesn't -- it's not as fair to abrogate

3    the sovereign immunity of Indian tribes, who

4    weren't part of that deal or bargain struck in

5    the Constitutional Convention.

6            JUSTICE ALITO:  Mr. Shah --

7            JUSTICE SOTOMAYOR:  Counsel --

8            JUSTICE ALITO:  -- just out of

9    curiosity, could I ask you a few questions about

10   the relationship between the tribe and Lendgreen

11   loans?

12           MR. SHAH:  Yes.

13           JUSTICE ALITO:  Who actually operates

14   this?

15           MR. SHAH:  The tribe does, Your Honor.

16   This is not a rent-a-tribe situation.  The other

17   side has never alleged it.  Actually, this is a

18   true tribal business.  The headquarters is on

19   the reservation.  They have 50 to 60 -- this is

20   all outside the record, but I'm just answering

21   your question -- 50 to 60 employees.  The money

22   comes from the tribe, tribal accounts.  This is

23   a fully tribal operation.

24           Of course, they use third-party

25   vendors, servicers and all, like any other

1    business that may not be tribal lenders, but

2    this is not one of those situations that the

3    amicus brief talks about in other cases about

4    renting tribes' immunity.  This is a tribal

5    business.

6              JUSTICE ALITO:  Well, what -- what

7    percentage of the people who are actually

8    running this business are tribal members?

9              MR. SHAH:  Again, this is outside the

10   record.  My knowledge -- and I -- I -- if you

11   take out the outside vendors, 100 percent is my

12   knowledge.  It's got 50 to 60 employees who

13   operate out of a headquarters located.

14              Now I can't tell you whether all of

15   those 50, 60 employees who work in the

16   headquarters on the tribal reservation are

17   tribal members, but that's the -- that --

18   that -- that -- that's the extent of my

19   knowledge on that.

20              JUSTICE ALITO:  Do you dispute the --

21   the facts that are set out in Respondent's brief

22   about what was done to --

23              MR. SHAH:  Your Honor -- Your Honor,

24   the --

25              JUSTICE ALITO:  -- his client that

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

In re
BRIAN W. COUGHLIN,
                    Debtor

IN PROCEEDINGS UNDER
CHAPTER 13
CASE NO. 19-14142-FJB

## <u>CERTIFICATE OF SERVICE</u>

I, Richard N. Gottlieb, Esq., hereby certify that I have this day served a copy of the

the First Amended Motion of the Debtor to Enforce the Automatic Stay

attached hereto upon on persons listed below, via electronic mail on the CM/ECF system.

Date:   11/9/2023

*/s/ Richard N. Gottlieb, Esq.*
Richard N. Gottlieb, Esq. BBO # 547970
Law Offices of Richard N. Gottlieb
Ten Tremont Street
Suite 11, 3rd Floor
Boston, MA 02108
(617) 742-4491
rnglaw@verizon.net

Persons served
:
**Carolyn Bankowski, Esq.**
Chapter 13 Trustee
(Served via CM/ECF)

**Adrienne Walker, Esq.**
Locke Lord, LLP

-and-

**Zachary Fairlie, Esq.**
Spencer Fane, LLP.

Counsels of Record to Niiwin, LLC d/b/a
"Lendgreen";
LDF Holdings, LLC;
Lac du Flambeau Business Development
Corporation; and
Lac du Flambeau Band of Lake Superior
Chippewa Indians
(Served via CMECF)