IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT MASSACHUSETTS

In re:

BRIAN W. COUGHLIN,

Debtor.

IN PROCEEDINGS UNDER
CHAPTER 13
CASE NO. 19-14142-CJP

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Despite now clarifying in his Amended Motion to Enforce the Automatic Stay it was Respondent Niiwin, LLC d/b/a "Lendgreen," *and Lendgreen only*, that allegedly willfully violated the bankruptcy stay, Debtor incredibly still requests this Court hold L.D.F. Business Development Corporation ("BDC"), L.D.F. Holdings, LLC ("Holdings"), and the Lac du Flambeau Band of Lake Superior Chippewa Indians ("Tribe") responsible for Lendgreen's alleged actions. Tellingly, Debtor now alleges that "Lendgreen knew or should had reason to know that the Debtor was in the midst of a Chapter 13 bankruptcy," and "Lendgreen…continu[ed] its collections activity even after notified by the Court…Debtor's Counsel…and by the Debtor directly." Doc 230 at ¶ 26. These allegations do not, and cannot, state a claim upon which this Court may grant relief against BDC, Holdings, and the Tribe for Count I, and Debtor's newfound alter ego theory of liability (Count II) does not save this fatal flaw. Even assuming Debtor alleged sufficient facts to support an alter ego theory of liability, such a theory is not contemplated under the Bankruptcy Code and this Court lacks subject matter jurisdiction over BDC, Holdings, and the Tribe for Count II given their entitlement to tribal sovereign immunity. This Court should therefore dismiss the Stay Motion as against BDC, Holdings, and the Tribe.

KC 15247351.2

I. **RELEVANT BACKGROUND**

In December 2019, Debtor filed for Chapter 13 bankruptcy. Debtor listed Lendgreen in his schedules as an unsecured creditor related to a loan in the approximate amount of $1,600 (the "Lendgreen Loan"). (Doc. 1) Neither BDC, Holdings, nor the Tribe are not listed in Debtor's schedules. Debtor alleges the mailing matrix listed Lendgreen's address and that Lendgreen received notice of the bankruptcy filing. Stay Motion ¶ 11.[1] Importantly, Debtor does not allege that he or his counsel ever listed BDC, Holdings, or the Tribe on the mailing matrix.

Debtor states he attempted to take his life on the evening of February 9, 2020. *Id.* at ¶ 17. Debtor states that because of the incident, he spent the next eleven days at Massachusetts General Hospital recovering, amounting to $76,828.33 in medical bills. *Id.* at ¶ 18.

Debtor alleges that Lendgreen, through text messages, e-mails, calls, and voicemails, attempted to collect on the Lendgreen Loan, and therefore willfully violated the automatic stay. *See id.* at ¶¶ 14-16. Specifically, Debtor alleges receiving an email on March 17, 2020, Stay Motion ¶ 16, and voicemails on March 18, 2020, *id.* at ¶ 20, and on March 19, 2020, *id.* at ¶ 21. The purported email from "collections@lendgreen.com" states that the correspondence is regarding "Lendgreen account #028083572-00" and requests Debtor to direct correspondence to "collections@lendgreen.com." *Id.* at ¶ 16.

Debtor filed his original Motion to Enforce the Automatic Stay on March 25, 2020 (Doc. 27), alleging that phone calls, the two voicemails, and the email were willful violations by "Respondents," which included Lendgreen, BDC, Holdings, and the Tribe, of the automatic stay and that he was entitled to actual damages under 11 U.S.C. § 363(k)(1). On November 9, 2023,

---

[1] All references to Debtor's Stay Motion shall be construed to reference Debtor's First Amended Motion of the Debtor to Enforce the Automatic Stay and For Sanctions (Doc. 230), filed November 9, 2023.

Debtor filed an amended Stay Motion, which contains two major changes relevant to the present motion: (1) clarifying that "**Lendgreen** knew or should had reason to know that the Debtor was in the midst of a Chapter 13 bankruptcy," and "Lendgreen…continu[ed] its collections activity even after notified by the Court…Debtor's Counsel…and by the Debtor directly" Stay Motion at ¶ 26; and (2) adding, a "Count Two" against BDC, Holdings, and the Tribe, titled "Alter-ego, vicarious, and/or joint liability of Holdings, BDC, the Tribe. *See* Stay Motion at p. 9.

Debtor concedes Lendgreen is a wholly-owned subsidiary of Holdings, that Holdings is a wholly-owned subsidiary of BDC, and that BDC is a wholly-owned and operated economic arm and instrumentality of the Tribe, which is a federally recognized Indian tribe. Stay Motion ¶ 3.

## II.    APPLICABLE STANDARDS UNDER RULE 12

### A.    Federal Rule of Civil Procedure 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations that if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "That is, factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Luciani*, 584 B.R. 449, 454 (Bankr. Mass. 2018) (Feeney, J.) (citing *Bell Atl. Corp.*, 550 U.S. at 555) (quotation marks omitted). "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id*.

### B.    Federal Rule of Civil Procedure 12(b)(1)

Tribal sovereign immunity is a matter of subject matter jurisdiction, which a party may challenge by a motion to dismiss under Rule 12(b)(1). *E.F.W. v. St. Stephen's Indian High Sch.*,

264 F.3d 1297, 1302–03 (10th Cir. 2001); *Sanderlin v. Seminole Tribe of Florida*, 243 F.3d 1282, 1285 (11th Cir. 2001). This standard depends on whether there is a facial or factual challenge. *See e.g.*, *E.F.W.*, 264 F.3d at 1303. Under either approach, however, it is generally the plaintiff's burden to prove jurisdiction exists. *Bell Atl.-Pennsylvania, Inc. v. Pennsylvania Pub. Util. Comm'n,* 107 F. Supp. 2d 653, 659 (E.D. Pa. 2000), *aff'd in part, appeal dismissed in part and remanded*, 273 F.3d 337 (3d Cir. 2001). Because Debtor admitted that the Tribe owns and/or controls BDC, Holdings, and Lendgreen and operate as economic arms and instrumentalities of the Tribe, Stay Motion ¶ 3-5, there is no dispute that they are arms of the Tribe, and the challenge is therefore a facial challenge. In a facial challenge, where the allegations of jurisdiction in the complaint are disputed, "the factual allegations of the complaint are presumed to be true and the complaint is reviewed to ensure that each element necessary for jurisdiction is present." *Bell Atl.-Pennsylvania,* 107 F. Supp. 2d at 659.

### III. ARGUMENT

The Court should dismiss Count I of the Stay Motion against BDC, Holdings, and the Tribe pursuant to Rule 12(b)(6) because the Stay Motion fails to state a valid for relief under 11 U.S.C. § 362(k)(1). The Stay Motion now clarifies that Lendgreen, and only Lendgreen, is a "creditor" of Debtor, as necessary for relief under § 362(k)(1). Debtor's attempts to expand relief under § 362(k)(1) to corporate entities and a federally recognize Indian tribe who did not receive notice of the stay or violate the stay in any way is extraordinary relief not contemplated or intended by the Bankruptcy Code and therefore cannot, as a matter of law, state a plausible claim against BCD, Holdings, or the Tribe.

Alternatively, to the extent this extraordinary avenue for relief is allowed, the Court should dismiss the Stay Motion pursuant to Rule 12(b)(1) because BDC, Holdings, and the Tribe enjoy tribal sovereign immunity for Debtor's alter ego claim because Debtor has not shown Congress

clearly and unequivocally abrogated the Tribe's sovereign immunity for Debtor's newfound federal common law alter ego claim. The Court, therefore, lacks subject matter jurisdiction for Count II and that claim must be dismissed.

  **A. This Court Should Dismiss Count I of the Stay Motion Against BDC, Holdings, and the Tribe Because it Fails to State a Claim Upon Which This Court May Grant Relief Against Those Entities.**

The Stay Motion's allegations are insufficient to state a plausible claim against BDC, Holdings, and the Tribe for violating the bankruptcy stay.[2] Debtor brings this action pursuant to 11 U.S.C. § 362(k)(1), which provides that a debtor injured by a "willful violation of [an automatic stay] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." As this Court has recently explained, "[u]nder § 362(k), a debtor must prove by a preponderance of the evidence that ***the creditor*** took action that violated the stay, the act was committed willfully, and the debtor suffered damages." *In re Rellstab*, 622 B.R. 495, 498–99 (Bankr. D. Mass. 2020) (cite Pano) (citation omitted) (emphasis added).

Although Debtor alleges a willful violation of the automatic stay, Debtor's allegations now make clear that Lendgreen, and only Lendgreen, committed the acts underlying the alleged violation and that are necessary for relief. *See* Doc 230 at ¶ 26 ("Lendgreen knew or should had reason to know that the Debtor was in the midst of a Chapter 13 bankruptcy," and "Lendgreen…continu[ed] its collections activity even after notified by the Court…Debtor's Counsel…and by the Debtor directly."). In fact, Debtor admits the only party that received the Debtor's Schedule of Unsecured Debts was Lendgreen, not BDC, Holdings, or the Tribe. Doc. 230

---

[2] Lendgreen also believes Debtor cannot meet his burden to prove a willful violation of the automatic stay. However, Lendgreen believes that its challenges related to Lendgreen's violation go to the merits of the Stay Motion, which are premature at the motion to dismiss stage. Lendgreen has therefore opted to file an answer and not participate in the present motion to dismiss. To the extent any issues remain as to Lendgreen, BDC, Holdings, and/or the Tribe following the Court's resolution of this Motion, the parties reserve all rights, claims, defenses, or otherwise regarding Debtor's failure to meet his burden to prove by a preponderance of the evidence that a willful violation of the stay occurred and that Debtor suffered damages as a result of such alleged violations.

at ¶ 11-12 ("<u>Lendgreen</u> was listed on the Debtor's Schedule of Unsecured Debts," and "<u>Lendgreen</u> was properly listed on the Debtor's Mailing Matrix…").

Now explicitly recognizing that BDC, Holdings and the Tribe are not creditors of Debtor, never received Debtor's Schedule of Unsecured Debts, nor did they contact Debtor a ***single time***, Debtor has shifted gears and attempts to hold BDC, Holdings, and the Tribe liable via a general alter ego/vicarious liability/joint liability claim. Specifically, Debtor alleges BDC, Holdings, and the Tribe have an "inextricably intertwined relationship with Lendgreen," and "upon information and belief…the tiered organizational structure of Lendgreen, Holdings, BDC, and the Tribe is a sham." Doc. 230 at ¶¶ 3-5, 8.

Even if these allegations are accepted as true at this stage,[3] Debtor's attempt to hold admittedly ***non-creditor*** entities liable for a bankruptcy stay violation cannot, as a matter of law, constitute a valid claim against BDC, Holdings, and the Tribe because that relief is not contemplated by the Bankruptcy Code, specifically 11 U.S.C. § 362(k)(1). Instead, as courts in the First Circuit have repeatedly recognized, a Debtor only states a plausible claim for relief under § 362(k)(1) when it sufficiently alleges a ***creditor's*** acts and liability. *See Laboy v. Doral Mortg. Corp. (In re Laboy)*, 647 F.3d 367, 374 (1st Cir. 2011) ("A violation is willful if a creditor's conduct was intentional (as distinguished from inadvertent)…"); *Fleet Mortg. Grp., Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999) (Debtor must show "[t]he debtor…provid[ed] the creditor with actual notice"); *In re Rosa*, 313 B.R. 1, 8 (Bankr. D. Mass. 2004) ("Any creditor that receives notice of a violation and fails to take adequate steps to rectify the situation can no longer claim innocence");

---

[3] BDC, Holdings, and the Tribe hotly dispute that their organizational structure, which is organized based on Tribal law and for legitimate Tribal practices, is a "sham." But because Debtor's claim fails for a multitude of other reasons, the substantive legitimacy of Debtor's alter ego claim is not extensively addressed in the present motion. In so choosing, however, BDC, Holdings, and the Tribe do not waive their right to challenge the substantive legitimacy of this claim and expressly reserve the right to do so at a later time.

6

*In re Adams*, 212 B.R. 703, 708 (Bankr. D. Mass. 1997) (relief proper where debtor shows "(1) the creditor has knowledge of the petition.").

In fact, this very Court has recognized that multiple elements of Debtor's claim require allegations that a *creditor's* actions violated 11 U.S.C. § 362, explaining "[a] violation is willful if a creditor's conduct was intentional…A willful violation does not require a specific intent to violate the automatic stay, rather, the creditor need only intend the act which violates the stay." *In re Silk*, 549 B.R. 297, 301 (Bankr. D. Mass. 2016) (Panos, J.) (internal quotations and citations omitted) (emphasis added); *see also In re Rellstab*, 622 B.R. 495, 498–99 (Bankr. D. Mass. 2020) (Panos, J.) ("Under § 362(k), a debtor must prove by a preponderance of the evidence that the creditor took action that violated the stay, the act was committed willfully, and the debtor suffered damages"); *In re Evans*, No. 17-40402-CJP, 2022 WL 4641840, at *2 (Bankr. D. Mass. Sept. 30, 2022) (Panos, J.) (citing *Laboy v. Doral Mortg. Corp. (In re Laboy)*, 647 F.3d 367, 374 (1st Cir. 2011)) ("A violation is willful if a creditor's conduct was intentional…").

Thus, Debtor's attempt to hold non-creditors BDC, Holdings, and the Tribe liable for the alleged violations of 11 U.S.C. § 362(k)(1) (Count I) must be rejected. BDC, Holdings, and the Tribe have conducted extensive research into the issue, including a nationwide search for any case, in any jurisdiction, wherein a debtor attempts to hold non-creditor entities liable for an alleged stay violation. BDC, Holdings, and the Tribe were unable to find a single case allowing, or even addressing, such extraordinary relief. This dearth of caselaw further exemplifies that the relief Debtor seeks here goes far beyond the text, caselaw, and intent of § 362(k)(1). This Court should outright reject Debtor's attempt to mold the Bankruptcy Code to his liking and dismiss Count I against BDC, Holdings, and the Tribe.

**B.     The Court should dismiss Count II of the Stay Motion because the Court lacks subject matter jurisdiction over that claim.**

Even if this Court found a Debtor could, in theory, hold alter-ego corporations liable for a related entities' stay violation, such relief is not warranted here because BDC, Holdings, and the Tribe are immune from such claim. Here, because Debtor's alter-ego claim is rooted in federal common law, not the Bankruptcy Code, Debtor must show that Congress has clearly and unequivocally abrogated the Tribe's immunity for his claim to succeed. Debtor has failed to do so, and Count II must therefore be dismissed for lack of subject matter jurisdiction.

**1.     Law Regarding Tribal Sovereign Immunity.**

Federally recognized Indian tribes are separate sovereigns pre-existing the Constitution and there is long-standing Supreme Court precedent recognizing common law immunity from suit. *Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 788 (2014) (the doctrine of tribal sovereign immunity has been recognized by the Supreme Court "for well over a century" and has been reaffirmed many times throughout that period) (Sotomayor, J., concurring); *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 509 (1991); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, (1978); *United States v. United States Fidelity & Guar. Co.*, 309 U.S. 506, 512–513 (1940).); *Parks v. Ross*, 52 U.S. 362 (1850).

Tribal sovereign immunity is a "necessary corollary to Indian sovereignty." *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g*, 476 U.S. 877, 890 (1986). Federally recognized tribes "enjoy immunity from suits on contracts, whether those contracts involve governmental or commercial activities, and whether they were made on or off a reservation or settlement. *In re Whitaker*, 474 B.R. 687, 690-91 (B.A.P. 8th Cir. 2012) (citing *Kiowa Tribe of Oklahoma v. Manufacturing Tech., Inc.*, 523 U.S. 751, 754–55 (1998) and *Hagen v. Sisseton–Wahpeton Comm. Coll.*, 205 F.3d 1040 (8th Cir.2000)). "This aspect of tribal sovereignty, like all

others, is subject to the superior and plenary control of Congress. But without congressional authorization, the Indian Nations are exempt from suit." *Santa Clara Pueblo*, 436 U.S. at 59 (internal quotation marks omitted); *See also In re Prairie Island Dakota Sioux*, 21 F.3d 302, 304 (8th Cir. 1994).

It must be "unequivocally expressed" in "explicit legislation." *Kiowa Tribe*, 523 U.S. at 759. Although, Congress has "authorized limited classes of suits against Indian tribes," *Citizen Band Potawatomi Indian Tribe*, 498 U.S. at 510, Congress has "consistently reiterated its approval of the immunity doctrine," reflecting its "desire to promote the goal of Indian self-government." *Id.*

The Supreme Court has "treated the doctrine of tribal immunity as settled law and dismissed any suit against a tribe absent congressional authorization." *Bay Mills*, 572 U.S. at 789 (quotation omitted). In delineating the standard for finding congressional authorization for suit against an Indian tribe, the Supreme Court has spoken in no uncertain terms. "The baseline position . . . is tribal immunity; and to abrogate such immunity, Congress must unequivocally express that purpose." *Id.* at 790 (emphasis added). An intent to abrogate "**cannot be implied**." *Martinez*, 436 U.S. at 58 (quotations omitted) (emphasis added). "That rule of construction reflects an enduring principle of Indian law: Although Congress has plenary authority over tribes, courts will not lightly assume that Congress in fact intends to undermine Indian self-government." *Bay Mills*, 572 U.S. at 790. In accord with a foundational rule of statutory interpretation in federal Indian law: "Ambiguities in federal law [are] construed generously in order to comport with . . . traditional notions of sovereign immunity and with the federal policy of encouraging tribal independence." *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143-44 (1980).

Put simply, Congress must make its intent to abrogate sovereign immunity "unmistakably clear in the language of the statute." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000). This well-settled rule applies to federally recognized tribes no less than other defendants with sovereign immunity. *Id*. If "there is a plausible interpretation of the statute" that preserves sovereign immunity, Congress has not unambiguously expressed the requisite intent. *FAA v. Cooper*, 566 U.S. 284, 290 (2012).

### 2. BDC, Holdings, and the Tribe Enjoy Tribal Sovereign Immunity.

Tribal sovereign immunity is broad and applies to both "governmental" activities as well as "commercial" activities of a tribe, regardless of whether the activity in question took place on- or off-reservation. *Kiowa*, 523 U.S. at 760. It is settled law that immunity extends to a tribe's political and economic subdivisions, known as "arms" of the tribe. *Alabama v. PCI Gaming Authority*, 801 F.3d 1278, 1287-88 (11th Cir. 2015); *see also Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 725-26 (9th Cir. 2008) (explaining that "tribal corporations acting as an arm of the tribe enjoy the same sovereign immunity granted to a tribe itself"); *see People v. Miami Nation Enterprises*, 2 Cal. 5th 222, 236 (2016); *Wells Fargo Bank, N.A. v. Lake of the Torches Econ. Dev. Corp.*, 677 F. Supp. 2d 1056, 1061 (W.D. Wis. 2010); *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 174 (4th Cir. 2019) (find lending entities were entitled to tribal sovereign immunity as arms of an Indian tribe in an action alleging loans carried unlawfully high interest rates).

Debtor readily admits in the Stay Motion that the BDC, Holdings are tribal entities. Stay Motion at ¶ 6, 3-5. As tribal entities, the BDC and Holdings enjoy protection from suit under tribal sovereign immunity, absent expressed abrogation by Congress. See, *See Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 388 (2023). Even assuming Debtor did not concede that the BDC and Holdings are arms of the Tribe which enjoy tribal sovereign immunity, Debtor is otherwise precluded under the law of the case doctrine from now trying to

assert that the BDC and Holdings are not legitimate arms of the Tribe. See, *United States v. Moran*, 393 F.3d 1, 7 (1st Cir. 2004)("[t]he law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.")(quoting, *Arizona v. California*, 460 U.S. 605, 618 (1983)). As the Supreme Court has already found in this very case, "the Band's subsidiaries [referring to the BDC and Holdings[4]] are arms of the Tribe and enjoy the Band's sovereign immunity." *Coughlin*, 599 U.S. at 386, fn.1.

Thus, Debtor therefore is precluded from arguing that BDC, Holdings and the Tribe each enjoy tribal sovereign immunity in their capacity as sovereigns, subject to Congress's express abrogation.

### 3. Debtor cannot point to any explicit abrogation of the Tribe's sovereign immunity for its "alter ego" claim here.

Debtor fails to allege any abrogation or waiver of tribal sovereign immunity with relation to his alter ego claim (Count II). Nor can he. This Court therefore lacks subject matter jurisdiction to hear Count II and it must be dismissed.

As an initial matter, and as this Court is well-aware, the parties previously disputed whether the Bankruptcy Code abrogated the Tribe, BDC, Holdings or Lendgreen's sovereign immunity, and the Supreme Court ultimately concluded that it did. *See Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 388, 143 S. Ct. 1689, 1696, 216 L. Ed. 2d 342 (2023) ("We conclude that the Bankruptcy Code unequivocally abrogates the sovereign immunity of any and every government that possesses the power to assert such immunity. Federally recognized tribes undeniably fit that description; therefore, the Code's abrogation provision plainly applies to them as well.").

---

[4] The BDC and Holdings, along with the Tribe and Lendgreen, were all Appellants in the Supreme Court case. Throughout briefing, and into the opinion, the Supreme Court referred to the Tribe as "the Band," and the BDC, Holdings and Lendgreen as "the Band's subsidiaries" or "the Band's arms."

To be clear, BDC, Holdings, and the Tribe are not attempting to relitigate that issue. Under *Coughlin*, it is now undisputed that Congress abrogated BDC, Holdings, Lendgreen and the Tribe's sovereign immunity for claims ***arising from the Bankruptcy Code***. But significant changes to Debtor's claims here have rendered that ruling inapplicable to Debtor's new alter ego claim found in Count II of the Stay Motion.

First, Debtor's then live pleading brought a single claim for alleged violations under § 362(k)(1), without any reference to Debtor's newfound "alter-ego/vicarious liability/joint liability" claim, much less a completely separate "Count II" alleging the same. At the time of the appeal, Debtor's then live pleading, Doc. 27, lumped Lendgreen, BDC, Holdings, and the Tribe together, alleging that they each willfully violated automatic stay. The Supreme Court accept those factual allegations as true for purposes of the motion to dismiss, and the question before the Supreme Court was whether Congress abrogated a tribe and its tribal subsidiaries sovereign immunity such that they could each be found liable for their ***own*** violations of the Bankruptcy Code. The Supreme Court never addressed–nor could it have addressed based on the fact presented before it–whether a non-creditor tribal entity could be held liable for another tribal entity's alleged violation of the Bankruptcy Code.

The Supreme Court's decision in *Coughlin* is therefore inapplicable to the specific question at issue today for Debtor's Count II: has Congress unambiguously abrogated BDC, Holdings, and the Tribe's immunity for ***federal common law alter ego claims***? The answer to that question is, unequivocally, no.

*In re Metromedia Fiber Network, Inc.,* 299 B.R. 251 (Bankr. S.D.N.Y. 2003) is instructive here. In *Metromedia*, debtors asserted 12 adversary proceedings against certain creditors, including state taxing entities, complaining "that the defendants have appraised the debtors' Taxable

12

Property…and are now seeking to collect ad valorem taxes from the debtors which are based on valuations grossly in excess of the Taxable Property's fair market value." *Id*. at 256. In turn, the debtors asked the bankruptcy court "to determine the fair market value of the Taxable Property in each of the defendants' taxing jurisdictions." *Id*. Such a determination would require application of state and local tax law. *Id*.

The state taxing entity defendants moved to dismiss the adversary proceedings based on the entities' sovereign immunity, which defendants argued had not been abrogated because debtors' claims did not arise from the Bankruptcy Code. *Id*. The court agreed with defendants, concluding "[t]he [states'] surrender of immunity…relating to bankruptcy laws is limited to ***proceedings to enforce the bankruptcy laws***…The instant Section 505 proceedings are based upon and seek to enforce ***the debtors' rights under state and local*** property tax laws." *Id*. at 283-84 (emphasis added). Accordingly, because the debtors' request relief "is not a proceeding or claim arising under any provision of the Bankruptcy Code," the state entities' sovereign immunity had not been abrogated for those claims. *Id*. at 269.

> In reaching this conclusion, the *Metromedia* Court explained:
>
> There is an important difference in the posture and exposure of the states in the leading Supreme Court cases dealing with the Eleventh Amendment and sovereign immunity, on the one hand, and that of the states in adversary proceedings or contested matters in the bankruptcy court arising under the Bankruptcy Code… the limited surrender of immunity resulting from the uniformity requirement of the bankruptcy clause does not implicate the danger of exposing state treasuries to liabilities on claims, because the surrender of immunity applies only to proceedings arising under the Bankruptcy Code. ***The only claim arising under the Bankruptcy Code which could be asserted against a state would be a claim based upon its status or conduct as a creditor***, not as a putative defendant with independent liability to the debtor.

*Id*. at 269-270 (emphasis added). Thus, the state entities' abrogation of sovereign immunity, "while valid as to claims arising under the Bankruptcy Code, ***does not apply to claims arising under state tax laws***." *Id*. at 271 (emphasis added).

Similarly, in *In re Capitol BC Restaurants, LLC*, debtor asked the bankruptcy court "to determine, in the Debtor's bankruptcy case, the income tax liability of its 'partners'" under federal tax law. *See* 568 B.R. 574, 576 (Bankr. D. Mass. 2017). Defendant (the IRS) filed a motion to dismiss, arguing it had not waived its sovereign immunity with regard to debtor's requested determination of federal tax law. *Id*. at 581. The court agreed with the IRS, concluding that "the Debtor's Complaint does not 'arise under' the Bankruptcy Code and the relief sought does not 'arise in' the bankruptcy case," and accordingly, there was no abrogation of the IRS' immunity with respect to federal tax law determinations. *Id*. at 585-86. Further, "***because the IRS is not a creditor of the Debtor…[therefore] there is no waiver of sovereign immunity***." *Id*. at 590 (emphasis added).

Although this case does not involve the application of tax law, it similarly involves claims not arising under the Bankruptcy Code, and *Metromedia* and *In re Capitol* are therefore instructive.[5] There, just as here, debtors sought to bring claims against sovereign entities that did not arise from the Bankruptcy Code. Recognizing that the sovereign entities' immunity was abrogated only for claims arising from the Bankruptcy Code, the *Metromedia* and *In re Capitol* court rightfully dismissed the extra-judicial state and federal law determinations for want of jurisdiction. The same outcome is true here.

---

[5] As noted above, BDC, Holdings, and the Tribe have not located a single case analyzing, or even addressing, a proposed federal common law alter ego count against a ***creditor*** entitled to immunity in bankruptcy court. Accordingly, this court may look to analogous cases addressing other claims not specifically contemplated by Bankruptcy Code, even if not addressing alter ego specifically.

Here, Debtor's alter-ego/vicarious liability/joint liability claim simply does not arise out of the Bankruptcy Code. Debtor all but admits this by clarifying that claim is brought pursuant to federal common law. *See* Doc. 216, Debtor's Objection to Motion to Dismiss (arguing "federal law standards for determining whether veil-piercing may be accomplished, rather than state-law standards, controls."). Debtor's reason for pulling from federal common law is simple: the Bankruptcy Code simply does not contemplate, or provide a valid avenue of relief, for alter-ego claims against creditors.[6] And as the courts recognized in *Metromedia* and *In Re Capitol*, Congress's abrogation of sovereign immunity under the Bankruptcy Code, unequivocally, does not also encompass claims arising under state law or federal law. *See Metromedia*, 299 B.R. at 271; *In Re Capitol*, 568 B.R. at 586.

Debtor's alter ego claim simply does not arise from the Bankruptcy Code. Nor could it: as recognized by *Metromedia* and later reaffirmed in *In Re Capitol*, "the only claim arising under the Bankruptcy Code which could be asserted against a [sovereign] state would be a claim based upon its status or conduct as a ***creditor***." *Metromedia*, 299 B.R. at 270; *see also In Re Capitol*, 568 B.R. at 590 (recognizing there is no sovereign immunity where state actor "is not a creditor of the Debtor."). Debtor's amended Stay Motion now clarifies the only creditor in this case is Lendgreen, not BDC, Holdings, or the Tribe.

Debtor has therefore failed to show that any clear, unequivocal Congressional waiver of sovereign immunity for his alter-ego claim specifically. In fact, federal common law is, at its core,

---

[6] BDC, Holdings, and the Tribe do not contend that alter-ego claims are never asserted in bankruptcy court. To the contrary, BDC, Holdings, and the Tribe recognize there is a valid vehicle for relief commonly used <u>by creditors or trustees</u> to obtain relief against alter egos of ***debtors*** (making third-party defendants' assets available to satisfy the debtor's creditors*). See e.g., The Patriot Grp., LLC v. Fustolo (In re Fustolo)*, 597 B.R. 1, 47 (Bankr. D. Mass. 2019) (addressing alter ego claims against debtors); *Rodrigues v. Osorno (In re Osorno)*, 478 B.R. 523, 536 (Bankr. D. Mass. 2012) (same); *Cruickshank v. Dixon (In re Blast Fitness Grp., LLC)*, 603 B.R. 654, 668-69 (Bankr. D. Mass. 2019) (same); *Butler v. Candlewood Road Partners, LLC (In re Raymond)*, 529 B.R. 455, 471 (Bankr. D. Mass. 2015) (citing *Weiss v. Lockwood*, 499 B.R. 392, 394 (D. Mass. 2013) (same). But those claims, while valid, rely on state law – not any specific section or applicable language of the Bankruptcy Code itself.

the antithesis of clear Congressional intent. *See Atherton v. F.D.I.C.*, 519 U.S. 213, 218 (1997) (explaining federal common law is "a rule of decision that amounts, not simply to an interpretation of a federal statute or a properly promulgated administrative rule, but, rather, to the ***judicial*** 'creation' of a special federal rule of decision."). As has long been established, the Tribe and the Tribe's subsidiaries' sovereign immunity simply cannot be abrogated absent Congress's clear, unequivocal, and unambiguous statutory language explicitly abrogating immunity. *See Coughlin*, 599 U.S. at 387 ("Congress must make its intent [to abrogate sovereign immunity] ... unmistakably clear in the language of the statute" (internal quotations omitted)). Judge made law, even if proper in other circumstances, simply does not fit that bill.

Finally, BDC, Holdings, and the Tribe maintain that Congress has not expressly abrogated their sovereign immunity with respect to federal common law alter-ego claims. But at absolute bottom, there is at least ambiguity in the law, and such ambiguity must be resolved in favor of immunity. *See White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143-44 (1980) ("Ambiguities in federal law [are] construed generously in order to comport with . . . traditional notions of sovereign immunity and with the federal policy of encouraging tribal independence."). This Court should therefore dismiss Debtor's claims against BDC, Holdings, and the Tribe for want of jurisdiction in light of tribal sovereign immunity.

## CONCLUSION

Debtor attempts to hold non-creditor entities BDC, Holdings, and the Tribe liable for the alleged actions of Lendgreen. Such relief is not contemplated under the Bankruptcy Code, and should therefore be dismissed for failure to state a claim and lack of subject matter jurisdiction in light of BDC, Holdings, and the Tribe's immunity. BDC, Holdings, and the Tribe therefore respectfully request this Court deny the Stay Motion in its entirety as against BDC, Holdings, and the Tribe.

Dated: November 27, 2023

                    Respectfully submitted,

                    /s/  *Adrienne K. Walker*
                    Adrienne K. Walker, Esq.
                    LOCKE LORD, LLP
                    111 Huntington Avenue
                    Boston, MA 02111
                    Tel: 617-239-0100
                    awalker@lockelord.com

                    SPENCER FANE LLP

                    /s/  *Zachary R.G. Fairlie*
                    Scott J. Goldstein; admitted pro hac vice
                    Zachary R.G. Fairlie; admitted pro hac vice
                    1000 Walnut Street, Suite 1400
                    Kansas City, Missouri  64106
                    Tel: (816) 474-8100
                    Fax: (816) 474-3216
                    sgoldstein@spencerfane.com
                    zfairlie@spencerfane.com

                    *Attorneys for the LDF Business Development Corporation and LDF Holdings, LLC*

                    /s/  *Andrew Adams III*
                    Andrew Adams III; admitted pro hac vice
                    Hogen Adams PLLC
                    1935 County Road B2 W., Suite 460
                    Saint Paul, Minnesota 55113
                    Tel: (651) 842-9100
                    Fax: (651) 842-9101
                    aadams@hogenadams.com

                    Attorney for the Lac du Flambeau Band of Lake Superior Chippewa Indians

**CERTIFICATE OF SERVICE**

    I, Adrienne K. Walker, do hereby certify that on the November 27, 2023, I caused a copy of the foregoing to be served through the ECF system, and that copies will be sent electronically to registered participants and paper copies will be sent to those indicated as non-registered participants requesting notice as of the date herein.

Dated: November 27, 2023

                                                                          /s/  *Adrienne K. Walker*

KC 15247351.2