## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT MASSACHUSETTS

In re:

BRIAN W. COUGHLIN,

     Debtor.

IN PROCEEDINGS UNDER
Chapter 13
Case No. 19-14142-CJP

### REPLY IN SUPPORT OF MOTION TO DISMISS
### SECOND AMENDED STAY MOTION[1]

     This case is, and always has been, a limited proceeding to enforce an alleged stay violation under 11 U.S.C. § 362(k). This case does not, and cannot, include additional state, federal, or common law claims challenging Niiwin, LLC d/b/a Lendgreen's ("Lendgreen") alleged lending practices, the Tribe's corporate structure, or payday lending in general.[2] These matters are outside this Court's jurisdiction and irrelevant to a limited proceeding on potential § 362(k) liability.

     Despite the limited nature of this proceeding and Debtor finally conceding that only one of the above-captioned defendants was allegedly the actor (Lendgreen) that allegedly knew of the bankruptcy filing and that one single actor (Lendgreen, or its servicer) allegedly nonetheless attempted to collect a debt (*See* SAM at ¶¶ 23-36, 39, 41 ("Alleged Stay Violation")), Debtor continues to seek to hold non-actors liable—LDF Business Development Corporation ("BDC"), LDF Holdings, LLC ("Holdings"), and the Tribe (collectively, "Non-Acting Entities", and together with Lendgreen, "Respondents")—for § 362(k) liability pursuant to dubious claims of disregarding the corporate form; theories for which Debtor must rely on law that does not apply to

---

[1] Pursuant to the Court's Orders at Doc. 277 and 284, this brief relates to dismissal of Second Amended Motion of the Debtor to Enforce the Automatic Stay and for Sanctions [Doc. 258] ("SAM").

[2] Respondents, of course, strongly dispute there is any conspiracy or illegitimacy in Lendgreen's practices or the Tribe's corporate structure.

the Non-Acting Entities because of their tribal sovereign immunity. *See* SAM at ¶¶ 48-51 ("Equitable Relief").

This effort fails for three independent reasons: (i) Section 106(a)(3) does not authorize the Equitable Relief; (ii) the Equitable Relief does not arise in, arise under, or relate to Debtor's Chapter 13 proceeding; and (iii) Congress has not expressed an unequivocal intent to abrogate tribal sovereign immunity concerning the Equitable Relief. As an initial matter, however, the Respondents first address the Court's inquiry at the hearing on February 22, 2024, namely, how do courts treat tribal sovereign immunity in the context of asserted disregarding the corporate form theories.

## I.     Courts Require Abrogation of Tribal Sovereign Immunity Before Applying Equitable Relief.

As has been detailed at length in this case, the default is that federally recognized Indian tribes possess tribal sovereign immunity from suit. A plaintiff must establish abrogation of that immunity. Here, the Debtor convinced the United States Supreme Court that with respect to direct § 362(k) liability, the Bankruptcy Code abrogates tribal sovereign immunity. The United States Supreme Court did not hold—nor has any other court that Respondents have been able to identify—that tribal sovereign immunity is abrogated as to equitable relief, such as disregarding the corporate form, whether governed by state or federal law.

Cases that Respondents have been able to identify indicate the contrary, that equitable doctrines do not apply to Indian tribes absent an unequivocal intent by Congress to abrogate such immunity. *Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc.*, 585 F.3d 917, 922 (6th Cir. 2009) (declining to apply an equitable doctrine, apparent authority, to circumvent the requirement of a duly adopted board resolution waiving tribal sovereign immunity); *Sanderlin v. Seminole Tribe of Fla.*, 243 F.3d 1282, 1288 (11th Cir.2001) (rejecting equitable argument that a tribal

representative had actual or apparent authority to waive immunity); *Native Am. Distrib. v. Seneca–Cayuga Tobacco Co.*, 546 F.3d 1288, 1295 (10th Cir.2008) (refusing to apply doctrine of equitable estoppel against a tribal entity); *U.S. ex rel. Morgan Bldgs. & Spas, Inc. v. Iowa Tribe of Oklahoma*, No. CIV-09-730-M, 2011 WL 308889, at *3 (W.D. Okla. Jan. 26, 2011) ("Having carefully reviewed the case law, the Court has found no case applying the alter ego analysis to an Indian tribe's economic entity. All of the cases cited by Morgan involve two corporations, neither one of which is an Indian tribe or a tribal economic entity." Finding instead that the "subordinate economic entity" analysis applied for determining whether a subsidiary waived immunity of the Tribe).

Indeed, a plaintiff must establish abrogation of tribal sovereign immunity before seeking to disregard corporate form. *Buchwald Cap. Advisors, LLC for Greektown Litig. Tr. v. Sault Ste. Marie Tribe of Chippewa Indians*, 584 B.R. 706, 721 (E.D. Mich. 2018). In *Buchwald*, the Court agreed with the default that the tribal entities were entitled to sovereign immunity and rejected the plaintiff's attempt to find waiver of sovereign immunity through an argument of alter ego vis-a-via application of Foreign Sovereign Immunity Act case law:

> In a final attempt to apply alter-ego/veil piercing concepts to deny the Tribe Defendants immunity here, the Litigation Trustee relies on cases in which federal courts have applied alter-ego theories to find waiver of immunity by a foreign sovereign under the Foreign Sovereign Immunities Act ("FSIA"). *See First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611, 633–34, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983) (discussing the purpose and history of the FSIA and applying "internationally recognized equitable principles to avoid the injustice that would result from permitting a foreign state to reap the benefits of our courts while avoiding the obligations of international law" and disregarding the separate juridical status of a foreign government's instrumentality); *Transamerica Leasing, Inc. v. La Republica De Venezuela*, 200 F.3d 843, 849–50 (D.C. Cir. 2000) (applying principles of agency to determine whether the acts of a foreign owned corporation were attributable to the foreign sovereign). The FSIA, however, invites

3

such analysis by explicitly providing for waiver by implication: "A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case in which the foreign state has waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1) (emphasis added). Thus, the FSIA expressly allows for that which the Supreme Court forbids in the case of Indian tribes—waiver by implication. The FSIA cases are inapt to the issue before this Court regarding the very unique brand of sovereign immunity enjoyed by Indian Tribes. *See Allen v. Gold Country Casino*, 464 F.3d 1044, 1047–48 (9th Cir. 2006) (refusing to apply the FSIA by analogy to an Indian tribe, noting that to do so would contravene Supreme Court precedent allowing no implied waiver in the case of Indian tribes).

*Buchwald*, 584 B.R. at 721–22. What *Buchwald* and the above-cited cases makes clear is the default rule: Indian tribes enjoy sovereign immunity absent a clear and unequivocal Congressional intent to abrogate such immunity. No such clear statement exists regarding the Equitable Relief, and accordingly, the Non-Acting Entities should be dismissed.

## II.     Debtor Cannot Establish that this Court has Subject Matter Jurisdiction Over the Equitable Relief.

The Equitable Relief, and specifically, the only theory that Debtor attempts to plead (alter-ego),[3] is not contemplated by, or available under, the Bankruptcy Code. Debtor therefore has not met his burden of establishing this Court's jurisdiction over such claims. *See In re Capitol BC Restaurants, LLC*, 568 B.R. 574, 583 (Bankr. D. Mass. 2017) (explaining the "Debtor has the burden of establishing that [the bankruptcy] Court has subject matter jurisdiction.").

---

[3] Debtor appears to erroneously suggest that "Respondents' silence" on the sufficiency of the "facts pled" should indicate a likelihood of success on such claims generally. *See* Doc. 253-1 at 2. This position reveals a fundamental misunderstanding of the procedural history of this case (*e.g.*, the Non-Acting Entities have not even filed answers yet) and Rule 12(b)(6)'s standard, where allegations must be taken as true, no matter how dubious. For the avoidance of doubt, Respondents contest the Debtor's allegations regarding the availability of alter ego, veil piercing, disregarding the corporate form, or that Respondents operate a "sham operation." If it becomes necessary, Respondents will file answers reflecting this and will similarly file motions for summary judgment on the same, to the extent necessary and appropriate.

In response, Debtor claims the Bankruptcy Code grants "wide-ranging relief to debtors against "all entities who violate the automatic stay," *see* Doc. 253-1 at 5. This argument, however, ignores the limitations set forth for claims against governmental units specifically. These limitations, set forth in §106(a)(3), do not allow the Equitable Relief. Even after filing a lengthy opposition, Debtor cannot muster a single case holding a non-acting entity liable for a related entity's alleged stay violation where the non-actor is a sovereign entity.

### A.    The Bankruptcy Code limits remedies to money damages.

Debtor concedes that Lendgreen and the Non-Acting Entities are governmental units within the meaning of Section 101(27). *See* SAM ¶ 6. The relief available against governmental units is limited by 11 U.S.C. § 106(a)(3), which provides:

> The court may issue against a governmental unit an order, process, or judgment under such [§ 362(k)], including an order or judgment awarding *a money recovery*, *but not including an award of punitive damages*. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

*See also* 28 U.S.C. § 2412(d)(2)(A) (further limiting remedies available against a governmental unit).

Notwithstanding this, Debtor's opposition takes the position that the Bankruptcy Code grants "wide-ranging relief to debtors" and that "Section 362(a) establishes that bankruptcy petitions 'operate as a stay, applicable to all entities, of . . . any act to collect assess, or recover a claim against the debtor that arose before the commencement of the case under this title.'" Doc. 253-1 at 5 (citing 11 U.S.C. § 362(a)). While the Non-Acting Entities do not dispute the text of § 362, Debtor's argument disregards Lendgreen and the Non-Acting Entities' status as governmental units, and because Lendgreen and the Non-Acting Entities are governmental units

under the Bankruptcy Code, the relief against them is not as "wide-ranging" as Debtor would like this Court to believe.

First, Debtor improperly seeks punitive damages despite this language. *See* SAM, page 1. Moreover, Debtor inappropriately seeks the Equitable Relief. Section 106(a)(3) does not authorize equitable remedies, and that silence is important. A basic cannon of statutory construction, *expressio unius est exclusio alterius*, the presumption that an express reference to one matter excludes other matters, is instructive here. *United States v. Hernandez-Ferrer*, 599 F.3d 63, 67 (1st Cir. 2010). Put differently, anything <u>not</u> on that list does not fall within the statute's purview. Here, indisputably, Section 106(a)(3) includes the remedies that <u>are</u> available against a "governmental unit" (money damages) and excludes any reference to the availability of any equitable remedy that the Debtor seeks here, whether alter-ego, and/or joint/vicarious liability.[4]

Moreover, Section 106(a)(3)'s non-authorization of equitable remedies is consistent with case law that similarly refuses to apply "equitable doctrines" to attribute conduct to Indian Tribes. *See e.g., Memphis Biofuels, LLC*, 585 F.3d at 922 ; *Native Am. Distrib.*, 546 F.3d at 1295; *Sanderlin*, 243 F.3d at 1288; *World Touch Gaming, Inc. v. Massena Mgmt., LLC*, 117 F.Supp.2d 271, 276 (N.D.N.Y.2000) (holding that a senior vice president's signature to an agreement with an express waiver of sovereign immunity provision did not waive sovereign immunity because that right was reserved exclusively to the tribal council); *Danka Funding Co. v. Sky City Casino*, 747 A.2d 837, 841–42, 844 (1999) (holding that a controller's signature on a contract containing a

---

[4] *See* Doc. 253, Debtor Objection at ¶ 13 ("The Fact that the Respondents' liability is based upon equitable remedies of 'alter ego' or the 'piercing the corporate veil' arising from that underlying cause of action, simply does not vitiate or impair the abrogation provisions of 11 U.S.C. § 106(a)(1).").

forum selection clause was insufficient to waive sovereign immunity, in part, because the right to waive immunity was reserved to the tribal council).

> **B.      The Equitable Relief does not arise in, arise under, or relate to Debtor's Chapter 13 proceeding.**

Putting Section 106(a)(3) aside, Debtor's proposed equitable relief suffers another independent fatal fall: it does not arise in, arise under, or relate to the Debtor's Chapter 13 proceeding. Bankruptcy Court jurisdiction generally falls into three categories of cases: (1) those that "arise under title 11"; (2) those that "arise in" title 11; and (3) those that are "related to cases under title 11." *See* 28 U.S.C. § 1334(b); *see also In re Capitol*, 568 B.R. at 583.

The Equitable Relief, whether categorized as an equitable remedy or separate cause of action[5]–does not arise in, arise under, or relate to Debtor's Chapter 13 proceeding. Although Debtor claims that alter-ego "arises under" the Bankruptcy Code, *see* Doc. 253-1 at 9, this argument is rebuffed by relevant First Circuit caselaw.

The First Circuit explains that "proceedings arise under title 11 when the Bankruptcy Code itself creates the cause of action." *Gupta v. Quincy Med. Ctr.*, 858 F.3d 657, 662, 2017 WL 2389407, at *4 (1st Cir. 2017) (citation omitted); *see also Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987) ("Congress used the phrase 'arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11."). Section 362(k) provides liability for direct acts, it does not provide any cause of action or basis for alter-ego, vicarious, and/or joint liability relief regarding alleged stay violations. Nor does the Bankruptcy Code create a cause of action or provide an "equity remedy," to use Debtor's term,

---

[5] Debtor's opposition repeatedly argues that the Equitable Relief is not a separate cause of action or avenue of relief but is instead an "equitable remedy." Even if true, this argument is a distinction without a difference–Debtor has not provided any caselaw showing how labeling alter-ego as an equitable remedy versus a cause of action changes the analysis for dismissal in any way.

allowing liability against alleged alter-egos of the acting entities (including for non-actors that are entitled to sovereign immunity) for alleged stay violations. The Equitable Relief does not "arise under" Title 11.

Relatedly, the Equitable Relief does not "arise in" Title 11.[6] "Arising in proceedings generally are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *In re Middlesex Power Equip. & Marine, Inc.*, 292 F.3d 61, 68 (1st Cir. 2002) (internal quotations and citation omitted). Regardless of how Debtor categorizes the Equitable Relief, the same outcome is true: "alter-ego, vicarious, and/or joint liability" all exist outside of bankruptcy, and therefore do not "arise in" Title 11.

Finally, the Equitable Relief does not "relate to" Debtor's Chapter 13 proceeding because determination of the Non-Acting Entities' corporate structure has no bearing on Debtor's bankruptcy estate.[7] Just as in *In re Capitol*, here the Non-Acting Entities "are not creditors with respect to the relief sought" under §362(k) and the outcome of Debtor's proposed Equitable Relief does not directly affect the bankruptcy estate. The Equitable Relief does not "alter debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate." *Gupta*, 858 F.3d at 663. Indeed, Debtor has been quick to point out that the causes of action at issue, and any potential proceeds therefrom, are not property of the estate. Thus, "the outcome of the litigation can have no effect on the bankruptcy estate." *In re Capitol*, 568 B.R. 585 (Bankr. D. Mass. 2017).

---

[6] Debtor does not argue the Equitable Relief "arises in" or is related to a case under Title 11, and Debtor has therefore waived this argument. *See Iverson v. City of Boston*, 452 F.3d 94, 103 (1st Cir. 2006) (concluding that a "failure to mention — let alone adequately to develop" an argument constitutes waiver."). But out of an abundance of caution, and because this argument deals with the Court's jurisdiction, it is addressed here.

[7] Debtor's plan was confirmed on April 3, 2020 (Doc. 47), without any regard to the outstanding allegations against Respondents here.

As set forth further in the motion to dismiss, *In re Capitol* addresses a similar issue regarding a District of Massachusetts bankruptcy court's jurisdiction over certain determinations requiring application of federal law. The court explained that its jurisdiction was limited to cases arises in, arising under, or relating to a debtor's bankruptcy proceeding. *Id*. at 583-584. The court thus found it lacked jurisdiction under the circumstances, explaining:

> [T]he Debtor's Complaint does not 'arise under' the Bankruptcy Code and the relief sought does not 'arise in' the bankruptcy case…The Court also concludes that Count I of the Debtor's Complaint … is not 'related to' its bankruptcy case as any determination of the appropriateness of the disallowed deductions and penalties will have no effect on the Debtor's bankruptcy estate.
> …
> In other words, because the IRS is neither a creditor with respect to the relief sought in the Complaint … the outcome of the litigation can have no effect on the bankruptcy estate.

*Id*. at 585 (emphasis added).

In response, Debtor generally claims the Non-Acting Entities' cited authorities are "tax cases that neither concern alter-ego liability nor violations of the automatic stay." Doc. 253-1 at 14. Although literally true, this argument falls short of distinguishing *In re Capitol's* well-reasoned, equally applicable concepts explaining this Court's jurisdiction over determinations involving state and federal law. Applied here, that guidance shows the Court lacks jurisdiction because the Equitable Relief similarly does not arise in, arise under, or relate to Debtor's Chapter 13 proceeding.

Debtor's proposed authorities do not change this outcome or establish Debtor's alter-ego relief against the Non-Acting Entities is proper. As an initial matter, the majority of cases cited by Debtor relate to <u>*agency*</u> theories, not alter-ego–liability, which are entirely different legal concepts. Putting agency aside for now,[8] Debtor relies on three main cases for his assertion that "multiple

---

[8] Debtor's newfound agency theory is discussed more fully below.

courts have recognized that…the 'alter ego' of stay violators can be held liable for a willful violation of the Automatic Stay." Doc. 253- at 7 (citing *In re Sehman*, 632 B.R. 846, 852 n.48 (Bankr. N.D. Fla. 2021); *In re Garza*, 605 B.R. 817, 824 (Bankr. S.D. Tex. 2019); *In re Harlow v. Wells Fargo & Co.*, 2022 WL 17586716, at *13 (Bankr. W.D. Va. Dec. 12, 2022)). None of these cases stand for Debtor's broad assertion of alter-ego theories against related <u>*entities*</u> here.

In *In re Sehman*, the court noted, in passing in a footnote, that an <u>*individual*</u> owner of creditor "may become jointly and severally liable for damages for willful violations of the stay." *In re Sehman*, 632 B.R. at 852, n. 48. But importantly, that is the entirety of the court's discussion– that, in theory, an <u>*individual owner*</u> of a creditor entity <u>*may*</u> be held liable at some unknown time or place down the road. The court did not substantively address whether that claim was valid under the Bankruptcy Code, nor was such an argument before it.

*In re Sehman* is further distinguishable because there, the individual owner of the entity alleged to violate the stay was also a creditor listed in debtor's bankruptcy proceeding who received actual notice of the bankruptcy stay. *Id*. at 850. Although *In re Sehman* falls short of establishing alter-ego is a proper avenue of relief under §362(k), at absolute most, it stands for the proposition that a non-sovereign individual listed on the creditor's matrix who received actual notice of the bankruptcy stay may be held liable for the acts of its corporate entities, if and only if a debtor shows the individual "made all decisions for and was, in essence, the alter ego of [creditor]." *Id*. at 852, n. 48. *In re Sehman* certainly does not stand for Debtor's all-encompassing assertion here that the Non-Acting Entities (who were not creditors and not listed on the creditor's matrix) may be held liable for a related entity's alleged willful violations.

*In re Garza*, 605 B.R. 817 (Bankr. S.D. Tex. 2019) is also inapposite. There, applying Texas state law, the court dismissed debtor's attempt to hold an <u>*individual*</u> actor liable under "alter-

ego" principles because the debtor failed, at the outset, to "show that [the individual actor] is the
alter-ego of [creditor]." *Id*. at 826. But despite using the term "alter-ego," the *Garza* Court was not
applying alter-ego theories against other entities, but instead explaining that an *individual* acting
on behalf of a creditor may be liable if certain circumstances are met.[9] Specifically, the court
explained:

> The bedrock principle of corporate law is that an *individual* can incorporate a
> business and thereby normally shield himself from personal liability for the
> corporation's obligations… The alter ego remedy applies when there is such an
> identity between *a corporation and an individual* that all separateness between the
> parties has ceased and a failure to disregard the corporate form would be unfair or
> unjust. Such *individual* who has misused the corporate form will be personally
> liable for the corporation's obligations. An alter ego allegation is shown from the
> total dealings of *the corporation and the individual*…

*Id*. at 825-826 (emphasis added). *Garza* does not, contrary to Debtor's contentions, support
Debtor's broad assertion that related *entities* can be held liable for a creditor's alleged stay
violation. Nor could they–the Non-Acting Entities are *entities*, not individuals, and thus no
personal liability theories could be applied to any of the Non-Acting Entities to hold them liable
here. *In re Garza* is far more akin to an agency theory of liability, which is discussed more fully
below, but is in any event inapplicable against the Non-Acting Entities.

Finally, *In re Harlow* is equally inapplicable. Importantly, *In re Harlow* involved a 12-
count class-action originally filed in federal district court, but later referred to the bankruptcy court
as an adversary proceeding for determination of bankruptcy law. *In re Harlow v. Wells Fargo &
Co*., No. 17-71487, 2022 WL 17586716, at *1 (Bankr. W.D. Va. Dec. 12, 2022). Plaintiffs, "[were]
debtors in open Chapter 13 bankruptcy cases in various courts around the country, had their
mortgage loans placed in forbearance status by Wells Fargo without the Plaintiffs' permission,

---

[9] This body of law is, in essence, the agency theory newly raised by Debtor and explained more
fully below.

knowledge or request" in violation of various state, federal, and bankruptcy laws and statutes. *Id*. Plaintiffs also named Wells Fargo & Co. ("WFC") as a defendant, claiming WFC was generally liable for their subsidiaries' (Wells Fargo) acts under a veil piercing theory. *Id*. at *13.

WFC moved to dismiss the claims against them, arguing plaintiffs failed to "allege sufficient facts to support piercing the corporate veil and hold[] WFC responsible for the acts of the subsidiary." *Id*. Applying Delaware state law, the court agreed with WFC, finding plaintiffs failed at the outset to allege sufficient facts to support veil piercing against WFC. *Id*. at *14 ("Plaintiffs fail to allege facts beyond mere implications that, because the Defendants may have to some extent collaborated in business operations, WFC directly participated in Wells Fargo Bank's alleged misconduct.").

Again, because the plaintiffs in *In re Harlow* failed to meet the initial burden of pleading necessary facts against WFC in the complaint, the court never addressed, let alone determined, whether such a veil-piercing theory against WFC would be legally viable. Further, because the *In re Harlow* plaintiffs filed a multi-count class action claim against the defendants, including various counts under the Bankruptcy Code, state, and federal law, it is entirely unclear whether the *In re Harlow* Court ever considered whether veil-piercing is proper for the stay violation specifically. Thus, even at best, the court's statements suggesting that alter-ego may be applied to one, some, or all claims against a non-sovereign is unpersuasive and inapplicable dicta. Again, the present case is a *<u>limited</u>* proceeding alleging a stay violation and seeking damages for the same.  This is far afield from the situation and facts pled in *In re Sehman*.

**C.   Even if the Equitable Relief could, in theory, be applied to the Non-Acting Entities in certain situations, Debtor has failed to prove Congress has unequivocally waived the Non-Acting Entities' immunity.**

Even if this Court is persuaded that it could allow alter-ego claims to proceed against the Non-Acting Entities, the Court must still dismiss the Non-Acting Entities because Debtor has not

12

shown such relief is proper against the Non-Acting Entities, who enjoy sovereign immunity absent Congress's clear and unequivocal waiver of the same.

A more thorough overview of tribal sovereign immunity is extensively briefed in the initial motion to dismiss, but the indisputable short version is simple: "to abrogate [Tribal] immunity, Congress must **unequivocally** express that purpose" and an intent to abrogate "cannot be implied." *Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 790 (2014); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, (1978) (emphasis added). In fact, if there is any ambiguity as to Congress's specific abrogation, that ambiguity must be resolved in favor of immunity. *See White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143-44 (1980).

Debtor fails to meaningfully address the serious concerns of sovereignty raised in the motion to dismiss. Instead, Debtor incorrectly argues that this issue was already decided by the Supreme Court. Doc. 253-1 at 9-10. This argument is, at best, a complete misunderstanding of Non-Acting Entities' motion to dismiss, which clarified:

> To be clear, [Non-Acting Entities] are not attempting to relitigate [the issue previously before the Supreme Court]. Under *Coughlin*, it is now undisputed that Congress abrogated BDC, Holdings, Lendgreen, and the Tribe's sovereign immunity for claims **arising from the Bankruptcy Code**. But significant changes to Debtor's claims here have rendered that ruling inapplicable to Debtor's new alter ego claim found in Count II of the Stay Motion.

Doc. 235 at 12 (emphasis in original). Debtor ignores this distinction, instead arguing "[t]he fact that the Respondents' liability is partly premised upon equitable remedies of 'alter ego' or the 'piercing the corporate veil' arising from [the] underlying cause of action does not vitiate or impair the abrogation provisions of 11 U.S.C. § 106(a)." Doc 253-1 at 16. This argument does not withstand either factual or legal scrutiny.

*First*, Debtor's claim that "Respondents' liability is *partly* premised upon" alter-ego or veil piercing theories is incorrect. The SAM makes clear that Debtor alleges it was Lendgreen (or its

servicer), **and Lendgreen only**, that committed the Alleged Stay Violation. *See* SAM at ¶¶ 23-36, 39, 41. Debtor does not allege that any of the Non-Acting Entities were listed in Debtor's schedules, were listed on the mailing matrix, received actual notice of the stay, or committed any of the alleged violating acts after receiving such notice. Instead, the entire basis for liability against the Non-Acting Entities is the Equitable Relief.

*Second*, as explained above, the fact that Debtor seeks equitable remedies against governmental units (here, the Non-Acting Entities) does in fact vitiate the abrogation provisions of 11 U.S.C. § 106(a). Debtor cannot rely extensively on the abrogation provision in § 106(a), while completely ignoring the equally relevant limiting provision in § 106(a)(3). This provision limits relief against a governmental unit to **money damages**, therefore rendering Debtor's requested Equitable Relief improper against a sovereign. *See supra*, Section II(A).

Debtor has not provided any legal support for his position that the Equitable Relief is encompassed within Congress's abrogation of immunity for claims with respect to §362(k). There is a good reason for this. The alter-ego relief sought by Debtor here is abnormal in the context of stay violations, and therefore no court has ever considered whether such relief would fall within Congress's abrogation of immunity. Debtor's proposed authorities, interpreting other sections of the Bankruptcy Code that deal with direct property of the estate, are inapplicable.

Specifically, Debtor relies on a body of caselaw finding Congress's waiver of sovereign immunity under §106 extends to claims by a trustee proceeding under §544(b)(1) to void a transfer pursuant to underlying state law theories. *See, e.g.*, *Miller v. United States*, 71 F.4th 1247, 1253 (10th Cir. 2023) (finding Congress's waiver of for §544 extended to trustee's right to apply state law to recover estate property); *In re DBSI, Inc.*, 869 F.3d 1004 (9th Cir. 2017) (same); *In re Yahweh Ctr., Inc.*, 27 F.4th 960 (4th Cir. 2022) (same). These cases are inapplicable for two

reasons: (1) they involve a "peculiar"[10] statutory provision that specifically contemplates the relief

sought under state law, unlike Debtor's "alter-ego" theory for §362(k); and (2) §544(b)(1) directly

involves property of the bankruptcy estate and trustee's right to recover the same.

The relevant text of §544(b)(1) is important. It provides: "the trustee may avoid any transfer

of an interest of the debtor in property or any obligation incurred by the debtor *that is voidable*

*under applicable law* by a creditor holding an unsecured claim." In other words, §544 expressly

grants trustees the ability to void transfers that are voidable under applicable law–applicable law

that is, almost always, the state court uniform fraudulent transfer act. Because Congress expressly

granted trustees the right to void these transfers under applicable law, it rationally follows that

Congress contemplated that waiver involving state law theories and therefore waived immunity

for the same.

Such contemplated waiver is certainly not true for §362(k), which is entirely void of any

reference to "alter-ego/vicarious liability/joint liability" relief against non-creditors, and equally

void of an explicit granting of authority to debtors to seek relief against Non-Acting Entities

utilizing state or federal common law theories, equitable or otherwise. This is an important

distinction: the complete lack of statutory authority shows Congress never contemplated, let alone

waived, immunity as to state or federal common law theories of recovery regarding a §362(k) stay

violation. *Miller*, *DBSI*, and *In re Yahweh Ctr.* are therefore inapplicable to the specific

circumstances here.[11]

---

[10] *See In re All Resort Grp., Inc.*, 617 B.R. 375, 385–86 (Bankr. D. Utah 2020), *aff'd sub nom. USA v. Miller*, No. 2:20-CV-00248-BSJ, 2021 WL 5194698 (D. Utah Sept. 8, 2021), *aff'd sub nom. Miller v. United States*, 71 F.4th 1247 (10th Cir. 2023) ("The nature of the dispute has to do with the *peculiar characteristics* of a §544(b) claim."

[11] It bears repeating that Debtor's proposed relief (alter-ego/vicarious and/or joint liability against a non-actor) is unusual and, based on a diligent search of the case law, has never been accepted

*Miller*, *DBSI*, and *In re Yahweh Ctr.* are further inapplicable because they deal directly with the estate and a trustee's right to transfer property back to the estate. As noted above, this limited proceeding alleging a stay violation has no bearing on the Debtor's estate. This is not a situation where any recovery would go directly to the estate, where Non-Acting Entities continue holding property of the estate, or where an initial transfer was void or voidable for any reason. *See supra* Section II(B). Thus, the reasoning behind *Miller*, *DBSI*, and *In re Yahweh Ctr.*–that Congress empowered the trustee with the ability to recover assets for the estate under applicable law–does not equally apply to unrelated matters, like §362(k) alleged stay violations.

Finally, Debtor's failure to cite a single case *applying federal common law* principles against a sovereign entity for any provision under the Bankruptcy Code is telling. As noted in the motion to dismiss, application of federal common law against a sovereign is particularly troubling because federal common law is, at its core, the antithesis of clear Congressional intent. *See Atherton v. F.D.I.C.*, 519 U.S. 213, 218 (1997) (explaining federal common law is "the *judicial* 'creation' of a special federal rule of decision."). Debtor cannot dispute, nor does he even attempt to dispute, that the Non-Acting Entities' immunity can be waived by judicial creation. Instead, it must be waived by clear and unequivocal Congressional language, which does not exist here.

Only one of two things can be true: either Congress contemplated all potential remedies available against a governmental unit and expressly decided, as set forth in §106(a)(3), that a debtor may only recover money damages from a governmental unit; or, equally likely, Congress never contemplated alter-ego, vicarious and/or joint liability of governmental units in the first place. Which is logical, given governmental units typically do not have economic entities and/or

---

under the specific circumstances present here. It cannot be said, then, that Congress *unequivocally* abrogated immunity for the same, when this claim (as argued above) does not exist to begin with.

shareholders, which are necessary prerequisites for an alter ego/veil piercing claim. Either way, Debtor cannot meet his burden of establishing Congress's specific contemplation of such relief, and therefore has not shown a clear and unequivocal abrogation of the Non-Acting Entities' immunity for the Equitable Relief. Debtor has therefore failed to establish that this Court has jurisdiction over the Equitable Relief, and it must be dismissed accordingly.

Thus, when Congress waived governmental units' immunity in §106(a)(1), it did so with respect to *money damages* only. Debtor's proposed relief outside of such money damages here is therefore inappropriate under §106(a)(3).

Finally, at absolute bottom, as evidenced by the parties extensive briefing on the issue, there is certainly ambiguity as to Congress's intent for the specific claims raised here. This ambiguity must be resolved in favor of immunity. *See White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143-44 (1980).

### III.   Debtor's "agency" theory does not prevent dismissal.

The SAM fails to allege that the Non-Acting Entities were acting as agents of Lendgreen or vice versa, nor does it allege who the principal or agent even is. This argument must therefore be rejected as an initial matter. *See Rowayton Venture Grp. LLC v. McCarthy*, No. CV 19-12240-FDS, 2020 WL 4340985, at *5 (D. Mass. July 28, 2020) ("allegation[s] completely absent from the complaint… cannot be raised for the first time in an opposition to a motion to dismiss.").[12]

Even if Debtor's SAM was construed to raise an agency theory, this theory would fail to state a legally viable claim against the Non-Acting Entities and must therefore be rejected. Importantly, the Non-Acting Entities do not dispute that courts regularly impose individual

---

[12] Debtor merely mentions the word "agent" once in his Stay Motion, generally alleging that this Court should treat all Respondents as "a single unified entity, or as alter egos of one another, or as *agents* of one another." Doc. 230 at 14 (emphasis added). But even if this Court finds one reference to "agents" as raising an agency theory, the necessary underlying facts have still not been plead.

liability on agents of creditors for §362(k) violations when the requisite standard has been met. Yet, such a theory does not fit the circumstances of the present case.

Debtor's authorities exemplify the issue here: agency theories apply to *individuals* acting on behalf of a creditor, not upstream related entities like the Non-Acting Entities here. For example, in *In re Gammons* (cited by Debtor), debtor filed an adversary proceeding against one entity (creditor) and two individuals (employees of creditor) for alleged violations of the automatic stay. *See* No. AP 19-01017, 2020 WL 1547154 (Bankr. D.R.I. Mar. 31, 2020). Addressing whether agents of a creditor can be held liable for violations of the bankruptcy stay, the court found "that violations of the automatic stay and discharge injunction are wrongful acts for which agents may be held liable in addition to principals." *Id*. at *3. Applying this theory, the court allowed the claims against the individual defendants, *who were alleged to have taken the underlying violating acts as representatives of creditor*. *Id*. at *1, *4.

In *In re Parker*, another case cited by Debtor, the court considered liability of individual individuals acting on behalf of a creditor in violating the automatic stay. *See* No. 14-44083 CN, 2019 WL 386842, *12-13 (Bankr. N.D. Cal. Jan. 29, 2019), *aff'd in part, vacated in part on other grounds*, 644 B.R. 805 (N.D. Cal. 2021). In doing so, the court first noted the importance of individual liability, which stems from the fact that "[c]orporate entities can only act through their agents, and a corporate principal is [therefore] generally liable for its agent's tortious conduct." *Id*. at *12. The court ultimately found the individual actors liable for some, but not all damages, explaining that "the agent's individual liability rests on evidence demonstrating that *he or she directly committed the act* which violated the automatic stay." *Id*. (emphasis added).

18

Neither of these cases would allow Debtor to hold the Non-Acting Entities liable for Lendgreen's acts under an agency theory for various reasons.[13] First, as noted above, Debtor has not alleged the Non-Acting Entities are agents of Lendgreen or vice versa, that any of the non-creditor agents committed any violating acts, or that any of the Non-Acting Entities were acting on behalf of creditor Lendgreen. Such failure prevents this theory at the outset.

But even if Debtor did attempt to allege these facts, such allegations would be legally insufficient because the Non-Acting Entities are not *individuals* acting on behalf of the creditor, Lendgreen. And because the Non-Acting Entities have not been alleged to have "directly commit[] the act which violated the automatic stay," they could not, as a matter of law, be held liable as a principal of creditor Lendgreen. *See In re Parker,* 2019 WL 386842, at *12.

Finally, it remains unclear whether Debtor believes Lendgreen is the principal or agent under his newfound theory, further muddying the issues. The SAM, however, clarifies that Lendgreen, not Non-Acting Entities, were listed in the mailing matrix, were sent the notice, and allegedly committed the acts underlying the alleged stay violation. SAM at ¶¶ 23-36, 39, 41. Debtor cannot now change his tune to allege that any of the Non-Acting Entities were the true creditor principal and that Lendgreen was the agent, when such an argument is inconsistent with the very caselaw provided by Debtor–caselaw establishing that *individual agents* of the *creditor* may be held liable. Again, Lendgreen could never be an *individual* agent acting on behalf of another entity and such liability therefore does not fit within the agency theory of liability.

---

[13] Debtor also cites *In re Crawford*, for the general premise that "under general principles of agency law, an agent whose tortious conduct renders the principal liable is also liable for his own tortious acts." 388 B.R. 506, 523 (Bankr. S.D.N.Y. 2008), *aff'd in part, vacated in part, remanded*, 476 B.R. 83 (S.D.N.Y. 2012). Again, the Non-Acting Entities do not dispute this body of caselaw, but for the reasons outlined above, it is simply inapplicable to the circumstances here.

Thus, the legitimate agency theory outlined in *In re Gammons* and *In re Parker* establishes only that liability may apply downstream from the creditor to individual agents acting on behalf of the creditor. It does not, in any way, support Debtor's argument that a debtor may hold all upstream corporate entities liable for a creditor's alleged acts, despite a complete lack of allegations showing the upstream entities had any role in, control of, or notice of the underlying acts.

## CONCLUSION

Debtor's attempts to hold the Non-Acting Entities liable for Lendgreen's alleged violation of the automatic stay is nothing more than an attempt to repeatedly try and fit a square peg in a round hole. In order to accept Debtor's theory of liability against the Non-Acting Entities here, this Court would have to be the first court to find: (1) a debtor may hold Non-Acting Entities liable for a related entities' alleged act, despite any allegation that the Non-Acting Entities knew of or approved the act; and (2) that Congress contemplated and unequivocally waived sovereign immunity for court created alter-ego/agency claims. This Court would also have to find Debtor alleged sufficient facts under one or more of the proposed theories cited in his opposition. Such findings do not comport with the Bankruptcy Code, related caselaw, or Debtor's allegations here, and this Court should therefore put an end to the ongoing encroachment of the Non-Acting Entities sovereignty and dismiss LDF Business Development Corporation, LDF Holdings, LLC, and the Tribe from this proceeding.

*[remainder of page intentionally left blank]*

Dated: April 1, 2024

Respectfully submitted,


/s/  *Hanna J. Redd*
Adrienne K. Walker, Esq. (BBO #641490)
Hanna J. Redd (BBO #705222)
LOCKE LORD, LLP
111 Huntington Avenue
Boston, MA 02199
Tel: 617-239-0100
awalker@lockelord.com
hanna.redd@lockelord.com


SPENCER FANE LLP

/s/  *Zachary R.G. Fairlie*
Zachary R.G. Fairlie; admitted pro hac vice
Patrick J. McAndrews; pro hac pending
1000 Walnut Street, Suite 1400
Kansas City, Missouri  64106
Tel: (816) 474-8100
Fax: (816) 474-3216
zfairlie@spencerfane.com
pmcandrews@spencerfane.com

## <u>CERTIFICATE OF SERVICE</u>

I, Hanna J. Redd, do hereby certify that on April 1, 2024, I caused a copy of the foregoing to be served through the ECF system, and that copies will be sent electronically to registered participants and paper copies will be sent to those indicated as non-registered participants requesting notice as of the date herein.

Dated:  April 1, 2024

/s/  Hanna J. Redd