UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br>BRIAN W. COUGHLIN,<br>     Debtor | IN PROCEEDINGS UNDER<br>CHAPTER 13<br>CASE NO. 19-14142-FJB |

**SUR-REPLY IN OPPOSITION TO MOTION TO DISMISS STAY MOTION**

Debtor Brian W. Coughlin respectfully submits this Sur-Reply in Opposition to the Motion of the Lac du Flambeau Band of Lake Superior Chippewa Indians (the "Tribe"), L.D.F. Business Development Corporation ("BDC"), and L.D.F. Holdings, LLC ("Holdings") (collectively, with Niiwin, LLC /d/b/a "Lendgreen," the "Tribal Respondents") to Dismiss Stay Motion.

### I. Introduction

On January 19, 2024, Debtor filed a Second Amended Motion to Enforce the Automatic Stay and for Sanctions (the "Second Amended Motion"). ECF No. 258. As the Second Amended Motion explains, Tribal Respondents – who, together with certain non-Tribal Respondents, operate an online payday lending enterprise that advances money to vulnerable debtors at usurious interest rates – willfully violated the automatic stay by pursuing postpetition debt-collection efforts that eventually drove Debtor to attempt suicide. *Id.* ¶¶ 23-37. Although these activities were undertaken by entities and individuals holding themselves out as representatives of Lendgreen, discovery and further investigation have revealed that "Lendgreen" is an undercapitalized sham entity which fails to respect the corporate formalities that separate it from its parents Holdings, BDC, and Tribe. *See id.* ¶¶ 12-16, 19-22, 49. Consequently, pursuant to well-established doctrines of law and equity, Debtor asks that the

-1-

court "disregard the putative legal separation between the Tribe, BDC, Holdings, and Lendgreen, and treat them as a single unified entity, or as alter egos of one another, or as agents of one another," with each held "jointly and severally liable for the willful violation of 11 U.S.C. § 362(a)(6)." *Id.* ¶ 50.[1]

Though the structure of Respondents' online payday lending scheme is complex, Debtor's theory of liability is simple. Tribal Respondents pursued illegal debt collection efforts against Debtor in violation of Section 362, which prohibits "all entities" from taking "any act to collect, assess, or recover a claim" upon the filing of a bankruptcy petition, and which provides a cause of action for "an individual injured by any willful violation of a stay." 11 U.S.C. § 362(a), (k). Contrary to Tribal Respondents' assertions, nothing in the text or structure, or the caselaw interpreting, Section 362 restricts recovery to actions taken by "direct" actors, as opposed to agents or alter egos. Section 105 empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" title 11. *Id.* § 105(a). And Section 106(a)(1) abrogates sovereign immunity as to any "governmental unit" with respect to various provisions of the Code, including **both** Sections 105 **and** 362. *Id.* § 106(a); *see also Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382 (2023) (Section 106's abrogation of sovereign immunity extends to federally recognized tribes). Consequently, under Section 362(k), Debtor seeks to recover damages against the Tribal Respondents for their collective and willful violation of the automatic stay.

Tribal Respondents newly contend that the Bankruptcy Code limits remedies against a governmental actor to money damages alone, thereby precluding any equitable remedy. ECF

---

[1]  The Second Amended Complaint also alleges that certain non-Tribal Respondents also participated in the online payday lending scheme and seeks to hold them liable for their role in the stay violation. *Id.* at ¶¶ 17-22; 44-47.

No. 289 at 5-6, 14, 16.  Nothing in the Bankruptcy Code does any such thing.  Beyond that brief detour, Tribal Respondents largely restate the technical arguments that they have made in their previous Motion to Dismiss.  These arguments fail for substantially the same reasons that Debtor articulated in his Objection to that Motion.  *See generally* ECF No. 253.  The Supreme Court in this very case held that the Bankruptcy Code's "unequivocally abrogates the sovereign immunity of any and every government that possesses the power to assert such immunity," including "[f]ederally recognized tribes." *Coughlin*, 599 U.S. at 388.  The Debtor's invocation of agency, vicarious, and alter ego liability does nothing to undo that abrogation.  Because Debtor has pleaded sufficient facts to hold Tribal Respondents jointly liable for their stay violation,[2] and ordinary principles of bankruptcy law, agency law, and equity support holding Tribal Respondents liable for their illegal conduct, the Motion to Dismiss should be denied.

**II.     Argument**

A. <u>The Bankruptcy Code Authorizes Equitable Remedies Against Governmental Units</u>

Tribal Respondents' argument that the Bankruptcy Code only authorizes "money damages" against a governmental unit, and thereby precludes equitable remedies against a sovereign, flunks 1L Legislation.  Subsections (a) and (b) of Section 106 provide that "sovereign immunity is abrogated as to a governmental unit" with respect to fifty-nine enumerated sections of the Code and empower the court to "hear and determine any issue arising with respect to the application of such sections to governmental units." 11 U.S.C. § 106(a), (b).  Subsection (c)

---

[2]  Tribal Respondents perplexingly claim (at 4) that Debtor misapprehends that facts are accepted as true on a motion to dismiss.  This misses the mark.  The point was, and remains, that Respondents contest the applicability of alter ego or principal-agent liability on (specious) *legal* grounds, but they fail to seriously contest that Debtor has pleaded adequate *factual* allegations to find an agency or alter ego relationship.  By failing to develop such an argument, they have waived it.  *See Iverson v. City of Boston*, 452 F.3d 94, 103 (1st Cir. 2006).

provides, in relevant part, that "[t]he court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, *including* an order or judgment awarding a money recovery, but not including an award of punitive damages." *Id.* § 106(c) (emphasis added).[3] Tribal Respondents' theory is that "including" means "only," such that when Congress wrote that courts can award an order "*including*" money damages, it *really* meant courts can *only* award money damages.

Tribal Respondents' argument is foreclosed by the rules of construction in the Bankruptcy Code itself, one of which states that in Title 11, the terms "'includes' and 'including' are not limiting." *Id.* § 102(3). That specific rule is consistent with the general principle that "the verb *to include* introduces examples, not an exhaustive list." Brian Garner & Antonin Scalia, *Reading Law* 119 (2012) (describing the "Presumption of Nonexclusive 'Include'"); *see also Federal Land Bank v. Bismarck Co. of St. Paul*, 314 U.S. 95 (1941) ("[T]he term 'including' is not one of all-embracing definition, but simply connotes an illustrative application of the general principle."). Construing a similarly worded provision of the OSH Act authorizing courts to "order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay," 29 U.S.C. § 660(c)(2), the First Circuit held that available relief was not *limited* to that remedy:

> [T]he key language of the OSH Act is broad. It authorizes a court to "order all appropriate relief." The further language including certain remedies, like reinstatement, indicates the availability of the named remedies, but does not purport to limit "all appropriate relief" to those remedies only.

*Reich v. Cambridgeport Air Sys., Inc.,* 26 F.3d 1187, 1191 (1st Cir. 1994). Just so here.

---

[3] Notwithstanding Tribal Respondents' complaint (at 6) that Debtor "improperly seeks punitive damages," nothing restricts Debtor's right to seek punitive damages against non-governmental units who are parties to this case (i.e., the non-Tribal Respondents.)

The negative-implication invoked by Tribal Respondents just does not help them. As the Supreme Court has explained, "the canon *expressio unius est exclusio alterius* does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003). Here, Section 106(c) includes no "group or series," nor even any "listing" of "items," at all – just Congress's instruction that money damages are included among the remedies that a court may order against a sovereign. Tribal Respondents' assertion (at 6) that this statement is actually a "list" comprising a single item stretches the text of Section 106 and the negative-implication canon beyond all recognition.

Tribal Respondents' position is also inconsistent with case law and with the structure of the Bankruptcy Code. The Bankruptcy Code has many provisions that sound in equity, including Section 105's general authorization of the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); *see also* 3 *Collier on Bankruptcy* § 362.04 (16th ed. 2024) ("Under the Code, broad injunctive power is available under section 105.") And bankruptcy courts regularly order injunctions and other equitable remedies against governmental units. *See, e.g.*, *I.R.S. v. Murphy*, 554 B.R. 535, 552 (D. Me. 2015) (holding that "section 106(a)(1) gives bankruptcy courts the [equitable] power to unwind a post-discharge IRS recharacterization of earlier tax payments"); *In re Szwyd*, 408 B.R. 547, 552 (D. Mass. 2009) ("Section 106(a) gives bankruptcy courts the equitable power to order marshaling."). Tribal Respondents' claim that courts are precluded from awarding equitable remedies against governmental units thus fails on multiple levels.

B. <u>Debtor's Claim Arises Under Section 362(k)</u>

As Debtor previously explained in his Opposition to Tribal Defendants' previous Motion to Dismiss, *see* ECF No. 253 at 10, Tribal Respondents have long known that Debtor seeks to pierce the corporate veil separating the Tribe, BDC, Holdings, and Lendgreen from one another. Under the "mandate rule, which 'prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case,'" Tribal Respondents may not now assert that the Tribe, BDC, and Holdings are immune from liability. *United States v. Cheveres-Morales*, 83 F.4th 34, 40 (1st Cir. 2023) (quoting *United States v. Moran*, 393 F.3d 1, 7 (1st Cir. 2004)). Tribal Respondents have not offered (and so have waived) any argument in response.

In any event, Debtor's action to enforce the automatic stay and seek sanctions straightforwardly arises under Section 362(k), and nothing about this changes merely because Debtor seeks to hold Tribal Respondents liable by means of agency, vicarious, or alter-ego liability. Congress enacted Section 362 of the Bankruptcy Code as a comprehensive scheme to protect debtors in bankruptcy and provide a means of redress for willful violations of the automatic stay. Section 362(a) establishes that petitions "operate as a stay, applicable to all entities, of . . . any act to collect assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a). Section 326(k)(1) creates a cause of action for "an individual injured by any willful violation of a stay," who "shall . . . recover actual damages" for such violation. *Id.* Moreover, Section 105(a) empowers bankruptcy courts, as courts of equity, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *Id.* § 105(a); *see also In re IDC Clambakes, Inc.*, 852 F.3d 50, 59 (1st Cir. 2017) ("The Supreme Court has long recognized that bankruptcy courts are courts of equity with the power to apply flexible equitable remedies in bankruptcy

proceedings." (quotation omitted)). Defendants seek to hold Tribal Respondents liable for their violation of the automatic stay pursuant to § 362(k), and "a bankruptcy court ha[s] subject-matter jurisdiction over all claims alleging willful violation of the automatic stay." *In re Davis*, 177 B.R. 907, 912 (B.A.P. 9th Cir. 1995) (noting that "an action for willful violation of the automatic stay is created by section 362[k]" and thus "arises under title 11"). Debtor's action to enforce the automatic stay– "among the most basic of debtor protections under bankruptcy law" – is squarely within the remit of the bankruptcy court. *In re Soares*, 107 F.3d 969, 975 (1st Cir. 1997); *cf. Price v. Rochford*, 947 F.2d 829, 831 (7th Cir. 1991) ("Section 362 is the central provision of the Bankruptcy Code").

Tribal Respondents repeatedly claim that because Debtor seeks to impose liability under theories of agency, veil-piercing, and/or vicarious liability, his Section 362(k) claim no longer "arises under" the Bankruptcy Code. ECF No. 289 at 7-12. Mere repetition of an *ipse dixit* contention is not an argument, and Tribal Respondents still fail to muster any authority for their novel argument.[4] Similarly unmoored from any supporting authority is Tribal Respondents' assertion (at 7) that Section 362 limits liability to "direct acts," even though "section 362(k) creates a coherent enforcement scheme for '*any* willful violation'" of section 362(a)'s automatic stay, which itself applies to '*all* entities' and precludes '*any* act' to recover stayed debts." *In re*

---

[4] Tribal Respondents cite to a single tax case, *In re Capitol,* 568 B.R. 574 (Bankr. D. Mass. 2017), involving a debtor who sought a determination of the income tax liability of its partners under federal tax law. Debtor remains at a loss as to how that case supports Tribal Respondents' position. As *In re Capitol* explained, "proceedings arise under title 11 when the Bankruptcy Code itself creates the cause of action." *Id.* at 584 (quoting *Gupta v. Quincy Med. Ctr.*, 858 F.3d 657, 662 (1st Cir. 2017) (cleaned up)). The Code did not create a cause of action for the debtor's tax claim in that case (and the complaint and requested relief did not otherwise "arise in" or "relate to" the bankruptcy case), so the court lacked jurisdiction. *Id.* at 585. Here, the Section 362(k) *does* create a cause of action to seek damages for a stay violation, so the court has subject-matter jurisdiction.

*Parker*, 2022 WL 15523089, at 2 (9th Cir. Oct. 27, 2022) (emphasis in original) (quoting 11 U.S.C. § 362(k), (a), (a)(6)).[5] Tribal Respondents cite no case suggesting that principal-agent or alter ego liability is unavailable for actions brought under Section 362(k), much less that seeking such relief deprives the court of subject-matter jurisdiction.

To the contrary, it is well established that agency-law principles apply with equal force in the bankruptcy context. *See, e.g.*, *Boltz-Rubinstein v. Bank of America, N.A.*, 624 B.R. 756, 762 n.2 (E.D. Pa. 2021) (noting that "[n]othing in the Bankruptcy Code nor the Bankruptcy Rules overrides the law of agency" and that "[o]rdinary state law principles apply" in bankruptcy (quotations omitted)), *aff'd*, 2022 WL 444263 (3d Cir. Feb. 14, 2022). Tribal Respondents do not contest this bedrock proposition. It follows that agency liability is available for actions to enforce the automatic stay, and bankruptcy courts routinely impose agency liability on defendants in agency relationships who have violated the automatic stay. *In re Parker* at *2 n.2; *see also, e.g.*, *In re Gammons*, 2020 WL 1547154, at *3 (Bankr. D.R.I. Mar. 31, 2020); *In re Crawford*, 388 B.R. 506, 522 (Bankr. S.D.N.Y. 2008).

Abandoning their prior position, Tribal Respondents now concede that parties who are not direct creditors can still be held liable under principles of agency.[6] They instead now

---

[5]  Tribal Respondents' attempt to rebrand BDC, Holdings, and Tribe as "non-acting entities" – and their (incorrect) assertion (at 1) that Debtor "conced[ed] that only one of the . . . defendants was allegedly the actor (Lendgreen) that allegedly knew of the bankruptcy filing and that one single actor (Lendgreen, or its servicer) allegedly nonetheless attempted to collect a debt" – should be rejected. Debtor, of course, has pleaded that, under various legal and equitable doctrines, all of the Tribal Respondents should be treated "as a single unified entity, or as alter egos of one another, or as agents of one another, such that: (a) notice of the Debtor's bankruptcy provided to Lendgreen was notice to the Tribe, BDC, and Holdings; [and that] (b) the collection actions taken by Lendgreen in violation of the automatic stay were actions of the Tribe, BDC, and Holdings." ECF No. 258 at ¶ 50.

[6]  Tribal Respondents previously represented to the court that they conducted a "nationwide search for any case, in any jurisdiction" addressing relief against a "non-creditor entity" and

-8-

advance two new contentions for why they should be able to escape or evade such agency liability themselves; unfortunately, both lines of argument are unavailing.

*First*, Tribal Respondents theorize that agency liability only attaches to "individuals," rather than entities. On this account, the Tribal Respondents should escape liability because "Lendgreen could never be an individual agent acting on behalf of another entity." ECF No. 289 at 19. Tribal Respondents cite no authority for this novel proposition of agency law. To the contrary, "[i]t is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agent," *Meyer v. Holley*, 537 U.S. 280, 285 (2003), and no principle of agency law restricts an agency relationship to "individuals" as opposed to entities. Courts routinely find corporate entities to be in agency relationships with one another, including in actions alleging violations of the automatic stay. *E.g.*, *Boltz-Rubinstein* 624 B.R. at 762-65 (affirming the bankruptcy court's finding that "an agency relationship existed" between two corporate entities in an action under Section 362(k)). Tribal Respondents thus fail to distinguish caselaw holding defendants liable for stay violations by operation of agency law.

Second, citing the wrong document, Tribal Respondents erroneously claim that the Second Amended Motion "merely mentions the word 'agent' once" and "fails to allege that [BDC, Holdings, and Tribe] were acting as agents of Lendgreen or vice versa." ECF No. 289, at 17 & n.12. Tribal Respondents rely on ECF No. *230* (i.e., the First Amended Motion) in support of this assertion, but Debtor's Second Amended Motion is ECF No. *258*. Examining the correct

---

"were unable to find a single case allowing, or even addressing, such extraordinary relief." Respondents' Memorandum of Law in Support of Motion to Dismiss, ECF Doc. No. 235, at 7. Backtracking, Tribal Respondent now concede that "agents may be held liable in addition to principals" for stay violations, and grudgingly acknowledge that courts have considered alter-ego liability for Section 362(k) actions under as well. ECF No. 289 at 9-12, 18.

Motion, it is apparent that Debtor has pleaded extensive facts to support finding that Tribal Respondents act as "agents of one another." ECF No. 258 at ¶ 50; *see also id.* at ¶¶ 3-5, 8 (detailing the ownership and control that Tribal Respondent entities exercise over one another and asking that the Court "disregard the putative separateness" of these entities "under the doctrine of agency or otherwise"); *id.* ¶¶ 12-16, 19-22, 49 (detailing Lendgreen's deliberate undercapitalization; apparent asset commingling; inconsistent statements regarding Tribal Respondents' corporate structure; the fact that representatives of Holdings – not Lendgreen – directly contacted non-Tribal Respondents regarding postpetition collection actions directed at Debtor; and counsel for Tribal Respondents' representation to the Supreme Court that "Lendgreen was "a true tribal business" with "50 to 60 employees," a "headquarters on the reservation," and "money [that] comes from the tribe, tribal accounts.")[7]  Contrary to Tribal Respondents' allegations (at 20), Debtor has amply pleaded that Lendgreen's parent entities had both notice and control of the actions taken under Lendgreen' name.

---

[7]/  Tribal Respondents also complain (at 17) that the Second Amended Complaint is unclear on which entity acts as principal and which as agent between the tribal entities.  For the avoidance of doubt, Debtor alleges that Lendgreen – which is owned and controlled by its parents BDC, Holdings, and Tribe – acted as the agent of its parents and principals, the other Tribal Respondents.  But the messy corporate structure of the Tribal Respondents, and the ensuing difficulty of determining the putative relationships among these entities, is precisely the point: Tribal Respondents have set up a sham structure that fails to respect corporate formalities and is inconsistent, in *its own organizing documents*, on what the relationship between entities supposed to be.  Thus, for example, Lendgreen's Operating Agreement simultaneously states that it is "under the exclusive ownership, control and jurisdiction" of the Tribe; that Holdings is the "sole Member" of Lendgreen; and that the term "Member" is defined to mean BDC. ECF No. 258 at ¶ 15 and Ex. F.  The fact that these entities are organized and operated in flagrant abuse of the corporate form, such that discerning the putative interrelationships among them is all-but impossible, hardly immunizes Tribal Respondents from liability.  Rather, it proves that the "Court should disregard the putative legal separation between the Tribe, BDC, Holdings, and Lendgreen, and treat them as a single unified entity, or as alter egos of one another, or as agents of one another." *Id.* at ¶ 50.

Furthermore, Tribal Respondents' challenge to Debtor's veil-piercing theory similarly fails. Tribal Respondents now apparently concede that veil-piercing is an equitable remedy rather than an independent cause of action. Crucially, this is an implicit concession that that Debtor's action arises under Section 362(k).[8] Nor do Tribal Respondents contest that equitable remedies (in general) and alter ego theories (in particular) are widely available in bankruptcy law. As this Court has previously held, the "broad powers afforded a bankruptcy court under § 105(a)" include the ability to recognize an "equitable remedy" for which the "Bankruptcy Code does not expressly provide." *In re Comprehensive Power, Inc.*, 578 B.R. 14, 25 & n.5 (Bankr. D. Mass. 2017) (Panos, J.); *see also id.* at 36 (concluding that "Plaintiffs have pleaded sufficient facts with respect to their alter ego theory" of liability to defeat a motion to dismiss). Courts routinely award equitable relief in actions to specifically enforce the automatic stay. *See, e.g.*, *In re Adelphia Commc'ns Corp.*, 345 B.R. 69, 83 (Bankr. S.D.N.Y. 2006) ("Injunctions to enforce the automatic stay . . . have been routinely granted by bankruptcy courts, and affirmed by higher courts, most often under Bankruptcy Code section 105(a).") It thus comes as no surprise that various courts have considered piercing the corporate veil to impose liability on the putative alter egos of creditors alleged to have violated the automatic stay. *E.g.*, *In re Sehman*, 632 B.R. 846, 852 n.48 (Bankr. N.D. Fla. 2021); *In re Garza*, 605 B.R. 817, 824 (Bankr. S.D. Tex. 2019); *In re Harlow v. Wells Fargo & Co.*, 2022 WL 17586716, at *13 (Bankr. W.D. Va. Dec. 12, 2022).

Tribal Respondents cite no legal authority for their repeated and specious claim that alter-ego liability "is not contemplated, or available under, the Bankruptcy Code." ECF No. 289 at 4.

---

[8]/ ECF No. 289 at 7 & n.5. Tribal Respondents' assertion that characterizing veil-piercing "as an equitable remedy versus a cause of action" does not "change[] the analysis for dismissal in any way" belies that their previous Motion to Dismiss was largely premised on the contention that veil-piercing was an independent cause of action that did not arise under the bankruptcy code. *See* ECF No. 235 at 12.

They fail to distinguish *Sehman*, *Garza*, and *Harlow* by invoking the same illusory distinction between "entities" and "individuals" discussed *supra* with respect to agency liability. In this instance, Tribal Respondents' theory is that the corporate veil can only be pierced to impose liability on individuals, not "entities." Here again, Tribal Respondents offer no legal authority for that supposed rule.[9] Business entities. as well as natural persons, can be and are shareholders of corporations (or members of LLCs), and it is a "'fundamental principle of corporate law' that the corporate veil may be pierced to hold a parent corporation liable for acts of a subsidiary." *United States v. Kayser-Roth Corp.*, 272 F.3d 89, 98 (1st Cir. 2001) (quoting *United States v. Bestfoods*, 524 U.S. 51, 62 (1998)). Neither do Tribal Respondents contest that Debtor has pleaded sufficient facts to hold BDC, Holdings, and Tribe liable under an alter ego theory in the interests of justice and in light of Tribal Respondents' egregious abuse of the corporate form.

  C. Congress Unequivocally Abrogated Tribal Sovereign Immunity

Lastly, Tribal Respondents continue their attempt to resuscitate the same sovereign immunity argument which they lost before the Supreme Court. To recap, Section 106(a)(1) of the Bankruptcy Code abrogates the sovereign immunity of a "government unit" with respect to myriad provisions of the Bankruptcy Code, including Section 105 (which affords the bankruptcy courts broad equitable authority) and Section 362 (which provides a private cause of action for violations of the automatic stay). 11 U.S.C. § 106(a). Section 106(a)(2) further confirms the wide-ranging scope of this abrogation, providing"[t]he court may hear and determine *any issue*

---

[9] Tribal Respondents' argument appears to be largely premised on a misreading of the *Garza* court's discussion of alter-ego liability. There, the sole member of the LLC whose corporate veil the debtor sought to pierce was an individual, so the court discussed standard "principle[s] of corporate law" mostly in terms of individuals. Nowhere did the court suggest that veil piercing is unavailable when a corporation or LLC's owners are themselves corporate entities; the *Garza* court in fact contemplated that the corporate veil might be pierced in order to reach any "control entity," not just an "individual." 605 B.R. at 825 n.48

arising with respect to the application of such sections to governmental units." 11 U.S.C. § 106(a)(2) (emphasis added). And in this very case, the Supreme Court held that Section 106 "unequivocally abrogates the sovereign immunity of any and every government that possesses the power to assert such immunity," including "[f]ederally recognized tribes." *Coughlin*, 599 U.S at 388. Because Debtor seeks relief against Tribal Respondents pursuant to Sections 105 and 362(k) for their willful violation of the automatic stay, Tribal Respondents can no longer hide behind the legal curtain of sovereign immunity in order to evade liability.

Tribal Respondents nevertheless contend that although Debtor may have "convinced the United States Supreme Court that *with respect to direct § 362(k) liability*, the Bankruptcy Code abrogates tribal sovereign immunity," tribal sovereign immunity lives on in bankruptcy matters in which equitable relief is sought. ECF No. 289 at 2. That is not what the Supreme Court held in *Coughlin*, and it is not how abrogation works. The question before the Court was "whether the abrogation provision in § 106(a) and the definition of 'governmental unit' in § 101(27), taken together, unambiguously abrogate the sovereign immunity of federally recognized tribes." 599 U.S. at 387. *Coughlin* answered in the affirmative, holding that "Bankruptcy Code unambiguously abrogates tribal sovereign immunity" – not only as to "direct § 362(k) liability," but with respect to *all* of the provisions of the Bankruptcy Code listed in Section 106(a). 599 U.S. at 399. Nothing about Debtor's (amply justified) reliance on alter ego or agency principles restores the sovereign immunity that Congress has "unambiguously," "unequivocally," and "unmistakably" abrogated. *Coughlin*, 599 U.S. at 389, 393.

Further, Tribal Respondents' insinuation that tribal sovereign immunity applies with greater force against *equitable* claims collapses upon the slightest scrutiny. Notwithstanding Tribal Respondents' claim (at 2) that they are not "able to identify" any authority "that tribal

-13-

sovereign immunity is abrogated as to equitable relief," courts show no hesitation in granting equitable remedies against tribal defendants. *See, e.g.*, *Aquinnah/Gay Head Cmty. Ass'n, Inc. v. Wampanoag Tribe of Gay Head (Aquinnah)*, 989 F.3d 72 (1st Cir. 2021) (affirming permanent injunction against tribe); *State of California v. Iipay Nation of Santa Ysabel*, 898 F.3d 960 (9th Cir. 2018) (same); *see also Gingras v. Think Fin., Inc.*, 922 F.3d 112, 121 (2d Cir. 2019) ("Given that tribal immunity arises from tribes' statuses as sovereigns, it is unremarkable that they too can be sued for prospective, injunctive relief based on violations of federal law."). If anything, *the opposite* is true: Rather than showing special solicitude to tribal interests in cases involving equitable remedies, many courts have concluded that tribal sovereign immunity does not apply *at all* to actions seeking injunctive or declaratory relief.[10]

Respondents argue at length that "courts require abrogation of tribal sovereign immunity before applying equitable relief," string-citing several out-of-circuit cases purportedly standing for that proposition. *See* ECF No. 289 at 2-4, 6. The cases they cite in support all concern the

---

[10]   *See, e.g.*, *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 515 (1991) (Stevens, J., concurring) ("I am not sure that the rule of tribal sovereign immunity . . . applies to claims for prospective equitable relief against a tribe."); *TTEA v. Ysleta del Sur Pueblo*, 181 F.3d 676, 680-81 (5th Cir. 1999) (holding "the Tribe has sovereign immunity from an award of damages only," and that such immunity does not extend to actions seeking declaratory and injunctive relief"); *Comstock Oil & Gas, Inc. v. Ala. & Coushatta Indian Tribes*, 261 F.3d 567, 571-72 (5th Cir. 2001) (tribal sovereign immunity did not apply against a claim for equitable relief against a tribe), *cert. denied*, 535 U.S. 971 (2002); *New York v. Shinnecock Indian Nation*, 523 F. Supp. 2d 185, 299 n.74 (E.D.N.Y. 2008) (similar), *vacated on other grounds*, 686 F.3d 133 (2d Cir. 2012); *see also Narragansett Indian Tribe v. Rhode Island*, 449 F.3d 16, 29 (1st Cir. 2006) (discussing *TTEA*).

To be sure, other courts have gone the other way. *E.g.*, *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 928 (7th Cir. 2008) ("Tribal sovereign immunity . . . extends to suits for injunctive or declaratory relief."); *Imperial Granite Co. v. Pala Band of Mission Indians*, 940 F.2d 1269, 1271 (9th Cir. 1991) (noting that tribal immunity "extends to suits for declaratory and injunctive relief"). The First Circuit has yet to weigh in on the circuit split, and this court need not either, because Congress has expressly abrogated the tribal sovereign immunity for suits under the Bankruptcy Code.

*waiver* of sovereign immunity, and only involves bankruptcy. Those cases are beside the point. Regardless of whether courts are loath to find that a tribe has *impliedly waived* its sovereign immunity, *Coughlin* conclusively establishes that Congress abrogated tribal sovereign immunity for actions under the Bankruptcy Code. The Debtor does not need to establish that Tribal Respondents have waived their immunity, because Tribal Respondents have **no remaining sovereign immunity** to waive. Here, Debtor has moved under Section 362(k) to enforce the automatic stay and redress Tribal Respondents' willful violation of the same. The remedies that Debtor seeks are squarely within the authority of the court to award, and sovereign immunity does not reattach merely because some of those remedies sound in equity.

### III. Conclusion

For the foregoing reasons, Debtor respectfully requests that Respondents' Motion to Dismiss be denied.

BRIAN W. COUGHLIN, Debtor
By his attorneys,

Date: April 15, 2024

*/s/ Richard N. Gottlieb, Esq.*
Richard N. Gottlieb, Esq. BBO # 547970
Law Offices of Richard N. Gottlieb
Ten Tremont Street
Suite 11, 3rd Floor
Boston, MA 02108
(617) 742-4491
rnglaw@verizon.net

-and-

*/s/ Terrie Harman, Esq.*
Terrie Harman, Esq., *Pro Hac Vice*
Harman Law Offices
129 Water Street
Exeter, NH 03883
(603) 431-0666
th@tharman.net

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

In re
BRIAN W. COUGHLIN,
           Debtor

IN PROCEEDINGS UNDER
CHAPTER 13
CASE NO. 19-14142-CJP

## CERTIFICATE OF SERVICE

I, Richard N. Gottlieb, Esq., hereby certify that I have this day served a copy of the Debtor's Sur-Reply in Opposition to Motion to Dismiss Stay Motion, via electronic mail on the CM/ECF system.

Date:  4/15/2024

*/s/ Richard N. Gottlieb, Esq.*
Richard N. Gottlieb, Esq. BBO # 547970
Law Offices of Richard N. Gottlieb
Ten Tremont Street
Suite 11, 3rd Floor
Boston, MA 02108
(617) 742-4491
rnglaw@verizon.net

Persons served:

**Carolyn Bankowski, Esq.**
Chapter 13 Trustee
(Served via CM/ECF)

**Adrienne Walker, Esq.**
Locke Lord, LLP
-and-
**Zachary Fairlie, Esq.**
Spencer Fane, LLP.

Counsels of Record to Niiwin, LLC d/b/a "Lendgreen";
LDF Holdings, LLC;
Lac du Flambeau Business Development Corporation; and
Lac du Flambeau Band of Lake Superior Chippewa Indians

**Douglas B. Rosner, Esq.**
Goulston & Storrs
-and-
**Michale B. Stinson, Esq**
Dorsey & Whitney
(Pro Hac Vice)
**Michael Norton, Esq.**
Dorsey & Whitney
(Pro Hac Vice)

Counsels of Record for
4Finance, S.A. of Latvia