# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>Brian W. Coughlin<br>              Debtor. | IN PROCEEDINGS UNDER<br>CHAPTER 13<br>Case No. 19-14142-CJP |

## MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT 4FINANCE, AS'S MOTION TO DISMISS DEBTOR'S MOTION TO ENFORCE AUTOMATIC STAY

The Court should dismiss the Debtor Brian Coughlin's (the "Debtor's" or "Mr. Coughlin's") Second Amended Motion to Enforce the Automatic Stay and for Sanctions (Dkt. 258, *hereinafter*, the "Motion") as against Respondent 4finance, AS (Latvia), a Latvian joint stock company (*hereinafter*, "Respondent" or "4finance Latvia"),[1] because: (1) this Court lacks personal jurisdiction to adjudicate these (or any other) claims against 4finance Latvia; and (2) the Debtor, through his operative Motion, has failed to state a plausible claim against 4finance Latvia for alleged violations of the automatic stay provisions at 11 U.S.C. § 362.

While the Debtor has alleged that various "4Finance" personnel were involved in certain of the lending business functions underlying his Motion, these individuals are not (and have never been) employees of 4finance Latvia. Rather, each of these individuals is a current or former employee of a different 4finance entity – AS 4Finance Ltd. (*hereinafter*, "4finance Canada"), a Canadian corporation formed under the provincial laws of British Columbia, Canada, with its

---

[1] Debtor has identified 4finance Latvia in his Motion as "4Finance, S.A. of Latvia," but the actual legal name of the Latvian entity with its primary place of business in Riga, Latvia at the address listed by Debtor is 4finance, AS. (*See* Decl. of K. Donnelly in Supp. 4finance Latvia's Mot. to Dismiss ¶ 1 ("Donnelly Decl."); *see* Motion ¶ 7, Dkt. 258.)

principal business address registered in Ontario.[2]  This is fatal to the Debtor's Motion against 4finance Latvia because, among other reasons, the "proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated."  *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004); *see also Rodriguez-Rivera v. Allscripts Healthcare Solutions, Inc.*, 43 F.4th 150, 161 (1st Cir. 2022) ("generally, the jurisdictional contacts of a subsidiary corporation are not imputed to its parent" (citing *De Castro v. Sanifill, Inc.*, 198 F.3d 282, 283-84 (1st Cir. 1999)).

In the alternative, but for similar reasons, dismissal of 4finance Latvia is also proper because Debtor has failed to state a plausible claim against it for alleged violations of the Bankruptcy Code's automatic stay provisions at 11 U.S.C. § 362(a).  Again, aside from formulaic conclusions alleged "[u]pon information and belief," the Debtor has not set forth any allegations of fact to support a sufficient nexus between 4finance Latvia and the alleged collections activities underlying his Motion that would give rise to a plausible claim for relief.  Indeed, no such nexus exists. Under the pleading standards set forth in *Twombly* and its progeny, such conclusory allegations premised on speculative or unreasonable inference are not sufficient to state a plausible claim for relief that may proceed to discovery.

Therefore, Respondent 4finance Latvia respectfully asks that the Court grant its Motion to Dismiss in its entirety, and enter an order dismissing 4finance Latvia from this proceeding.

---

[2] *See AS 4finance, Ltd.*, ONTARIO BUSINESS REGISTRY, *available at* https://www.ontario.ca/page/ontario-business-registry.  For the Court's convenience, a screenshot of this publicly available information is attached as Exhibit A to the Declaration of Mary Jo Walker filed contemporaneously herewith.  (*See* Decl. of Mary Jo Walker in Supp. 4finance Latvia's Mot. to Dismiss ¶ 2 (the "Walker Decl."), Ex. A.)

**BACKGROUND**

**I.     THE DEBTOR'S MOTION**

In December 2019, Debtor commenced this bankruptcy case under Chapter 13 of the Bankruptcy Code by filing his initial Petition, which, among other debts, listed an unsecured loan from Respondent Niiwin, LLC d/b/a Lendgreen (*hereinafter*, "Lendgreen"), with a balance owing at that time of $1,594.91 (*hereinafter*, the "Lendgreen Loan" or the "Loan"). (*See* Motion ¶¶ 23-24, Dkt. 258; *see also* Dkt. 1, Schedule of Unsecured Debts at Item 4.17.)  In his operative Motion, Debtor alleges that, despite having received notice of his initial Chapter 13 bankruptcy filings,[3] in February and March of 2020, "Lendgreen continued its collections efforts to recover from the Debtor upon the [Lendgreen Loan], by means of text messages, electronic mail, telephone calls and voicemail messages" in violation of the Bankruptcy Code's automatic stay provision at 11 U.S.C. § 362(a)(6).  (Motion ¶¶ 24-27, Dkt. 258; *see also id.* Ex. O, Dkt. 258-2 (listing "Lend Green" [sic] on Debtor's Mailing Matrix filed with his Petition).)  Debtor alleges that, "in an effort to escape the unrelenting, harassing efforts to collect upon the [Lendgreen Loan], the Debtor, who was already suffering from severe clinical depression and Type-1 Diabetes, attempted suicide by means of an overdose of prescription medications." (*Id.* ¶¶ 29-31, Dkt. 258.)  As a result of this alleged suicide attempt and later "hospitalization caused by the actions of Lendgreen," Debtor further alleges that he incurred approximately $77,000 in medical expenses and approximately

---

[3] Lendgreen is the only Respondent named in the Motion that Debtor listed in his bankruptcy Schedules or otherwise included in his "Mailing Matrix." (*See* Motion ¶¶ 24-26 (alleging that notice was sent to Lendgreen at its tribal address in Lac Due Flambeau, Wisconsin), Dkt. 258.) Debtor does *not* allege that 4finance Latvia ever received notice of his bankruptcy prior to the alleged stay violations at issue (whether from Debtor or anyone else). (*See generally id.*)  In fact, 4finance Latvia did not know about the Debtor, the Debtor's loan, or this bankruptcy case, until it received a copy of Debtor's instant Motion in March 2024. (*See* Donnelly Decl. ¶ 6.)

3

$9,000 in lost wages. (*Id.* ¶¶ 32-33.)

On March 25, 2020, Debtor filed his original Motion to Enforce the Automatic Stay and for Sanctions against Lendgreen and certain other "Tribal Respondents," including LDF Holdings, LLC, the Lac du Flambeau Business Development Corporation, and the Congressionally recognized Lac du Flambeau Band of Lake Superior Chippewa Indians itself. (*See* Dkt. 27.) By Order dated October 19, 2020, this Court granted the Tribal Respondents' motion to dismiss the Debtor's initial stay motion for lack of subject matter jurisdiction based on the doctrine of tribal sovereign immunity. (*See* Memo. of Decision and Order, Dkt. 113.) And after nearly three years of appellate litigation, that order of dismissal was eventually reversed and the case remanded back to this Court in 2023 for further proceedings as a Contested Matter under Part VII of the Bankruptcy Rules of Procedure. (*See* Order dated Aug. 18, 2023, Dkt. 206.)

On November 9, 2023, Debtor filed an Amended Motion to Enforce the Automatic Stay, alleging that "Lendgreen knew or should had [sic] reason to know that the Debtor was in the midst of a Chapter 13 bankruptcy" when engaging in the alleged collections activities at issue, and adding alter-ego theories of liability against each of the Tribal Respondents affiliated with Lendgreen. (*See* Debtor's First Am. Mot. to Enforce the Automatic Stay and for Sanctions at pp. 8-9, Dkt. 230.)

On January 19, 2024—nearly *four years* after filing his original stay motion in March 2020—Debtor filed his now operative Second Amended Motion to Enforce the Automatic Stay (*i.e.*, the Motion now at issue), which added 4finance Latvia as a Respondent, along with three other "Non-Tribal Respondents," including Lendgreen's loan servicer, Vivus Servicing, Ltd. ("Vivus"), and two additional Maltese Respondents, one of which (GMLA Trading, Ltd. – or "GMLA") is alleged to be liable for simply issuing a "working capital" loan to Lendgreen ten years

4

ago, and the other (4Finance Malta, Ltd) is alleged to somehow be liable for simply having the same address and "legal representative" as GMLA. (*See* Motion ¶¶ 8-10, 18-21, Dkt. 258.) In his Motion, Debtor refers to each of these other "Non-Tribal Respondents" as "putative subsidiaries or affiliates" of 4finance Latvia, and alleges "[u]pon information and belief" that each is "under common ownership and control."[4] (*Id.* ¶ 17 & Introduction at p.1.)

Based on Vivus's duties under its Servicing Agreement with Lendgreen, Debtor alleges that Vivus "is liable under principles of *respondeat superior* for the conduct of the individuals who held themselves out as representatives of Lendgreen and who violated the automatic stay." (Motion ¶¶ 18(g), 44, Dkt. 258.) Building on this threshold premise, Debtor alleges further ("[u]pon information and belief") that, because the "management, personnel, and operations of 4Finance and [the loan servicer] Vivus are intertwined, and no real separation exists between the two," 4finance Latvia is also liable "for the conduct of the individuals who . . . violated the automatic stay." (*Id.* ¶¶ 22, 45.)

Debtor purports to advance three legal theories of liability against 4finance Latvia. First, Debtor claims (in the alternative)[5] that 4finance Latvia "was the actual employer of those . . . individuals" who allegedly violated the stay, and is, therefore, "liable under principles of *respondeat superior*." (*Id.* ¶ 45.) Second, Debtor claims that "Vivus and 4Finance are jointly and

---

[4] These allegations are false; 4finance Latvia is not affiliated or under common ownership or control with Vivus or GMLA, and, furthermore, is not aware of a legal entity named "4Finance Malta, Ltd." (*See* Background, Part II, *infra; see also* Donnelly Decl. ¶¶ 8-9.)

[5] This first theory against 4finance Latvia is plead in the alternative to Debtor's primary claim that ***Vivus*** "is liable under principles of *respondeat superior* for the conduct of the individuals who . . . violated the automatic stay." (*Compare* Motion ¶ 44 (alleging Vivus is liable under principles of *respondeat superior*) *with* ¶ 45 ("***Alternatively***, 4Finance . . . was the actual employer . . .") (emphasis added), Dkt. 258.)

5

severally liable for one another's conduct under principles of agency and alter ego liability based on their intertwined personnel and operations." (*Id.* ¶ 46.) And third, Debtor claims that each of the "Non-Tribal Respondents," including 4finance Latvia, "are jointly and severally liable for the conduct of those same individuals because they formed a joint venture and/or general partnership for the purpose of making . . . consumer loans . . . ." (*Id.* ¶ 47.)

As the *sole* "factual" premise for Debtor's conclusory assertion that 4finance Latvia is a proper respondent under the foregoing legal theories, Debtor cites the following:

- An undated internet posting on a third-party job recruitment website (Indeed.com) that refers to Vivus as "the Canadian/US Headquarters for 4Finance Group,"[6] (Motion ¶ 22(a), Dkt. 258; *id.* Ex. I, Dkt. 258-2);

- An undated "Dun & Bradstreet" online "Business Directory" profile that refers to Mark Bettiol – the individual who signed the Lendgreen Servicing Agreement for Vivus – as a "Principal" of "4 Finance Corp.,"[7] (*id.* ¶ 22(b), Dkt. 258; *id.* Ex. J, Dkt. 258-2);

- Screenshots of undated internet profiles (from LinkedIn and "Zoominfo.com" respectively) for Lyubov Tsap (who Debtor alleges, without further explanation, to be "one of the individuals who made unlawful collection attempts on behalf of Lendgreen"), and that refer to Ms. Tsap as an employee of "4Finance" in Ontario,

---

[6] In his Motion, Debtor does not explain who or what "4Finance Group" is, how "4Finance Group" is allegedly connected to Respondent 4finance Latvia (let alone Debtor's Loan), or who authored the internet post in question.

[7] Again, Debtor does not explain who or what "4 Finance Corp." is, how "4 Finance Corp." is allegedly connected to Respondent 4finance Latvia, or who specifically authored the internet profile in question.

6

- Canada,[8] (*id.* ¶ 22(c), Dkt. 258; *id.* Exs. K & L, Dkt. 258-2); and

- A May 2020 email thread in which the Director of Compliance for Tribal Respondent LDF Holdings, LLC requested certain information about Debtor's Lendgreen Loan from two individuals with a "4finance.com"[9] email address, (*id.* ¶ 22(d), Dkt. 258; *id.* Ex. M, Dkt. 258-2.)

While certain of the foregoing exhibits might reflect a connection[10] between Debtor's Loan and a "4Finance" entity generally, *none* reflect a connection with Respondent 4finance Latvia specifically. Again, this is because no such connection exists.

## II.   4FINANCE LATVIA HAS NO CONNECTION TO THIS FORUM OR CASE.

4finance Latvia is a Latvian joint stock company with its headquarters and principal place of business in, Riva, Latvia. (Donnelly Decl. ¶ 3; *see also* Motion ¶ 7, Dkt. 258.) As a separate and wholly owned subsidiary of 4finance Holding S.A. (Luxembourg) (*hereinafter*, "4finance Holding"), 4finance Latvia is engaged in the consumer lending business and provides information technology (or "IT") and other administrative services for other consumer lending companies in Europe, including certain "4finance" affiliates in the Czech Republic, Spain, Denmark, Lithuania, and Sweden. (Donnelly Decl. ¶¶ 1-4.) At all relevant times, 4finance Latvia has operated in Europe exclusively; it does not conduct any business in the United States, is not authorized as a

---

[8] Debtor again fails to explain who or what "4Finance" is as referenced in his Exhibits, how "4Finance" is allegedly connected to Respondent 4finance Latvia, or (at least with respect to the "Zoominfo" screenshot), who authored the internet profile in question.

[9] Based solely on their "4finance.com" email addresses, Debtor infers remarkably that these individuals must be "representatives of 4Finance *[Latvia]*" specifically. (*See* Motion ¶¶ 7 (defining "4Finance" as 4finance Latvia), 22(d), Dkt. 258.)

[10] 4finance Latvia does not concede, and explicitly denies, that any such general "connection" would be sufficient to state a plausible claim regardless.

7

matter of corporate governance to conduct business in the United States, does not have any employees or other representatives in the United States, does not have any assets or bank accounts in the United States, and does not own or operate any subsidiary or affiliate companies that conduct business or otherwise have any assets in the United States. (*Id.* ¶¶ 4-5.)

While 4finance Latvia does not operate outside of Europe, there are certain other "4finance" entities affiliated with 4finance Holdings that do, including the "4Finance" entity actually referenced in the Exhibits to Debtor's Motion – AS 4finance, Ltd. (*i.e.*, 4finance Canada). (Walker Decl. ¶ 3; *see also* Donnelly Decl. ¶ 6.) Indeed, following its receipt of Debtor's Motion in March 2024, 4finance Latvia determined that each of the individuals referenced in the Exhibits to Debtor's Motion as a "4Finance" employee, *i.e.*, Mr. Bettiol, Ms. Tsap, Mr. Menezes, and Ms. Walker (*see* Motion ¶ 22 & Exs. H-M, Dkt. 258-2), is a current or former employee ***of 4finance Canada***. (Walker Decl. ¶ 5; Donnelly Decl. ¶ 7.) 4finance Latvia has never employed any of these individuals. (Walker Decl. ¶ 5; Donnelly Decl. ¶ 7.) Furthermore, and as confirmed by the accompanying Walker Declaration, 4finance Canada had previously contracted with Vivus to provide certain operational services, including electronic data back-up storage. (Walker Decl. ¶ 4.) 4finance Latvia had nothing to do with the contractual services that 4finance Canada provided to Vivus. (*Id.*)

Debtor's other conclusory allegations regarding 4finance Latvia and its purported connection to this case are also demonstrably false. Most fundamentally, Vivus and 4finance Latvia are ***not*** corporate affiliates of one another or otherwise under common ownership and control.[11] (*Compare* Motion at p.1 & ¶ 17, Dkt. 258 *with* Donnelly Decl. ¶ 8.) In short, 4finance

---

[11] Additionally, Debtor's vague and conclusory allegations regarding a corporate affiliation

Latvia has no relationship with Lendgreen, Vivus, the Debtor's loan, or any of the alleged collections activities underlying the Debtor's claim for relief under 11 U.S.C. § 362. (Donnelly Decl. ¶¶ 1-9; Walker Decl. ¶¶ 4-5.)

## ARGUMENT

**I.**     **LEGAL STANDARDS**

As set forth in this Court's Contested Matter Case Management and Scheduling Order of August 18, 2023, "the provisions of Part VII of the Federal Rules of Bankruptcy Procedure shall apply regarding [this] Contested Matter." (Order, Dkt. 206.) Accordingly, under Federal Rule of Bankruptcy Procedure 7012(b), the procedural standards governing motions to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure also apply here.

**A.**     **Rule 12(b)(2) Motions to Dismiss for Lack of Personal Jurisdiction**

Under Federal Rule of Bankruptcy Procedure 7004(f), a bankruptcy court may only exercise jurisdiction over a party when "consistent with the Constitution and laws of the United States." *In re Cyphermint, Inc.*, 445 B.R. 11, 17 (Bankr. D. Mass. 2011) (citing 10 Alan N. Resnick and Henry J. Sommer, *Collier on Bankruptcy* ¶ 7004.07 (15th Ed. Rev'd 12/2007)). "Specifically, due process requires that out-of-forum defendants must have 'certain minimum contacts with [the

---

between 4finance Latvia and GMLA Trading Ltd. or an entity named, "4Finance Malta, Ltd." are also false. (Donnelly Decl. ¶¶ 8-9.) 4finance Latvia is not a corporate affiliate of, or under common ownership and control with, GMLA Trading Ltd., and, furthermore, 4finance Latvia is not aware of a separate business entity named "4Finance Malta, Ltd" and has never otherwise conducted business under that name. (*Id.*; *compare with* Motion at 1 (describing GMLA as a "putative subsidiary or affiliate" of 4finance Latvia), ¶¶ 9-10 (alleging that GMLA and "4Finance Malta, Ltd." have the "same address and legal representative"), 18(c) & 21 (alleging "upon information and belief" that GMLA made a "working capital" loan to Lendgreen ten years ago), 47 (claiming that the Non-Tribal Respondents "formed a joint venture and/or general partnership for the purpose of making . . . consumer loans . . . ."), Dkt. 258.)

9

forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *In re Sheehan*, 48 F.4th 513, 520 (7th Cir. 2022) (quoting *Int'l Shoe Co. v. Wash. Off. Of Unemp't Comp. & Placement*, 326 U.S. 310, 316 (1945)).[12]

When a court's jurisdiction is challenged pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff [here, the Debtor] bears the burden of demonstrating that jurisdiction exists." *Id.*; *see also In re BT Prime Ltd.*, 599 B.R. 670, 679 (Bankr. D. Mass. 2019). The moving party may submit evidence with their motion, and the court may "take into account undisputed facts" established by such evidence. *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016); *see also Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 51 (1st Cir. 2002). And while the allegations set forth in a plaintiff's operative pleading may be credited for purposes of determining whether he has made a prima facie showing of jurisdiction, the court should only accept such allegations as true to the extent they are supported by evidence when disputed. *See United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001); *see also In re BT*, 599 B.R. at 678. Furthermore, the court "will not draw argumentative inferences in the plaintiff's favor" and will not "accept as true a legal conclusion couched as a factual allegation." *In re BT*, 599 B.R. at 678 (citing *In re Terrorist Attacks on September 11,*

---

[12] "Because Congress has authorized broad, nationwide service of process through Federal Rule of Bankruptcy Procedure 7004(d), personal jurisdiction disputes in bankruptcy proceedings generally implicate the Due Process Clause of the Fifth Amendment," whereas personal jurisdiction questions in federal cases concerning state law theories of liability typically "implicate the Due Process Clause of the Fourteenth Amendment." *In re Sheehan*, 48 F.4th at 520 n.5 (citing *Diamond Mortg. Corp. of Illinois v. Sugar*, 913 F.2d 1233, 1244 (7th Cir. 1990)). This distinction is largely one without a difference here because 4finance Latvia had no contact with the United States regardless. *See id.* at 525-26 (affirming dismissal of debtor's Section 362 claims because "[n]one of the defendants did anything to reach out to the United States and affiliate themselves with the United States or Illinois").

10

*2001*, 714 F.3d 659, 673 (2d Cir. 2013)).

"A court can have either general or specific personal jurisdiction over a party," and, thus, because Debtor here does not (and cannot) assert that 4finance Latvia is "at home" in this forum (whether by being incorporated or otherwise having its principal place of business here),[13] "the only applicable question of jurisdiction [is] whether the bankruptcy court ha[s] specific personal jurisdiction over [4finance Latvia]." *In re Sheehan*, 48 F.4th at 522 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also Harlow v. Children's Hospital*, 432 F.3d 50, 57 (1st Cir. 2005). And to answer that question in the affirmative, Debtor must "establish[] three conditions:" First, the claim "must directly arise out of, or relate to, the defendant's forum[] activities"; Second, the "defendant's in-[forum] contacts must represent a purposeful availment of the privilege of conducting activities in the forum" such that being involuntarily summoned into the forum would be "foreseeable"; and third, "the exercise of jurisdiction must be reasonable" under the circumstances. *In re BT Prime Ltd.*, 599 B.R. at 692 (citing *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 27 (1st Cir. 2008)). Furthermore, the relationship between the claim and the defendant's forum activities "must arise out of contacts that the 'defendant *himself* creates with the forum State.'" *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis in both opinions).

### B.    Rule 12(b)(6) Motions to Dismiss for Failure to State a Plausible Claim

To survive a Rule 12(b)(6) motion to dismiss, the operative pleading must include factual allegations that, if taken as true, are sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements

---

[13] It is undisputed that 4finance Latvia is a foreign corporation with its principal place of business in Riga, Latvia. (Motion ¶ 7, Dkt. 258; *see also* Donnelly Decl. ¶ 3.)

11

of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleading requirements of Rule 8 "require more than labels and conclusions," and, therefore, "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 553-55 (2007) (internal citations omitted). The well-plead factual allegations "must be enough to raise a right to relief above the speculative level"; in order to proceed to discovery, the alleged facts must show more than the mere "possibility" of a valid claim, they must instead reflect a "plausible" likelihood that discovery will yield evidence establishing a right to the relief sought. *Id.* at 557; *see also Schatz v. Republican State Leadership Committee*, 669 F.3d 50, 55 (1st Cir. 2012).

**II.    THE COURT SHOULD DISMISS 4FINANCE LATVIA FROM THIS CASE.**

Under the foregoing standards, the Court should dismiss Debtor's Motion against 4finance Latvia pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). In conclusory fashion, Debtor claims that 4finance Latvia is liable for the alleged conduct of *other* persons – namely, Vivus. But aside from legal conclusions and speculative assumptions that are demonstrably false, the Debtor has failed to plead (much less prove) any connection between 4finance Latvia and these other persons at all, let alone one that would establish personal jurisdiction or a plausible claim for vicarious liability. As a result, the Court should grant this motion in its entirety and enter an order dismissing 4finance Latvia from this proceeding.

**A.    This Court Lacks Specific Personal Jurisdiction over 4finance Latvia.**

Dismissal for lack of personal jurisdiction under Rule 12(b)(2) is proper here because Debtor has not established that 4finance Latvia had any purposeful contact within the United States that directly caused, or otherwise relates to, his underlying claim for relief under Section 362. *See In re BT Prime Ltd.*, 599 B.R. at 692; *see also In re. Sheehan*, 48 F.4th at 523-26 (affirming dismissal of Section 362 claims against foreign-defendant for lack of purposeful contact with the

12

United States). Indeed, Debtor cannot establish a relevant connection with the United States because no connection exists.

No doubt recognizing this deficiency, Debtor has attempted to establish jurisdiction over 4finance Latvia by imputing the purported contacts or activities of *other persons*. More specifically, Debtor has asserted a variety of "derivative" liability theories based on the following allegations: (1) that 4finance Latvia "owns Vivus directly or indirectly" or is otherwise "under common ownership and control" with Vivus,[14] (Motion ¶¶ 8, 17, Dkt. 258); (2) that 4finance Latvia and Vivus are "intertwined" such that "no real separation exists between the two," (*id.* ¶ 22); (3) that 4finance Latvia is the "actual employer" of the individuals who Debtor claims violated the automatic stay while acting as "representatives of Lendgreen," (*id.* ¶ 45); (4) that 4finance Latvia and the other "Non-Tribal Respondents" are "jointly and severally liable for the conduct of those same individuals because they formed a joint venture and/or general partnership for the purpose of making high-interest consumer loans . . . ," (*id.* ¶ 47); and (5) that Vivus and 4finance Latvia "are jointly and severally liable for one another's conduct under principles of agency and alter ego liability based on their intertwined personnel and operations." (*Id.* ¶ 46.)

These allegations do not establish personal jurisdiction over 4finance Latvia. Again, Debtor's allegations are only entitled to deference to the extent each is free of "argumentative inferences," is supported by the record evidence, and constitutes an actual allegation of *fact* – the Court will not "accept as true a legal conclusion couched as a factual allegation." *In re BT*, 599 B.R. at 678 (citing *In re Terrorist Attacks*, 714 F.3d at 673). Applied here, none of Debtor's

---

[14] Again, these allegations are false. 4finance Latvia does not own Vivus or any other entity affiliated with Vivus, and, likewise, no person with an ownership interest in Vivus has any interest in 4finance Holding or any of its affiliate companies. (Donnelly Decl. ¶¶ 8-9.)

13

foregoing allegations meet these criteria.

As a threshold matter, most of Debtor's allegations are simply legal conclusions couched as fact, including Debtor's bald allegations that 4finance Latvia "is liable" for the alleged conduct of other persons, whether "under principles of *respondeat superior*," "agency and alter ego liability," or "because they formed a joint venture and/or general partnership." (Motion ¶¶ 45-47, Dkt. 258; *see also id.* ¶ 8 ("4Finance owns Vivus directly or indirectly" such that "the Court should disregard the putative separateness of 4Finance and Vivus"), ¶ 10 ("4Finance Malta . . . is a corporate entity owned and controlled by 4Finance"), ¶ 17 ("4Finance, Vivus, 4Finance Malta, and GMLA, to the extent they are deemed to be separate entities, are under common ownership and control."), ¶ 22 ("the management, personnel, and operations of 4Finance and Vivus are intertwined, and no real separation exists between the two."), ¶ 37 ("the person answering was actually a representative of 4Finance and/or Vivus."), ¶ 41 ("Vivus and/or 4Finance as the employer of those individuals …").) As a result, the Court should disregard these allegations for purposes of evaluating whether Debtor has met his burden in establishing jurisdiction over 4finance Latvia.

Aside from legal conclusions, Debtor's few remaining allegations of purported "fact" regarding 4finance Latvia must also be disregarded because each rests on "argumentative inferences" and lacks evidentiary basis. *In re BT*, 599 B.R. at 678. To be sure, Paragraphs 22(a)-(d) of Debtor's Motion reflect the *only* allegations of "fact" underlying his claims against 4finance Latvia, and each rests exclusively on the documents attached to his Motion as Exhibits I – M and their references to various individuals in Ontario, Canada affiliated with "4Finance Corp.," "4Finance Group," "4Finance," or "4finance.com." (*See* Motion ¶ 22, Dkt. 258; *id.* Exs. I-M, Dkt. 258-2.) Based on these vague and generic references to "4Finance," and despite public records

reflecting 4finance Canada's existence and principal business address in Ontario, Canada specifically,[15] Debtor has somehow inferred that these individuals are employees of 4finance *Latvia* (and not 4finance Canada as is actually and obviously the case). (*See id.* ¶¶ 22, 44-47, Dkt. 258; *see* Walker Decl. ¶¶ 2-5.)  Because these inferences underlying Debtor's allegations are argumentative and unreasonable, they may not be resolved in Debtor's favor, particularly where, as here, they have no evidentiary support. (*See* Discussion, *supra*, Part I.A; *see also In re BT*, 599 B.R. at 678 (citing *In re Terrorist Attacks on September 11, 2001*, 714 F.3d at 673).)

As a result of the foregoing, and as a practical matter, Debtor has alleged only that 4finance Latvia has some unidentified affiliation with the other Non-Tribal Respondents – an alleged fact that is false, but even if taken as true, would still be irrelevant as a matter of law. "[T]ypically, the corporate independence of companies defeats the assertion of jurisdiction over one by using contacts with the other." *Access Telecomm., Inc. v. MCI Telecomms.. Corp.*, 197 F.3d 94, 717 (5th Cir. 1999); *see also Rodriguez-Rivera v. Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 161 (1st Cir. 2022) ("[G]enerally, the jurisdictional contacts of a subsidiary corporation are not imputed to its parent").

The only exception to this rule arises when an insider is abusing the corporate form, which first "requires piercing the corporate veil" as a condition to imputing one alter-ego entity's forum contacts to another and asserting jurisdiction. *Paye v. Atrium Med. Corp.*, 2023 U.S. Dist. LEXIS 9935, at *13 (D. Mass. Jan. 19, 2023) (citing *Lothrop v. N. Am. Air Charter, Inc.*, 95 F. Supp. 3d 90, 99-100 (D. Mass. 2015)).  As the above makes clear, this "veil-piercing" exception does not

---

[15] *AS 4finance, Ltd.*, ONTARIO BUSINESS REGISTRY, *available at* https://www.ontario.ca/page/ontario-business-registry, attached to the Walker Declaration as Exhibit A.

15

apply in this case. Debtor has not advanced any allegations or evidence that would provide a basis to disregard the corporate separation between 4finance Latvia and any of its affiliate entities, let alone Vivus, with which 4finance Latvia shares no corporate affiliation at all.[16] *See Ryan v. Greif, Inc.*, No. 22-cv-40089, 2023 U.S. Dist. LEXIS 227380, at *9 (D. Mass. Dec. 21, 2023) (dismissing parent company and deferring to "presumption of corporate separateness" where: (1) the entities' respective employees shared email domains, (2) the entities advertised each other's job postings, (3) employee handbooks reflected both entities' logos, (4) the entities shared facilities and exhibited both logos on-site, and (5) employees often referred to the entities as a combination of their respective names); *see also Bridge St. Auto., Inc. v. Green Valley Oil, LLC*, 985 F. Supp. 2d 96, 103 (D. Mass. 2013) (dismissing affiliate where entities operated in the same industry and shared employees); *In re Lupron Mktg. & Sales Practices Litig.*, 245 F. Supp. 2d 280, 291 (D. Mass. 2003) (dismissing parent company where record reflected nothing "more than the normal badges of ownership"). Accordingly, the Court should disregard Debtor's allegations about a purported corporatee affiliation between 4finance Latvia and Vivus for this additional reason, as well.

For the foregoing reasons, Debtor has not established (and cannot establish) a basis for exercising personal jurisdiction over 4finance Latvia in this case, and Debtor's Motion against 4finance Latvia should be dismissed accordingly pursuant to Rule 12(b)(2).

    **B.    Alternatively, Debtor's Motion against 4finance Latvia Should be Dismissed Pursuant to Rule 12(b)(6) for His Failure to State a Plausible Claim.**

In the alternative, and as a result of the same pleading deficiencies already discussed, the Court should also dismiss Debtor's Motion against 4finance Latvia for his failure to state a

---

[16] *See* Donnelly Decl. ¶¶ 5-9.

plausible claim for which relief may be granted. Again, Debtor has not asserted a "direct" claim against 4finance Latvia for purported violations of the automatic stay under 11 U.S.C. § 362, and instead claims 4finance Latvia is liable for the alleged stay violations of certain unnamed individuals acting as "representatives of Lendgreen", either as: (1) their "actual employer . . . under principles of *respondeat superior*," or (2) if Vivus is their employer, then "under principles of agency[17] and alter ego liability[18]," or (3) if any of the other Non-Tribal Respondents are ultimately liable for some other unspecified reason, then "because they [all] formed a joint venture and/or general partnership" to make online loans.[19] (Motion ¶¶ 44-47, Dkt. 258.) For the same reasons

---

[17] In addition, Debtor has also failed to state a plausible claim that 4finance Latvia can be liable for the actions of Vivus based on his theory that 4finance Latvia and Vivus had an "agency" (*i.e.*, "agent-principal") relationship. (*See* Motion ¶ 46, Dkt. 258.) While the knowledge of an agent may be imputed to the principal, "[a]n agent cannot be imputed with information which his principal has failed to give him." *See, e.g.*, *In re. Waswick*, 212 B.R. 350, 353 (Bankr. D. N.D. 1997). Debtor does not allege that Vivus (or anyone else) informed 4finance Latvia (or anyone else) about his bankruptcy, which is an essential element of his claim under 11 U.S.C. § 362(k). (*See generally* Motion.)

[18] Furthermore, Debtor has also failed to state a plausible claim that 4finance Latvia can be liable for the actions of Vivus based on his "alter-ego" liability theory. (*See* Motion ¶ 46.) Such claims require proof that an individual shareholder has abused the corporate form as a mere façade or instrument for his personal dealings, and Debtor has not even attempted to identify (let alone name as a Respondent) an individual shareholder against whom he is seeking to pierce the corporate veil. *See Sheppard v. River Valley Fitness One, L.P.*, 2002 D.N.H. 116, 2002 U.S. Dist. LEXIS 10985, *6 (D. N.H. June 14, 2022) ("the court has been presented with no authority supporting the notion that the alter-ego theory can be applied to impose corporate liability on persons other than shareholders. Such an imposition of liability would seem to be a rather novel concept"); *cf. In re Davey Roofing*, 167 B.R. 604, 606 (Bankr. C.D. Cal. 1994) (permitting a corporation's bankruptcy estate to assert alter-ego claims against its dominant individual shareholder who had siphoned funds pre-petition).

[19] Debtor has also failed to state a plausible claim that 4finance Latvia can be liable for the actions of the other "Non-Tribal Respondents" under a "joint venture / general partnership" theory because, among (many) other reasons, Debtor has failed to state a plausible underlying claim for relief against those other Non-Tribal Respondents, particularly as against "GMLA," who Debtor alleges to have simply given a "working capital" loan to Lendgreen in 2013 (*see*

17

already discussed, however, Debtor's allegations of purported "fact" are not sufficient to state a plausible claim against 4finance Latvia under any theory.

The relevant standards governing the Court's evaluation of Debtor's allegations for purposes of a Rule 12(b)(6) motion to dismiss are similar to those governing its evaluation of Debtor's jurisdictional allegations.[20] To avoid dismissal under Rule 12(b)(6), the operative pleading "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). And while the court will accept as true any well-plead allegations of fact, it will "not credit 'conclusory legal allegations' or factual allegations that are 'too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture.'" *Douglas v. Hirshon*, 63 F.4th 49, 55 (1st Cir. 2023) (quoting *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 33 (1st Cir. 2022)). Only "reasonable inferences" will be accepted as true or resolved in a plaintiff's favor. *Id.* The alleged facts "must be enough to raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face." *Twombly*, 550 U.S. at 557. This "plausibility standard

---

Motion ¶¶ 18(c), 21, Dkt. 258), and "4Finance Malta," who Debtor claims to somehow be liable for simply having the same registered agent and address in Malta as GMLA, (*see id.* ¶ 10). If nothing else, the foregoing illustrates well Debtor's willingness to assert wildly speculative claims without a sound basis in fact or law.

[20] For purposes of 4finance Latvia's Rule 12(b)(2) motion, however, the Debtor's jurisdictional allegations must *also* be supported by actual evidence. *See Swiss Am. Bank, Ltd.*, 274 F.3d at 618; *see also In re BT*, 599 B.R. at 678. By contrast, a Rule 12(b)(6) motion is generally limited to the allegations in the complaint, including any extraneous documents embraced therein and other relevant matters of public record. *Claudio v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46 (1st Cir. 2014); *see also Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("When . . . a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)").

4873-7102-9434, v. 1

is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Iqbal* at 678 (quoting *Twombly*, 550 U.S. at 556); *see also Schatz*, 669 F.3d at 55. Debtor's speculative and conclusory Motion against 4finance Latvia does not meet these minimum requirements.

Again, as the sole "factual" premise for his claims against 4finance Latvia, Debtor relies on a handful of documents referencing various individuals in Ontario, Canada affiliated with "4Finance" generally. (*See* Motion ¶ 22, Dkt. 258; *id.* Exs. I-M, Dkt. 258-2.) Based on these vague and generic references to "4Finance," and despite public records reflecting 4finance Canada's existence and principal business address in Ontario, Canada specifically,[21] Debtor has somehow inferred that these individuals are employees of 4finance *Latvia* (not 4finance Canada as is actually and obviously the case) and, furthermore, that there is no corporate distinction between Vivus and 4finance *Latvia* (without identifying a single action taken by an actual employee or other representative of 4finance Latvia anywhere in his Motion). (*See id.* ¶¶ 22, 44-47, Dkt. 258; *see also* Walker Decl. ¶¶ 2-5.) Because Debtor's allegations against 4finance Latvia are entirely speculative, and rely on unreasonable inferences, none may be accepted as true, and the Court should dismiss 4finance Latvia from this case accordingly. (*See* Discussion, *supra*, Part II.A.)

In short, the only allegation in Debtor's Motion that is well-plead, *i.e.*, that does not constitute a legal conclusion or otherwise rest on speculative or unreasonable inference, is Debtor's allegation that 4finance Latvia is a "corporate entity . . . with its primary place of business in . . .

---

[21] *AS 4finance, Ltd.*, ONTARIO BUSINESS REGISTRY, *available at* https://www.ontario.ca/page/ontario-business-registry, a copy of which is attached to the Walker Declaration as Exhibit A.

Latvia." (Motion ¶ 7, Dkt. 258.) Aside from alleging 4finance Latvia's existence as a separate and foreign corporate entity, however, Debtor has not set forth any additional allegations of fact to establish the existence of a plausible claim against it. Accordingly, dismissal of 4finance Latvia is also warranted under Federal Rule of Civil Procedure 12(b)(6).

## CONCLUSION

For the foregoing reasons, Respondent respectfully requests that the Court grant its motion to dismiss, and enter an order dismissing 4finance Latvia from this case for Debtor's failure to establish personal jurisdiction (or, alternatively, for Debtor's failure to state a claim against it).

Dated: April 30, 2024
Boston, Massachusetts

Respectfully submitted,

/s/ Douglas B. Rosner
Douglas B. Rosner, Esq. (BBO #559963)
Brendan M. Gage, Esq. (BBO #683028)
**GOULSTON & STORRS PC**
One Post Office Square, 25th Floor
Boston, MA  02109
Tel:    (617) 482-1776
Fax:    (617) 574-4112
Email: drosner@goulstonstorrs.com
Email: bgage@goulstonstorrs.com

- and –

Michael D. Stinson, Esq. (pro hac vice)
Michael Norton, Esq. (pro hac vice)
**DORSEY  &  WHITNEY LLP**
50 South Sixth Street
Suite 1500
Minneapolis, MN 55402-1498
Tel: (612) 340-2600
E-mail: stinson.mike@dorsey.com
E-mail: norton.mike@dorsey.com

*Counsel for Respondent 4finance, AS*

4873-7102-9434, v. 1