UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br>BRIAN W. COUGHLIN,<br>　　　　　　　　　　Debtor | IN PROCEEDINGS UNDER<br>CHAPTER 13<br>CASE NO. 19-14142-CJP |

## MOTION OF DEBTOR TO COMPROMISE THE CONTROVERSY AND APPROVE SETTLEMENT AGREEMENT BETWEEN  THE LAC DU FLAMBEAU BAND OF LAKE SUPERIOR CHIPPEWA INDIANS, LDF BUSINESS DEVELOPMENT CORPORATION, LDF HOLDINGS, LLC AND NIIWIN, LLC D/B/A LENDGREEN AND DEBTOR AND APPROVE SETTLEMENT AGREEMENT

NOW COMES, the Chapter 13 Debtor, Brian W. Coughlin, and hereby move this Honorable Court, pursuant to 11 U.S.C. §§ 1303 and 363(b), (d), (e) and (l), and Fed. R. Bankr. Pro 9019(a) and MLBR 9019-1, to enter an order authorizing the Debtor to compromise a controversy, and enter an order approving the Settlement Agreement between the Debtor and the Lac du Flambeau Band of Lake Superior Chippewa Indians ("**Tribe**"), LDF Business Development Corporation ("**LDF BDC**"), LDF Holdings, LLC ("**Holdings**") and Niiwin, LLC d/b/a Lendgreen ("**Niiwin**" or "**Lendgreen**") (collectively "**LDF**").  In support of this motion, the Debtor submits the following:

## STATEMENT OF FACTS

1. The Debtor, Brian W. Coughlin, filed his Voluntary Petition under Chapter 13 of the Bankruptcy Code on December 4, 2019.

2. Prior to the Debtor's Chapter 13 bankruptcy filing, the Debtor obtained an unsecured "payday" loan from Lendgreen, and owed, as of the date of the commencement of this Chapter 13 case $1,594.91 (the "Claim").

3.  Lendgreen was listed on the Debtor's Schedule of Unsecured Debts (Schedule "E/F") as Item 4.17 listing the Creditor as "Lend Green," with a mailing address of P.O. Box 221, Lac Du Flambeau, Wisconsin 54538 and listing the last 4 digits of the account number relating to said claim of 3572.

4.  As a consequence of the Debtor's scheduling of Lendgreen's claim,  Lendgreen was properly listed on the Debtor's Mailing Matrix with a mailing address of P.O. Box 221, Lac Du Flambeau, Wisconsin 54538.

5.  On December 4, 2019, Debtor's Counsel served the Debtor's Original Chapter 13 Plan upon Lendgreen at its mailing address of P.O. Box 221, Lac Du Flambeau, Wisconsin 54538 and filed a Certificate of Service regarding the Debtor's Original Chapter 13 Plan reflecting the same.

### *The Post-Petition Actions of LDF*

6.  The Debtor has alleged that despite receiving and having actual notice of the Debtor's Chapter 13 bankruptcy filing on December 10, 2019, Lendgreen continued its collections efforts to recover from the Debtor upon the Claim, by means of text messages, electronic mail, telephone calls and voicemail messages.

7.  Lendgreen has represented in this litigation that these collections efforts were made by "the Loan Servicer" that is, by Vivus. However, the Debtor has alleged that the individuals who contacted the Debtor at all times identified themselves out as acting on behalf of Lendgreen, including in the text messages.

8.  The Debtor has alleged that on February 26, 2020, during this period of incessant and
    unrelenting telephone calls, voicemail messages, emails and text messages from
    Lendgreen, the Debtor called the number provided by Lendgreen and spoke with
    collection specialist Linda Ehikpehale, telling her that he had filed for bankruptcy
    protection under Chapter 13 of the Bankruptcy Code in December of 2019 and that they
    had been previously notified of his bankruptcy filing. Ms. Ehikpehale then immediately
    sent an email to the Debtor acknowledging their conversation and stated, "As earlier
    discussed, the email address to send the Power Of Attorney documents for your
    bankruptcy case is administration@lendgreen.com."

9.  The Debtor has alleged that despite being notified directly by the Bankruptcy Court's
    Notice of Case Commencement and Debtor's Counsel by means of the Chapter 13 Plan,
    and despite the Debtor actually speaking with collection specialist Linda Ehikpehale on
    February 26, 2020, on March 17, 2020, Lendgreen and its agents nonetheless continued
    with its collection efforts against the Debtor in willful violation of the automatic stay

10. Furthermore, the Debtor has alleged substantial damages, as a direct and proximate result
    of Lendgreen's actions in attempting to collect upon the Claim after being notified and
    being fully aware of the commencement of the Debtor's Chapter 13 bankruptcy case on
    December 10, 2019. As a result of the willful stay violations, the Debtor became so
    depressed, despondent, and anxious, that, in an effort to escape the unrelenting, harassing
    efforts to collect upon the Claim, the Debtor, who was already suffering from mental and
    physical health problems attempted suicide by means of an overdose of prescription
    medications.

11. The Debtor has alleged that the Debtor's family was able to timely intervene to prevent the Debtor's suicide attempt, and the Debtor was taken to the Emergency Department of Massachusetts General Hospital where he was revived. The Debtor has alleged that he thereafter spent the next eleven (11) days at the Massachusetts General Hospital recovering and incurred as a result hospital bills amounting to $76,828.33.

12. Additionally, the Debtor has alleged that because of his hospitalization caused by the actions of Lendgreen, he was forced to use sick leave and vacation time from his then-employer, the City of Boston, amounting to a loss of salary in the sum of $9,011.55.

13. Further, the Debtor has alleged that, even while he  was an in-patient recovering at the Massachusetts General Hospital, he continued  to receive telephone calls and voicemail messages and other actions, all to collect upon the Claim. Specifically, on March 18, 2020 at 2:06 pm, Lendgreen called the Debtor's telephone number and left a voicemail for him to contact them about a "very important matter."

14. The Debtor has alleged that the following day, on March 19, 2020 at 1:53 pm, Lendgreen again called the Debtor's telephone number and left another voicemail for him to contact them about a "very important matter".

15. Finally, Debtor's Counsel, Richard N. Gottlieb, directly spoke with an individual identified as representing the collections department of Lendgreen, telling her that the Debtor had attempted suicide as a result of their collections activities despite his bankruptcy filings and demanded that all such activities stop.

16. Although Debtor's Counsel believed at the time that he had contacted the "collections department of Lendgreen," discovery has revealed that the person answering was actually a representative of an entity affiliated with a foreign internet pay-day lending operation doing business under the names of "4Finance" and/or "Vivus Servicing, Ltd."

### ***The Motion for Enforcement of the Automatic Stay and for Sanctions***

17. On March 25, 2020, the Debtor filed his original Motion to Enforce the Automatic Stay and for Sanctions as ECF Doc. No. 27 (the "Original Sanctions Motion").

18. On July 30, 2020, LDF filed a Motion to Dismiss the Original Sanctions Motion based upon the assertion by LDF that the bankruptcy court lacked subject-matter jurisdiction to hear the Original Sanctions Motion due to LDF's common-law claim of Tribal sovereign immunity. In response, the Debtor asserted that any such claim of common-law Tribal sovereign immunity was abrogated by the provisions of 11 U.S.C. § 106(a) as the Debtor asserted that LDF was a "governmental unit" within the meaning of 11 U.S.C. § 101(27).

19. On October 19, 2020, the bankruptcy court issued an Order granting LDF's Motion to Dismiss on the basis of Tribal sovereign immunity (the "Dismissal Order").

### ***The Appellate Proceedings***

20. The Debtor timely filed a Notice of Appeal on November 2, 2020 with filing fee. and a Motion for Certification of Direct Appeal under 28 U.S.C. § 158(d)(2) to the U.S. Court of Appeals for the First Circuit regarding the Dismissal Order.

21. On November 18, 2020, the Court granted the Motion for Direct Appeal and issued its Certification Regarding Direct Appeal. In due course, the record on appeal was

transmitted to the U.S. Court of Appeals for the First Circuit. The Debtor then filed his

Request with the U.S. Court of Appeals for the First Circuit to accept the Direct Appeal

of the Dismissal Order (the "Request for Direct Appeal") and on February 24, 2021, the

Request for Direct Appeal was granted by the First Circuit and the Direct Appeal was

then docketed with the First Circuit as Case No. 21-1153.

22. On May 6, 2022, after oral arguments before it, the First Circuit issued an Order

reversing the Dismissal order and remanding the case for further proceedings (the "First

Circuit Decision").

23. In August of 2022, LDF sought to stay the proceedings before this Court on the Original

Sanctions Motion as well as a Protective Order as LDF would be seeking to obtain a Writ

of Certiorari to the Supreme Court of the United States concerning the First Circuit

Decision.

24. On August 26, 2022, the Court granted in part the Request for a Protective Order but

denied the Request for a Stay of Proceedings without prejudice to the request being

renewed if the Supreme Court granted LDF's petition for certiorari.

25. On or about February 8, 2023, the Supreme Court of the United States granted LDF's

Petition for Certiorari as Case No. 22-227 and issued a briefing schedule for both LDF

and the Debtor, as well as scheduled the matter to be heard by the Court on April 24,

2023. After submitting formal briefs by both of the parties, and the conducting of oral

arguments on April 24, 2023, the Supreme Court affirmed the First Circuit Decision,

holding that LDF's claim of Tribal sovereign immunity was abrogated by operation of 11

U.S.C. § 106(a) as LDF was, indeed, deemed to be a "governmental unit" within the

meaning of 11 U.S.C. § 101(27).  **_Lac du Flambeau Band of Lake Superior Chippewa_**

**_Indians v. Coughlin_**, 599 U.S. 382 (2023).

### _The Remanded Case_

26. Upon the ruling of the Supreme Court affirming the decision of the First Circuit, the

    Debtor, through his Counsels, redoubled their efforts to obtain discovery from LDF and

    were rewarded with a copy of the Servicing Agreement between Lendgreen and an entity

    named Vivus Servicing, Ltd. as well as an email chain showing that the domain name

    used by Vivus Servicing was, in fact, used by another group of entities under the rubric of

    "4Finance.com."

27. Upon further research and discovery, the Debtor developed evidence that the entity

    actually involved in collecting on the Claim of Lendgreen was a foreign entity under the

    moniker of "4Finance." After two years, and two amendments to the Original Sanctions

    Motion, in January 2024, the Debtor filed his Second Amended Motion to Enforce the

    Automatic Stay and for Sanctions, naming as non-Tribal Respondents, Vivus Servicing,

    Ltd. of Canada; 4Finance Latvia, AS; GMLA Trading, Inc. (the putative "lender" for

    Lendgreen); and 4Finance Malta (collective, the "Non-Tribal Respondents").

28. Because these entities were headquartered outside the United States, the Debtor

    undertook service of process by use of the Hague Convention to serve the Non-Tribal

    Respondents, which successfully completed service of legal process.

29. After the deferral of LDF's Motion to Dismiss by the Court to allow the Non-Tribal

    Respondents to be heard, LDF approached the Debtor and his Counsel and began

negotiations regarding the settlement of the Debtor's claim for violation of the Automatic Stay against LDF.

30. As part of the negotiations, the Debtor, by his Counsel, were given the opportunity to review additional documents not previously disclosed as part of LDF's document production in discovery, relevant to and implicating the Non-Tribal Respondents. Upon review of the same, and taken in tandem with a substantial monetary recovery, the Debtor and LDF agreed to enter into a Settlement Agreement.

## REQUEST FOR RELIEF UNDER RULE 9019

31. As more fully set forth in the Settlement and Release Agreement between the settling parties (the "Settlement Agreement") that is attached hereto as Exhibit "A," the essential terms of the Settlement Agreement are as follows:

   a. The Debtor will be granting a general release in exchange for the lump-sum cash payment by LDF of Three Hundred and Forty Thousand and 00/100 Dollars ($340,000.00) as monetary compensation and legal fees and expenses;

   b. The Debtor's Counsel's will be given documents previously reviewed by them at LDF's Local Counsel's office in Boston with respect to the culpability and responsibility of the Non-Tribal Respondents with respect to the violations committed by the Non-Tribal Defendants of the Automatic Stay against the Debtor; and

   c. LDF will make available an authorized corporate representative to testify at a deposition and/or at time of trial of the remaining claims against the Non-Tribal Respondents.

Case 19-14142    Doc 355    Filed 08/09/24    Entered 08/09/24 10:40:59    Desc Main
Document    Page 9 of 21


    d.   Additionally, the Settlement Agreement makes clear that, while the constituent members of LDF will be released from liability to and by the Debtor, no releases, by operation of the Settlement Agreement, will be given to any other parties, and the Non-Tribal Respondents, in particular and/or further and other Respondents who may be identified in the future and included as persons liable to the Debtor for willful violation of the automatic stay.

32. The Debtor believes that the approval of the above-referenced Settlement Agreement and Mortgage Loan Modification is in the best interests of all creditors and the Debtor and should therefore be approved by the Court for the following reasons:

    a.   From the proceeds of the settlement, the Debtor will pay over to the Chapter 13 Trustee sufficient funds to pay all creditors that filed proofs of claim a 100% dividend, along with the required commission due thereon to the Chapter 13 Trustee, amounting to approximately $25,000.00;

    b.   The Debtor will receive from the proceeds of the Settlement 100% of his actual damages from his hospital stay and lost income amounting to $85,839.88;

    c.   Appellate counsel who briefed and argued the case before the Supreme Court of the United States, Gregory G. Rapawy, Esq. of the Law Firm of Kellogg, Hansen, Todd, Figel & Frederick,  P.L.L.C. will be seeking from this settlement it's out of pocket costs amounting to $14,151.38, reserving the right to seek compensation for legal services at a later point in time from the Non-Tribal Respondents and/or such other parties Respondent as may be subsequently joined in this Contested Matter.

-9-

    d.   Counsels for the Debtor, Richard Gottlieb and Terrie Harman, Esq. will be filing Interim Fee Applications for their billable time and out-of-pocket expenses incurred to date soon after the filing of this Motion to Compromise the Controversy.

    e.   From the remaining proceeds of this settlement after the Fee Applications of Counsels for the Debtor have been allowed and, upon approval of the sum by the court, have been paid, the sum of $25,000.00 will be kept in reserve for additional out-of-pocket costs, including but not limited to expert witnesses, corporate witnesses of the Tribe and Canadian agents to assist with asset research as part of the Debtor's ongoing litigation against the Non-Tribal Respondents and/or such other Parties Respondent as may subsequently be joined in this Contested Matter..

33. As a consequence of his previous payments to the Chapter 13 Trustee for the general unsecured claims that have been filed, and the Debtor has available to him, the proposed Settlement Agreement will:

    a.   provide a 100% dividend to the general unsecured creditors;

    b.   pay the Chapter 13 Trustee's statutory commission in full;

    c.   allow for the payment fees and expenses work voluntarily undertaken with no initial retainer of approximately *four (4) years* of legal by the Debtor's Counsels and Appellate Counsel;

    d.   allow for the payment of the Debtor's compensatory damages, excluding his substantial claims for extreme emotional distress leading to his attempted suicide

and for the awarding of punitive damages occasioned by the parties most

immediately responsible for the willful violation of the Automatic Stay against

the Debtor; and

e.   provide important documentation and testimony and financial resources for the

Debtor to continue his efforts for redress from the Non-Tribal Respondents,

without the limitations imposed under 11 U.S.C. § 106(a)(3).

34.   The Debtor has communicated the essential terms of this Motion and the Settlement

Agreement to the Chapter 13 Trustee and, based upon direct talks with the Chapter 13

Trustee's Counsel, she has no objections to the within Motion or the terms of

settlement contained in the Settlement Agreement.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order:

1.   Authorizing the Debtor to Compromise the Controversy with the Lac du

Flambeau Band of Lake Superior Chippewa Indians, LDF Business Development

Corporation, LDF Holdings, LLC and Niiwin, LLC d/b/a Lendgreen and

approving the Debtor's Settlement Agreement with the same;

2.   Authorizing Counsel for the Debtors to make the distributions described in

Paragraph 32 of this Motion; and

3. For such other and relief deemed mete and proper under the circumstances.

<div style="margin-left: 45%;">

BRIAN W. COUGHLIN, Debtor
By his Attorney,

</div>

Date:  <u>8/9/2024</u>                              <u>*/s/ Richard N. Gottlieb, Esq.*</u>
Richard N. Gottlieb, Esq. BO# 547970
Law Offices of Richard N. Gottlieb
Ten Tremont Street
Suite 11, 3rd Floor
Boston, MA 02108
(617) 742-4491
rnglaw@verizon.net

# Exhibit "A"

## SETTLEMENT AND RELEASE AGREEMENT

### PREAMBLE

This Settlement Agreement ("<u>Agreement</u>"), dated June ___ 2024 ("**Effective Date**"), is entered into by and among the Lac du Flambeau Band of Lake Superior Chippewa Indians ("**Tribe**"), LDF Business Development Corporation ("**LDF BDC**"), LDF Holdings, LLC ("**Holdings**") and Niiwin, LLC d/b/a Lendgreen ("**Niiwin**") (collectively "**LDF**") and Brian W. Coughlin (hereinafter referred to as "**Coughlin**") Plaintiff, Tribe, BDC, Holdings and Niiwin shall collectively be referred to as "**Parties**."

### RECITALS

WHEREAS, Lendgreen is a wholly-owned subsidiary of Holdings, which is a wholly-owned subsidiary of the BDC . The BDC is a wholly-owned and operated economic arm and instrumentality of the Tribe, which is a federally recognized Indian tribe.

WHEREAS, on December 4, 2019, the Debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts ("**Bankruptcy Court'**) captioned **In re Brian W. Coughlin**, case number 1:19-bk-14142. Coughlin alleges he listed Niiwin in his schedules as an unsecured creditor related to a consumer loan that he received online from Niiwin.

WHEREAS, on or about March 25, 2020, Coughlin filed a Motion to Enforce Automatic Stay and Sanctions against LDF in the Bankruptcy Court (Dkt. 27) alleging that he was contacted, in violation of 11 U.S.C. § 362, in an attempt to collect on the consumer loan, that he received from Niiwin ("**Asserted Claims**").

WHEREAS, LDF denies liability for of any and all Asserted Claims and has raised and asserted defenses to the all claims;

WHEREAS, Counsels for Coughlin, Richard N. Gottlieb, Esq. and Terrie Harman, Esq., have reviewed certain documents with respect to ongoing actions against certain Non-Tribal Respondents (the "Reviewed Documents") and have been satisfied that such documents may further support Coughlin's claims against said Non-Tribal Respondents and will be disclosed as part of this Settlement Agreement; and

WHEREAS, based upon negotiations between Coughlin and LDF, the risks and costs involved in litigation and collection, and the amount at issue, Coughlin and LDF have agreed to resolve the Asserted Claims on terms mutually acceptable to each Party.

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing promises and exchange of covenants and mutual obligations recited herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby expressly acknowledged, the Parties agree as follows:

1.      <u>Incorporation by Reference.</u>  The Recitals, above, is hereby incorporated into this agreement.

2.    Settlement Funds. LDF shall wire three hundred and forty thousand dollars ($340,000.00) ("Settlement Funds") to the IOTA Client Trust Account of Spencer Fane LLP ("SF Trust Account"). Once the Settlement Funds have cleared the SF Trust Account, Coughlin shall be provided confirmation that the Settlement Funds are being held in the SF Trust Account, and within two (2) business days thereafter, Coughlin shall provide LDF an executed version of this Agreement.

3.    Approval of Settlement. Within five (5) business days of confirmation that the Settlement Funds are in the SF Trust Account Coughlin and the Chapter 13 Trustee shall file the necessary pleadings to seek the Bankruptcy Court's approval of this Agreement and entry of the Settlement Order, including but not limited to (i) effectuating proper and adequate notice (as may be limited by Order of the Bankruptcy Court) and service of any motion seeking approval of this Agreement and entry of the Settlement Order (the "**9019 Motion**") and (ii) the presentation of all necessary documentary and testimonial evidence in support of the 9019 Motion.

4.    Release of Settlement Funds. Within five (5) business days of the Bankruptcy Court's entry of the Settlement Order approving this Agreement, and upon wire instructions being provided to LDF's counsel, the Settlement Funds shall be wired to the Client Trust Account for the Law Offices of Richard N. Gottlieb..

5.    Stipulation of Dismissal. Within five (5) business days of the Release of Settlement Funds by the Escrow Agent, Coughlin shall execute and file a Stipulation of Voluntary Dismissal with the Bankruptcy Court, whereby Coughlin dismisses, with prejudice, all claims, including the Asserted Claims, against LDF.

6.    Release and Effective Date. Effective upon entry of the Order of the Bankruptcy Court, Coughlin shall be deemed to have released any and all actions, causes of action, suits, proceedings, debts, dues, judgments, damages, attorney's fees, claims, property damages, expenses, liabilities, rights to payments, acts and/or omissions, demands, and all other claims of every kind, nature, and description, whatsoever, liquidated and unliquidated, fixed and/or contingent, matured and unmatured, priority or non-priority, disputed and/or undisputed, legal or equitable, secured and unsecured, accrued and unaccrued, known and unknown, choate and inchoate, whether based on statutory law, common law, federal law, state law, local law, or otherwise, that Coughlin has or may have against:

A.    Niiwin, LLC its parent (including, but not limited to, LDF Holdings), subsidiary, sister and affiliate companies, divisions, and their current and past officers, directors, shareholders, members, representatives, limited and general partners, present and former employees, managers, predecessors, successors, assigns, attorneys, principals, agents, and Niiwin, LLC affiliates, clients, contractors, subcontractors, insurers, and all other persons acting by, through or under Niiwin, LLC, except as provided in Section 6(E) below. (collectively, "**Niiwin Released Parties**");

B.    LDF Holdings, LLC its parent (including, but not limited to, LDF Business Development Corporation), subsidiary, sister and affiliate companies, divisions, and their current and past officers, directors, shareholders, members, representatives, limited and general partners, present and former employees,

Docusign Envelope ID: 8E5DD938C40B824496962E355394FB88

managers, predecessors, successors, assigns, attorneys, principals, agents, and LDF Holdings, LLC's affiliates, clients, contractors, subcontractors, insurers, and all other persons acting by, through or under LDF Holdings, LLC, except as provided in Section 6(E) below (collectively, "**<u>LDF Holdings Released Parties</u>**");

C.     LDF Business Development Corporation, its parent, subsidiary, sister and affiliate companies, divisions, and their current and past officers, directors, shareholders, members, representatives, limited and general partners, present and former employees, managers, predecessors, successors, assigns, attorneys, principals, agents, and LDF Business Development Corporation's affiliates, clients, contractors, subcontractors, insurers, and all other persons acting by, through or under LDF Business Development Corporation, , except as provided in Section 6(E) below (collectively, "**<u>LDF BDC Released Parties</u>**"); and,

D.     The Lac du Flambeau Band of Lake Superior Chippewa Indians, its subsidiaries, arms and instrumentalities, and any of their directors, officers, managers, trusts, trustees, heirs, shareholders, employees, agents, insurers, reinsures, administrators, and attorneys and the former and current members of the Lac du Flambeau Band of Lake Superior Chippewa Indians Tribal Council, and any of their agents, predecessors, and employee, except as provided in Section 6(E) below. (collectively, "**<u>Tribal Released Parties</u>**");

E.     It is the express intent of Coughlin that this release shall not release any actions, causes of action, suits, proceedings, debts, dues, judgments, damages, attorney's fees, claims, property damages, expenses, liabilities, rights to payments to any other entity or persons other than the Niiwin Released Parties, the LDF Holdings Released Parties, the LDF BDC Released Parties and the Tribe Release Parties. Nothing in this release shall release Coughlin's claims against any other party, not directly affiliated with the Lac Du Flambeau Band of Lake Superior Chippewa Indians of Wisconsin or the employees of said Tribe, that may have legal responsibility or liability for the acts being released for the Asserted Claims (the "**Non-Tribal Parties**"). The releases hereby provided by Coughlin are given solely for the benefit of the Tribal Released Parties, and no others. No Non-Tribal Party or Parties may claim any rights or legal protection derived or based upon any "third-party beneficiary" theory in this release. Furthermore, nothing in this release, express or implied, is intended to confer on any person other than the Tribal Released Parties hereto (and their respective immediate successors, heirs and permitted assigns), any rights, remedies, obligations or protections.

7.     <u>Discovery</u>. Concurrent with the filing of the 9019 Motion, LDF shall move for entry of a Protective Order, to which Coughlin shall not object, whereby financial documents relating to Niiwin, or loans to Niiwin and other documents that relate to Niiwin's business structure, shall be deemed confidential and shall not be publicly disseminated or used outside of the Adversary Proceedings. Within five (5) business days of the entry of the Protective Order by the Bankruptcy Court, Niiwin shall remove certain objections to Coughlin's First Request for Production of Documents and serve on all parties in the Adversary Proceeding responsive documents. Niiwin shall make one (1) corporate representative witness available to testify at a deposition or at trial or both in the Adversary Proceeding, provided that Coughlin take the necessary steps to ensure the

witness can testify via remote means such as Zoom or Microsoft Teams, or that Coughlin agrees to pay for the Travel expenses for said witness. The Parties agree that Coughlin's counsel will provide topics to the corporate representative at least fifteen (15) days prior to a deposition, which the corporate representative will be prepared to testify on.

8.    Cooperation. The Parties agree to cooperate in good faith to effectuate this Agreement, including securing the Court's approval of this Agreement, assisting with the administration of effectuating the terms of this Agreement, and will execute such additional agreements, documents, or instruments, if any, as may reasonably be required to carry out the intent of this Agreement. The Parties agree that after entry of the Settlement Order, they shall not take any legal position in the Adversary Proceeding that is contrary to the Parties to this Agreement.

9.    Non-Admission of Liability. This Agreement does not represent an admission of liability by any party. Rather, it is expressly understood that this Agreement constitutes a settlement of disputed claims, and that the Parties have entered into this Agreement to avoid the expense, delay, and uncertainty of litigation.

10.    Advice of Counsel. The Parties have been advised by legal counsel with respect to the terms of this Agreement.

11.    Not Construed Against Drafter. This Agreement was drafted by joint effort of counsel and the judicial construction against the drafter of a document shall not apply to this Agreement.

12.    Ownership of Released Matters. Coughlin represents that he possesses full and sole ownership of the claims released herein, and that he has not sold, assigned or subrogated any portion of his claims.

13.    Tax Consequences. LDF makes no representations regarding tax consequences, if any, of the payment made pursuant to this Agreement.

14.    Notice and Opportunity to Cure. If any term or provision of this Agreement is not satisfied by a party, each party agrees to provide notice in writing to the other party informing of the deficiency and allowing up to thirty (30) days for the other party to cure the deficiency. In the event there is a dispute as to a party's obligations under this Agreement or other parties' compliance with this Agreement, the Parties agree to contact the Bankruptcy Court and ask to set a status conference with the Bankruptcy Court in an attempt to resolve the dispute before the filing of any motion to enforce this agreement. For Coughlin, reasonable notice shall be written notice sent via electronic mail to the Attorney for Coughlin, Richard Gottlieb at rnglaw@verizon.net. For LDF, reasonable notice shall be written notice sent via electronic mail to the Attorney for LDF Patrick J. McAndrews at pmcandrews@spencerfane.com

15.    Integration. This Agreement contains the entire agreement between the parties and no promise, inducement, or representations other than herein set forth have been made, and the terms of this Agreement are contractual and not a mere recital.

16.    Severability. If any provision of this Agreement is found to be unenforceable by a court of competent jurisdiction, the Parties desire that such court shall enforce this Agreement to

4

the extent permissible under the law, striking or rewriting any offending passages only to the minimum extent necessary to avoid such unenforceability.

17. <u>Enforcement of Agreement; Attorneys' Fees</u>. In the event that any party seeks to enforce this Agreement against another party, the prevailing party shall be entitled to their reasonable attorneys' fees, costs, and expenses.

18. <u>Counterparts</u>. This Agreement may be executed in counterparts, and if so executed, each such counterpart shall have the force and effect of an original. A facsimile, electronic signature or copy of an original signature transmitted to the other party is effective as an original document.

19. <u>Signatures</u>. This Agreement may be executed via electronic signatures through DocuSign® or similar.

20. <u>Retention of Jurisdiction and Limited Waiver of Claim of Sovereign Immunity</u>. For the limited purpose only of enforcing this Agreement by Coughlin, LDF makes a limited waiver of their claims to sovereign immunity from suit in Bankruptcy Court. Except as expressly set forth herein, nothing contained in this Agreement shall be construed as a waiver of any rights or privileges belonging to the Lac du Flambeau Band of Lake Superior Chippewa Indians, L.D.F. Business Development Corporation, L.D.F. Holdings, LLC, the Niiwin and each of their current, past, and future affiliates, subsidiaries, parents, insurers, and all of the respective directors, officers, general and limited partners, shareholders, managers, representatives, employees, members, agents, attorneys, accountants, successors, and assigns, including sovereign immunity from judicial process, all of which are otherwise reserved. The Parties acknowledge and agree that LDF's waiver of sovereign immunity and consent to jurisdiction set forth in this Agreement does not extend to the benefit of any third-party or non-signor of this Agreement.

**[The remainder of this page was left intentionally blank.]**

_____
Brian W. Coughlin                                    Date

_____          _____
LDF Business Development Corp.                       Date    7/30/24

_____          _____
LDF Holdings, LLC                                    Date    7/30/24

_____          _____
Niiwin, LLC                                          Date    7/30/24

_____          _____
The Lac du Flambeau Band                             Date    7-24-24
of Lake Superior Chippewa Indians

6

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

In re
BRIAN W. COUGHLIN,
                    Debtor

IN PROCEEDINGS UNDER
CHAPTER 13
CASE NO. 19-14142-FJB

## CERTIFICATE OF SERVICE

I, Richard N. Gottlieb, Esq., do hereby certify that I have this day served a copy

of the Motion of Debtor Compromise the Controversy and Approve Settlement

Agreement by USPS First-Class mail, postage paid and/or electronically via the Court's

CM/ECF messaging system on the persons listed below.

Date: August 9, 2024                 /s/ Richard N. Gottlieb, Esq.
                                     Richard N. Gottlieb, Esq. BBO # 547970
                                     Law Offices of Richard N. Gottlieb
                                     Ten Tremont Street
                                     Suite 11, 3rd Floor
                                     Boston, Massachusetts 02108
                                     (617) 742-4491
                                     rnglaw@verizon.net

**PERSONS SERVED:**

**Carolyn Bankowski, Esq.**
Chapter 13 Trustee
(Served via CM/ECF)

**Michael Stinson, Esq.**
Doresy & Whitney, LLP
Counsel for 4finance, AS and Vivus
Servicing, Ltd., Respondents
(Served via CM/ECF)

**Martin A Mooney, Esq.**
SCHILLER, KNAPP, LEFKOWITZ &
HERTZEL, LLP,
Counsel for ACAR Leasing, Ltd.,
Creditor
(Served via CM/ECF)

**Patrick McAndrews, Esq.**
Spencer Fane, LLP
Counsel to LDF Business Development
Corporation, LDF Holdings, LLC,
Niiwin, LLC d/b/a Lendgreen, and the
Lac Du Flambeau band of Lake Superior
Chippewa Indians, Respondents and
Creditors
(Served via CM/ECF)

**Internal Revenue Service**
P.O. Box 7346
Philadelphia, PA 19101-7346

-14-

**500 Fast Cash**
515 "G" Street SE
Miami, OK 74354

**American Web Loans**
3910 W. 6th Avenue
Box 27
Stillwater, OK 74074

**AmeriCredit/GM Financial**
Attn: Bankruptcy
Po Box 183853
Arlington, TX 76096

**Bank of America, N.A.**
P.O. Box 982284
El Paso, TX 79998-2238

**Big Picture Loans**
P.O. Box 704
Watersmeet, MI 49969

**Capital One Bank (USA)**
4515 N. Santa Fe Ave.
Oklahoma City, OK 73118

**City Of Boston Credit Union**
455 West Broadway
South Boston, MA 02127

**Clarity Finance**
P.O. Box 8
Princeton, ME 04668

**Credit One Bank**
P.O. Box 98873
Las Vegas, NV 89193-8873

**Credit Control**
5757 Phantom Drive
Suite 330
Hazelwood, MO 63042
**First Premier Bank**
Attn: Bankruptcy
Po Box 5524
Sioux Falls, SD 57117

**Golden Valley Lending**
635 East Highway 20 E
Upper Lake, CA 95485

**Greenarrow Loans**
P.O. Box 170
Finley, CA 95435

**Inbox Credit**
P.O. Box 881
Santa Rosa, CA 95402

**Internal Revenue Service**
P.O. Box 7346
Philadelphia, PA 19101-7346

**LVNV Funding, LLC**
Resurgent Capital Services
Po Box 10587
Greenville, SC 29603-0587

**Midland Credit Management, Inc.**
P.O. Box 2037
Warren, MI 48090

**Navient Solutions, LLC**
Ascendium Education Solution, LLC
P.O. Box 8961
Madison, WI 53708

**Premiere Bankcard, LLC**
Jefferson Capital Systems, LLC,
Assignee
P.O. Box 7999
St. Cloud, MN 56302-9617

**TrueAccord Collections**
303 2nd Street
Suite 750 South
San Francisco, CA 94107

**Vlizhwaaswi, LLC d/b/a Loan at Last**
P.O. Box 1193
Lac Du Flambeau, WI 54538